JONATHAN D. BLUM, ESQ.
**WILEY PETERSEN**
Nevada Bar. No. 9515
1050 Indigo Drive, Suite 200B
Las Vegas, Nevada 89145
Telephone: (702) 910-3329
Facsimile: (702) 553-3467
E-Mail: jblum@wileypetersenlaw.com

SAMUEL BUTT, ESQ.
Will comply with LR IA 11-2 within 14 days
JOSHUA WURTZEL, ESQ.
Will comply with LR IA 11-2 within 14 days
**SCHLAM STONE & DOLAN LLP**
New York Bar No. 5210356
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
E-mail:  sbutt@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Plaintiffs, John L. Suprock,*
*Laurie L. Suprock, Consortium, LLC, and*
*Renewable Energy Now, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JOHN L. SUPROCK, an individual, LAURIE L. SUPROCK, an individual, CONSORTIUM LLC, a South Dakota limited liability company, and RENEWABLE ENERGY NOW, LLC, a Montana limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>QUANTUM ENERGY, INC., a Nevada corporation, and CLEARTRUST, LLC, a Florida limited liability company<br><br>Defendants. | CASE NO.:<br><br><br>**COMPLAINT**<br><br><br>**JURY DEMAND** |

Plaintiffs, John L. Suprock ("Mr. Suprock"), Laurie L. Suprock ("Mrs. Suprock" and with Mr.

Suprock, the "Suprocks"), Consortium LLC ("Consortium"), and Renewable Energy Now, LLC

("Renewable Energy", and with the Suprocks and Consortium, "Plaintiffs"), by their attorneys, bring this Complaint against defendants Quantum Energy, Inc. ("Quantum") and ClearTrust, LLC ("ClearTrust" and with Quantum, "Defendants") and allege as follows:

### NATURE OF THE ACTION

1.      Plaintiffs are compelled to bring this lawsuit because Quantum has prevented them from selling their shares in Quantum.  Specifically, Quantum and ClearTrust refused to allow the sale of the 3,400,000 shares of Quantum stock (the "Shares") that Plaintiffs collectively hold, and have held for years—erroneously and frivolously claiming that the sale of the Shares by Plaintiffs does not qualify for exemption under Section 4(a)(1) of the Securities Act of 1933, and also refused to enable the consummation of such sale with the removal of the "restrictive" legend on the Shares.  Quantum's and ClearTrust's refusal to approve the removal of the "restrictive" legend—following the submission of multiple opinion letters by Plaintiffs' securities counsel opining that the sale would be exempt from registration under Section 4(a)(1) and that the legend should be removed—was in bad faith, and was part of Quantum's scheme to punish Plaintiffs for not giving into its extortionate—and likely illegal—demand that they enter into a share-exchange agreement with it.  In other words, because Plaintiffs would not give up their Shares for what would effectively be pennies on the dollar, Quantum has exacted revenge on them by preventing them from selling the Shares.  As explained below, the Shares indisputably qualify for exemption under Section 4(a)(1) of the Securities Act, and Quantum and ClearTrust, its transfer agent, should be ordered by this Court to remove the "restrictive" legend on the Shares so Plaintiffs may sell them.

2.      Quantum's actions are causing Plaintiffs irreparable harm, because Quantum's share price is crashing.  Indeed, despite trading at $0.5300 on November 15, 2021, when the Suprocks submitted their initial request for removal of the legend, the price has dropped precipitously over the past months and is currently trading at $0.3000.

3.      Quantum and ClearTrust have also improperly and erroneously refused to issue approximately 455,560 shares to Mr. Suprock pursuant to the clear terms of a convertible note Quantum entered into, pursuant to which Mr. Suprock loaned money to Quantum.

///

2

4.      Quantum further improperly cancelled 120,000 shares of Common Stock issued to Renewable Energy.

5.      That these actions are in bad faith, motivated by animus towards Plaintiffs, and taken to prevent Plaintiffs from selling their Shares in Quantum or otherwise harm Plaintiffs without justification is underscored by a related case brought by Quantum in this Court, *Quantum Energy Inc. v. PCS Advisors LLC and John Suprock*, 21:cv-02184 (JAD)(BNW) (the "Related Action"), by which Quantum is seeking, *inter alia*, damages and to impose a constructive trust over 850,000 shares validly issued to Mr. Suprock pursuant to a Referral Agreement dated March 2017 and as reflected in a second agreement, the Cancellation of Referral Agreement, dated February 28, 2018.  The Related Action is without merit and will be the subject of a motion to dismiss filed by Mr. Suprock and PCS Advisors, LLC, the defendants in that action.

6.      Indeed, all the efforts by Quantum to prevent Plaintiffs from capitalizing or selling their Shares (or converting the Note) were bad faith retaliation for Plaintiffs' refusal to enter into an 8 for 1 share exchange that Quantum kept trying to extort Suprock to enter into.   When Mr. Suprock questioned why he would enter into such an agreement and requested time to have counsel review it, he was met with invective and threats of litigation by Quantum (which threats Quantum followed through on by virtue of its meritless litigation in the Related Action) through, among others, Craig Kitchen and William Hinz.  Quantum purported to revoke its 8 to 1 exchange offer on November 2, 2021, and set about to thwart Plaintiffs' attempts to sell their shares.

7.      Upon information and belief, the officers of the company, including Dennis Danzik, William Hinz, and Craig Kitchen are looting Quantum and it is for this reason that they wish to eliminate any shareholders who might notice and raise issues with their looting, including Plaintiffs.  Indeed, Quantum is being run, in part, by Danzik, who, until recently, had a judgment of over $7 million against him arising out of claims that he stole tax credits from the last public company he ran (RDX Technologies Corporation), who was held in criminal and civil contempt in New York for violating multiple court orders and stealing money that was the subject of an attachment order, who was the subject of an arrest warrant, and who was a fugitive on the run.

/ / /

## THE PARTIES

8.    Plaintiff John L. Suprock is a natural person and a citizen of South Dakota.

9.    Plaintiff Laurie L. Suprock is a natural person and a citizen of South Dakota.

10.    Plaintiff Consortium LLC is a South Dakota limited liability company with its principal place of business in South Dakota.  Mrs. Suprock is the sole member and manager of Consortium.  Thus, Consortium is also a citizen of South Dakota.

11.    Plaintiff Renewable Energy Now, LLC is a Montana limited liability company with its principal place of business in Montana.  Mr. Suprock is President of Renewable Energy.  Thus, Renewable Energy is a citizen of Montana and South Dakota.

12.    Defendant Quantum Energy, Inc. is a publicly traded Nevada corporation with its principal place of business in Nevada.  Thus, it is a citizen of Nevada.

13.    Defendant ClearTrust, LLC is a Florida limited liability company with its principal place of business in Florida.  Upon information and belief, none of its members are citizens of South Dakota or Montana.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) since it is between citizens of different states and the amount in controversy is greater than $75,000.

15.    This Court has general personal jurisdiction over Quantum since it is a Nevada corporation with its principal place of business in Nevada.  This Court has specific personal jurisdiction over ClearTrust because it has substantial contact with Nevada, in that it has purposefully directed its activities towards Nevada and consummated a transaction with a Nevada citizen, namely Quantum, and purposefully availed itself of the privilege of conducting activities in the forum; the claim arises out of ClearTrust's activities in the forum, namely acting as transfer agent for Quantum, a Nevada corporation; and exercise of jurisdiction would be reasonable.

16.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the acts complained of occurred in the District of Nevada, and a substantial portion of the events/omissions giving rise to the acts complained of occurred in the Nevada.

/ / /

## I.     JURY DEMAND

17.     Plaintiff demands trial by jury.

## II.     FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

**A.**     Issuance of the Shares That Quantum and ClearTrust Improperly Refused To Allow to be Transferred Under Rule 4(a)(1) With the Removal of the Restrictive Legend

18.     On March 31, 2014, Quantum entered into a 6% Series B Convertible Preferred Stock Purchase Agreement, pursuant to which Mr. Suprock purchased and was delivered 200,000 shares of 6% Series B Convertible Preferred Stock. Mr. Suprock made full payment of $200,000, or $1.00 per share, and/or tendered full consideration for said shares at the time of his acquisition.

19.     On or about March 11, 2016, Quantum authorized the issuance of 400,000 shares of Common Stock to Consortium pursuant to the conversion terms of the March 31, 2014 6% Series B Stock Purchase Agreement with Mr. Suprock and the terms of the 6% Series B Convertible Preferred Certificate of Designations (attached as Exhibit A to the March 31, 2014 agreement) with a conversion ratio agreed by Quantum at 1:2 (200,000=400,000) based on a conversion notice received March 2, 2016 from Mr. Suprock, and instructed Quantum's prior transfer agent, Pacific Stock Transfer, to issue said shares to Consortium. On March 11, 2016, said 400,000 shares of Common Stock were issued to Consortium. Consortium made full payment and/or tendered full consideration for said shares at the time of the issuance to Consortium.

20.     On or about April 11, 2017, Quantum issued and delivered to Mr. Suprock 850,000 shares of Common Stock of Quantum, as compensation under and pursuant to a referral agreement, dated as of March 30, 2017, between Quantum and a company belonging to Mr. Suprock.

21.     On January 16, 2018, the Suprocks entered into a Stock Purchase Agreement with Stanley F. Wilson ("Wilson"), pursuant to which the Suprocks purchased and were delivered, as joint tenants, 850,000 shares of Common Stock of Quantum.

22.     On January 16, 2018, Mr. Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which Mr. Suprock purchased and was delivered 325,000 shares of Common Stock of Quantum.

/ / /

23.     On January 16, 2018, Mrs. Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which Mrs. Suprock purchased and was delivered 325,000 shares of Common Stock of Quantum.

24.     On March 8, 2018, Mr. Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which Mr. Suprock purchased and was delivered 650,000 shares of Common Stock of Quantum.

25.     The consideration for the purchase of the Shares was fully provided to Wilson and Quantum, respectively, in excess of two years ago.

26.     Neither Mr. Suprock nor Mrs. Suprock is now, or has ever been, a director or executive officer of Quantum.

27.     No partner, member, officer, director, or employee of Consortium or Renewable Energy is now, nor has ever been, a director or executive officer of Quantum.

28.     Prior to January 12, 2022, neither Mr. Suprock nor Mrs. Suprock, nor any partner, member, officer, director, or employee of Consortium or Renewable Energy has ever been a record or beneficial holder of 10% or more of Quantum's issued and outstanding Common Stock.

29.     None of Mr. Suprock, Mrs. Suprock, Consortium, or Renewable Energy has ever been controlled by or under common control with Quantum and none of them has ever had any contractual rights to exercise any control over Quantum.

30.     None of Mr. Suprock, Mrs. Suprock, Consortium, or Renewable Energy has the ability, by relationship, contract or otherwise, to affect the management or policies of Quantum.

31.     None of Mr. Suprock, Mrs. Suprock, Consortium, or Renewable Energy possesses the power, directly or indirectly, to elect or designate any member of Quantum's Board of Directors.

32.     There are no familial relationships and no other business relationships among Mr. Suprock, Mrs. Suprock, Consortium, and Renewable Energy, on the one hand, and Quantum, on the other hand.

33.     There are no other indicia of control with respect to Quantum as exhibited by Mr. Suprock, Mrs. Suprock, Consortium, or Renewable Energy.

/ / /

34.     Mr. Suprock, Mrs. Suprock, Consortium, and Renewable Energy have been, always, passive investors in Quantum.

35.     None of Mr. Suprock, Mrs. Suprock, Consortium, or Renewable Energy is a dealer.

36.     At the time of each acquisition, each of Mr. Suprock, Mrs. Suprock, Consortium, and Renewable Energy acquired the Shares with investment intent and without a view to a distribution.

37.     On November 15, 2021, Mr. Suprock, Mrs. Suprock, and Consortium submitted a request to ClearTrust, Quantum's transfer agent, to remove the "restrictive" legend on the Shares.

38.     Included in the submission was a legal opinion, dated November 12, 2021, that opined that Mr. Suprock's, Mrs. Suprock's and Consortium's Shares were exempted from registration under Rule 144, are unrestricted and freely tradeable, and that the "restrictive" legend on the Shares should be removed.  The legal opinion is attached hereto as Exhibit 1.  In particular, Rule 144(d)(1)(i) sets forth as follows:

> (1) General rule. (i) If the issuer of the securities is, and has been for a period of at least 90 days immediately before the sale, subject to the reporting requirements of section 13 or 15(d) of the Exchange Act, a minimum of six months must elapse between the later of the date of the acquisition of the securities from the issuer, or from an affiliate of the issuer, and any resale of such securities in reliance on this section for the account of either the acquiror or any subsequent holder of those securities.

39.     Mr. Suprock, Mrs. Suprock, and Consortium satisfied the six-month holding period, as did Mr. Wilson before them.

40.     As of November 12, 2021, Quantum was subject to the reporting requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934 ("Exchange Act"), and had been for at least 90 days prior to the intended sale of the Shares.  Further, Quantum had timely filed with the SEC on the EDGAR system all reports, and other materials required to be filed by Section 13 or 15(d) of the Exchange Act, during the preceding twelve months.  The additional requirements under Rule 144 were also satisfied as of the time of opinion letter.

41.     Following certain queries from ClearTrust that did not relate to the legal opinions concerning the status of the Shares, a revised legal opinion was submitted, dated November 19, 2021, attached hereto as Exhibit 2.  Like the November 12, 2021, letter, the November 19, 2021 opined that

the Shares were exempted from registration under Rule 144, are unrestricted and freely tradable, and that the "restrictive" legend on the Shares should be removed for the same reasons as set forth in the November 12, 2021, opinion letter. Again, in response to certain queries from ClearTrust that did not relate to the legal opinions concerning the status of the Shares, a revised legal opinion was submitted, also dated November 19, 2021, (attached hereto as Exhibit 3), that did not alter the legal opinion from the prior opinions.

42.     Rather than remove the "restrictive" legends, as required, ClearTrust requested proof of consideration for the Shares claiming that "a question regarding consideration has been brought up." Upon information and belief, Quantum "brought up" this question regarding whether Plaintiffs paid proper consideration for the Shares.

43.     Plaintiffs promptly provided this information, and supplied revised Opinion Letters, dated December 3, 2021, attached hereto as Exhibit 4, for Mr. and Mrs. Suprock on the one hand, and for Consortium on the other, as requested by ClearTrust although it had no effect on the substance of the legal opinions, that contained the same legal opinions from the November opinion letters.

44.     ClearTrust sent Mr. and Mrs. Suprock's and Consortium's submissions concerning removal of the "restrictive" legend to Quantum. On December 17, 2021, Quantum, through counsel Hamilton & Associates Law Group, P.A., by Brenda Hamilton, sent a letter to ClearTrust, incorrectly claiming that Rule 144 was not available with respect to the Shares and directing ClearTrust not to process the legend removal from the Shares. Ms. Hamilton claimed that Quantum was not a mandatory reporting company, as Rule 144 would require, because it had less than 300 shareholders. But that was incorrect, because a form had to be filled out and submitted, and Quantum had not yet filed the required form (but has subsequently filed it). Quantum became a mandatory reporting company in 2018, when it filed a Registration Statement Under the Securities Act of 1933 (Form S-1/A) with the SEC to register its shares so that they may be sold in a public offering. Notably, all of Plaintiffs' Shares are listed in the Registration Statement. Counsel for Plaintiffs attempted to reach Ms. Hamilton by e-mail and phone to discuss, but she never returned any e-mail or phone call. Plaintiffs' counsel previously repeatedly asked for Quantum's counsel to call it to discuss the issues, but they never did.

/ / /

45.     To further thwart Plaintiffs' attempts to sell their Shares, on or about December 21, 2021, Quantum filed a Form 15, entitled "Certification and Notice of Termination of Registration under Section 12(g) of the Securities Exchange Act of 1934 or Suspension of Duty to File Reports Under Sections 13 and 15(d) of the Securities Exchange Act of 1934." Quantum claimed the ability to do so under Rule 15d-6. Quantum's purposefully rendering itself not subject to the reporting requirements of Sections 13 and 15(d) of the Exchange Act meant that Plaintiffs could not continue to rely upon Rule 144, and by such filing Quantum intended to delay and preclude Plaintiffs from selling the Shares. As noted above, until this Form 15 was filed, Quantum was a mandatory filer. The only reason for Quantum to file the Form 15 when it did, after filing with the SEC for years, was to prevent Plaintiffs from selling their Shares.

46.     Accordingly, on January 7, 2022, Mr. and Mrs. Suprock and Consortium submitted opinion letters, dated January 7, 2022, attached hereto as Exhibit 5, setting forth that the Shares are unrestricted and freely tradeable in the hands of Plaintiffs, the sale of the Shares into the public markets is exempted from registration under Section 4(a)(1) promulgated under the 1933 Act ("Section 4(a)(1)"), and the restrictive legend or stop transfer orders on the Shares should be removed. Plaintiffs had not previously included the analysis under Section 4(a)(1) because Rule 144 clearly applied. Section 4(a)(1) exempts from registration requirements "transactions by any person other than an issuer, underwriter, or dealer." A holder of securities, who is not an issuer or a dealer is, therefore, able to sell their securities without registration if the holder is not an underwriter, as defined in Section 2(a)(11) of the 1933 Act. As the opinion letters made clear, none of Mr. and Mrs. Suprock, or Consortium is an underwriter, dealer, or issuer.

47.     Quantum has never suggested that Plaintiffs were a dealer or issuer, and, as the January 7, 2021 and subsequent opinion letters from Plaintiffs' securities counsel demonstrate, they are and were not, nor were or are they underwriters as defined in Section 2(a)(11) of the 1933 Act because they did not acquire the Shares with a view towards distribution and were not participating in a distribution, which generally means an offering that is not a private offering.

48.     Implicit within Section 2(a)(11) of the 1933 Act is the conclusion that a seller of securities is not an "underwriter" unless a "distribution" is present. Although "distribution" is not

defined in the 1933 Act, the Securities and Exchange Commission (the "Commission") has stated that a "distribution" "comprises the entire process by which in the course of a public offering a block of securities is dispersed and ultimately comes to rest in the hands of the investing public." The Commission and some courts have equated the term "distribution" with a "public offering."

49.     The last sentence of Section 2(a)(11) provides that, for purposes of such section, the term "issuer" includes not only the actual issuer of a security, but also any person in a "control" relationship with the Company. Thus, if a "distribution" is involved, a seller of securities will be considered to be an "underwriter" to whom the Section 4(a)(1) exemption from registration will not be available if any of the following apply:

  • The seller purchased his or her securities from the issuer (or an affiliate of the issuer) with a view to their distribution;

  • The seller is offering or selling for the issuer (or an affiliate of the issuer) in connection with the distribution of the securities;

  • The seller participates or has a direct or indirect participation in any such distribution; or

  • The seller participates or has a participation in the direct or indirect underwriting of any such distribution.

These four characteristics are sometimes referred to as the "four tests of underwriter status."

50.     Where, as here, shares have "come to rest" in the hands of a "nonaffiliate holder" after the passage of an appropriate period of time, and there is no evidence showing that the holder took the shares with a view to distribution, the shares may be sold under Section 4(a)(1).

51.     On or about January 12, 2022, Quantum announced the purported return and retirement of 19,382,676 common shares, which, according to Quantum reduced the outstanding common shares to 30,455,943 from 49,828,629. ClearTrust stated the number of outstanding shares was 31,970,497 as of January 12, 2022. Quantum claimed that it had entered into settlement agreements with four former officers and directors and one former affiliate shareholder of Quantum resulting in the asserted reduction. None of Plaintiffs was a party to such settlement agreements. The goal of Quantum's retirement of the shares was so it could argue that Plaintiffs had then become holders of greater than

9.99% of the outstanding Common Stock of Quantum and therefore were "affiliates" of Quantum, and thereby were precluded from selling the Shares for this reason.

52.   On the same date, ClearTrust informed counsel for Plaintiffs that Quantum still did not approve of the legend removal request for Plaintiffs on the basis that each is an "affiliate" of Quantum and a beneficial holder of more than 9.99% of Quantum's common stock.  Due solely to the share retirement executed by Quantum, Plaintiffs may now be deemed to be the record or beneficial holders of 10% or more of Quantum's issued and outstanding common stock, but only if the holdings of each Plaintiff are counted together.

53.   None of Plaintiffs is an affiliate of Quantum, even despite the reduction in Quantum's outstanding shares of Common Stock, as set forth in a final opinion letter from Plaintiffs' securities counsel, dated January 13, 2021, and attached hereto as Exhibit 6.  The term "affiliate" is defined in Rule 405 under the 1933 Act as a "person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with," an issuer. The term "control" is defined in Rule 405 under the Act as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."

54.   The SEC Staff has consistently taken the position that the determination of "control" status is dependent in large part on the facts and circumstances involved and, therefore, has declined to state definitively what circumstances will result in a person being deemed to be in "control" of an issuer. Ten percent ownership, standing alone, is not dispositive of the question of "control" status.

55.   In this matter, among other reasons, due to the passage of more than two years between the date of the sale of the Shares to Plaintiffs and Wilson's and Quantum's, respectively, receipt of full consideration therefore, and Plaintiffs' requests to remove the "restrictive" legend and sell their Shares, (i) none of the "four tests of underwriter status" applies to any of Plaintiffs and therefore none of Plaintiffs should be deemed to be an "underwriter", (ii) none of the Plaintiffs should be deemed to be an affiliate or control person of Quantum, and (iii) none of the Shares should be deemed to be "control securities."

///

56.     Furthermore, none of Plaintiffs has ever had, or presently has, the power to direct or cause the direction of the management and polices of Quantum in any manner.

57.     Accordingly, the "restrictive" legend should be removed from the Shares in accordance with the exemption from registration requirements of Section 5 of the 1933 Act provided by Section 4(a)(1).

58.     On January 24, 2022, ClearTrust informed Plaintiff's counsel that Quantum did not approve the legend removal for Plaintiffs on the asserted basis that each was an affiliate of Quantum and a beneficial holder of more than 9.99% of Quantum's stock, which Plaintiffs had already demonstrated was incorrect.

59.     On February 7, 2022, ClearTrust rejected Plaintiffs' request to remove the "restrictive" legend from Plaintiffs' Shares.

60.     Rather than continue to go back and forth with ClearTrust and Quantum, when it was clear Quantum would not consent to removal of the "restrictive" legend from Plaintiffs' shares under any circumstances, and would go to any length to deprive Plaintiffs of the ability to sell their Shares, Plaintiffs commenced this lawsuit.

**B.**     Additional Common Stock Shares

61.     On or about June 10, 2014, Quantum issued to Renewable Energy Now, LLC 120,000 Common Stock shares (the "Renewable Energy Shares").   The Renewable Energy Shares were reflected in certificate No. 3246, CUSIP # 7476455208.   The shares were issued as payment for services Renewable rendered under an engagement letter with Quantum dated March 2014.

62.     Quantum improperly cancelled these shares.   Mr. Suprock was informed of the cancellation in 2019.

**C.**     The Note And Quantum's Refusal To Convert To Shares

63.     On October 29, 2019, Mr. Suprock entered into an 8% Promissory Note with Quantum, in the amount of $20,000 (the "Note"), pursuant to which Quantum promised to repay Mr. Suprock the $20,000 principal loaned by Mr. Suprock 24 months after the date of the Note.

64.     Pursuant to the Note, Quantum was also to pay Mr. Suprock interest at the rate of 8% per annum in shares of restricted Common Stock of Quantum.

65. Mr. Suprock wired $20,000 to Quantum, to the account of Quantum's lawyer, Jerold N. Siegan, pursuant to the Note and the wire instructions provided by Quantum. The Note contained a Notice of Conversion pursuant to which Mr. Suprock could convert any amount of principal and accrued and unpaid interest into Quantum Common Stock at $0.05 per share.

66. Accordingly, $20,000 would become 400,000 shares of Quantum Stock.

67. On October 29, 2021, Mr. Suprock submitted the Notice of Conversion to Craig Kitchen of Quantum, with a copy to Quantum's counsel, pursuant to the terms of the Note. Under the terms of the note, the $20,000 principal plus $3,328 in interest as of October 29, 2021 should have been converted to 466,560 shares.

68. On the same day, Mr. Kitchen rejected the conversion.

69. Also on the same day, Gustave P. Passanante, Esq., who claimed he was counsel for Quantum, wrote directly to Mr. Suprock, stating that the authority to exercise a conversion rested with ClearTrust and directed Mr. Suprock to contact ClearTrust.

70. Plaintiffs' counsel, Joshua Wurtzel, e-mailed Eric Benzenberg (from the same law firm as Mr. Passanante) asking him to call to discuss. While Mr. Benzenberg told Mr. Wurtzel he would look into it, he never substantively responded thereafter.

71. On December 6, 2021, the undersigned firm wrote to ClearTrust demanding that Quantum issue the shares required under the Note's conversion terms immediately.

72. On December 7, 2021, ClearTrust responded acknowledging receipt, but asserting that it could not issue such shares absent issuance instructions from Quantum together with a resolution documenting Quantum's Board's authorization.

73. Also on December 7, 2021, William Westbrook, the CFO of Quantum, wrote undersigned counsel requesting a copy of a wire transfer or check for the $20,000 and a copy of the executed note, which undersigned counsel promptly provided. Mr. Westbrook then wrote back requesting a copy of a purchase agreement asking why the wire was sent to Quantum's counsel at the time, Jerold Siegan.

74. Mr. Westbrook's request made no sense, as there would be no purchase agreement, since, as the Note made clear, the $20,000 provided by Mr. Suprock was a loan. Nevertheless,

undersigned counsel responded that the wire was sent to Mr. Siegan at the request of Quantum's then president, Jeff Mallmes.

75.     Neither Quantum nor ClearTrust responded after that, and neither issued the shares required under the terms of the Note.

76.     Quantum has never paid any principal or interest on the Note either.

## FIRST CAUSE OF ACTION

### (Conversion Against Quantum)

77.     Plaintiffs repeat and reallege the above paragraphs as if they were set forth fully herein.

78.     Plaintiffs, collectively, hold 3,400,000 shares of Common Stock of Quantum.

79.     Pursuant to Section 4(a)(1) of the Securities Act of 1933, the Shares are freely marketable, and Plaintiffs should have been able to sell them.

80.     Plaintiffs submitted representation letters and opinions of counsel to ClearTrust and Quantum which opined as to why Plaintiffs were legally entitled to sell their Shares under Section 4(a)(1).

81.     Quantum, however, refused to approve Plaintiffs' submissions and to direct ClearTrust to remove the "restrictive" legend on the Shares.  Quantum did this to prevent Plaintiffs from being able to sell the Shares.

82.     Plaintiffs had, and have, legal ownership of the Shares.

83.     Quantum exercised an unauthorized and wrongful dominion over the Shares to the exclusion of Plaintiffs' rights by knowingly and intentionally preventing Plaintiffs from being able to sell, or otherwise dispose of, the Shares.

84.     Quantum was not acting in good faith when it took these actions.

85.     As a result, Plaintiffs suffered damages in an amount to be determined at trial against Quantum, but no less than the difference between the value of the Shares on November 15, 2021, or January 17, 2022 and the value of the Shares when Plaintiffs ultimately sells them, plus the time-value of money for the delay caused by Quantum.

/ / /

/ / /

86.     Plaintiffs are also entitled to punitive damages against Quantum because the conduct of Quantum amounted to gross, wanton, or willful fraud, and malicious wrongdoing as to involve a high degree of moral culpability.

## SECOND CAUSE OF ACTION

### (Conversion Against Quantum)

87.     Plaintiffs repeat and reallege the above paragraphs as if they were set forth fully herein.

88.     Quantum improperly, and without basis, cancelled the Renewable Energy Shares.

89.     Renewable Energy had, and has, legal ownership of the Renewable Energy Shares.

90.     Quantum exercised an unauthorized dominion over the Renewable Energy Shares to the exclusion of Renewable's rights by knowingly and intentionally cancelling the Renewable Energy Shares without basis.

91.     Quantum was not acting in good faith when it took these actions.

92.     As a result, Plaintiffs suffered damages in an amount to be determined at trial against Quantum, but no less than the difference between the value of the Renewable Energy Shares as of the date of cancellation.

93.     Renewable Energy is also entitled to punitive damages against Quantum because the conduct of Quantum amounted to gross, wanton, or willful fraud, and malicious wrongdoing as to involve a high degree of moral culpability.

## THIRD CAUSE OF ACTION

### (Breach of Contract Against Quantum)

94.     Plaintiffs repeat and reallege the above paragraphs as if they were set forth fully herein.

95.     Quantum entered into the Note with Mr. Suprock, pursuant to which Quantum promised to repay Mr. Suprock the $20,000 principal loaned by Mr. Suprock 24 months after the date of the Note.

96.     Pursuant to the Note, Quantum was also to pay Mr. Suprock interest at the rate of 8% per annum in shares of restricted Common Stock of Quantum.

/ / /

/ / /

97.  The Note contained a Notice of Conversion pursuant to which Mr. Suprock could convert any amount of principal and accrued and unpaid interest into Quantum Common Stock at $0.05 per share.

98.  The Note constitutes a valid contract binding upon Quantum.

99.  Mr. Suprock performed fully pursuant to the terms of the Note.

100.  On October 29, 2021, Mr. Suprock submitted the Notice of Conversion to Craig Kitchen of Quantum, with a copy to Quantum's counsel, pursuant to the terms of the Note.  Under the terms of the note, the $20,000 principal plus $3,328 in interest as of October 29, 2021 should have been converted to 466,560 shares.  Additional shares are owed as interest has continued to run since October 29, 2021.

101.  Quantum has refused to issue the required shares under the Note.

102.  In refusing to issue the shares required by the Note, Quantum has breached the Note.

103.  Quantum's refusal to issue the shares is bad faith, wanton, or willful fraud, and malicious wrongdoing as to involve a high degree of moral culpability.

104.  As a result, Mr. Suprock has been injured in an amount to be determined at trial, plus pre- and post-judgment interest, attorneys' fees, and punitive damages.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment Against Defendants)

105.  Plaintiffs repeat and reallege the above paragraphs as if they were set forth fully herein.

106.  The Shares are freely marketable, and should have the "restrictive" legend that is located on them removed.  Aside from the restriction imposed under the Securities Act of 1933 (which should be lifted under Section 4(a)(1)), there are no other restrictions on Plaintiffs' abilities to sell, pledge, or otherwise dispose of the Shares.

107.  Quantum and ClearTrust have erroneously and improperly refused to remove the Securities-Act "restrictive" legend on the Shares.

108.  There is a dispute concerning whether the "restrictive" legend on the Shares should be removed and whether the Shares should be freely marketable.

109.  This is a justiciable dispute.

110.    Plaintiffs will be unable to sell these Shares if Quantum and ClearTrust do not remove the "restrictive" legend – or if Quantum does not cause ClearTrust to do so – and this will cause Plaintiffs serious and irreparable harm absent a declaratory judgment requiring all Defendants to remove the "restrictive" legend on the Shares.

111.    Plaintiffs have no adequate remedy at law.

112.    The equities are balanced in Plaintiffs' favor.

113.    The Court should issue a declaratory judgment that Defendants must remove the "restrictive" legend, and any other legend, on the Shares.

### FIFTH CAUSE OF ACTION

#### (Declaratory Judgment Against Defendants)

114.    Plaintiffs repeat and reallege the above paragraphs as if they were set forth fully herein.

115.    Quantum and ClearTrust have erroneously and improperly refused to issue the 466,560 shares, plus any additional shares based on further accrued interest.

116.    This is a justiciable dispute.

117.    Mr. Suprock has no adequate remedy at law.

118.    The equities are balanced in Mr. Suprock's favor.

119.    The Court should issue a declaratory judgment that Defendants must issue to Mr. Suprock the 466,560 shares, plus any additional shares based on further accrued interest, pursuant to the Note.

120.    Further, the Court should issue a declaratory judgment that the shares must be issued without the "restrictive" legend, and any other legend, on the shares, for the reasons set forth above.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs John L. Suprock, Laurie L. Suprock, Consortium, and Renewable Energy respectfully request that this Court enter judgment in their favor against Defendants Quantum and ClearTrust on all their Causes of Action as follows:

1.    On the First Cause of Action awarding Plaintiffs damages in an amount to be determined at trial, but no less than the difference between the value of the Shares on November 15, 2021 or January 17, 2022 and the value of the Shares when Plaintiffs

ultimately sells them, plus the time-value of money for the delay caused by Quantum, plus pre-and post-judgment interest, punitive damages, attorneys' fees, and costs of prosecuting their claims;

2.   On the Second Cause of Action, awarding Plaintiffs damages in an amount to be determined at trial plus pre-and post-judgment interest, punitive damages, attorneys' fees, and costs of prosecuting their claims;

3.   On the Third Cause of Action, awarding Plaintiffs an amount to be determined at trial with respect to the shares required to be issued pursuant to the Note, plus pre-and post-judgment interest, punitive damages, attorneys' fees, and costs of prosecuting their claims;

4.   On the Fourth Cause of Action, a declaratory judgment that Defendants must remove the "restrictive" legend, and any other legend, on the Shares;

5.   On the Fifth Cause of Action, a declaratory judgment that Defendants must issue to Mr. Suprock the 466,560 shares, plus any additional shares based on further accrued interest, pursuant to the Note, and that such shares must be issued without the "restrictive" legend, and any other legend; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

6.   Such other and further relief as may be just and proper.

DATED this 18th day of March, 2022.

**WILEY PETERSEN**

By: _____

JONATHAN D. BLUM, ESQ.
Nevada Bar. No. 9515
1050 Indigo Drive, Suite 200B
Las Vegas, Nevada 89145
Telephone: (702) 910-3329
Facsimile: (702) 553-3467
E-Mail: jblum@wileypetersenlaw.com

SAMUEL BUTT, ESQ.
Will comply w/ LR IA 11-2 within 14 days
JOSHUA WURTZEL, ESQ.
Will comply w/ LR IA 11-2 within 14 days
**SCHLAM STONE & DOLAN LLP**
New York Bar No. 5210356
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
E-mail:  sbutt@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Plaintiffs, John L. Suprock,*
*Laurie L. Suprock, Consortium, LLC, and*
*Renewable Energy Now, LLC*

# EXHIBIT 1

# STEIN LAW, PLLC

Keith B. Stein, Esq.
917-859-9744
kstein@steinlaw-pllc.com

November 12, 2021

**VIA E-MAIL**

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn:  Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn:  Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Re:  **John Suprock, Laurie Suprock and Consortium LLC**

To Whom It May Concern:

This firm has been retained by John Suprock ("JS") and Laurie Suprock ("LS"), natural persons and husband and wife (together, "Suprock"), and Consortium LLC, a limited liability company duly organized and validly existing under the laws of the state of South Dakota, and as to which LS is the sole member and manager ("Consortium", and together with Suprock and their respective Roth IRAs (as described below), the "Seller"), to render an opinion concerning whether the "restricted" legend on the shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc. (the "Company") owned by Seller, which consists of a total of 3,400,000 shares (the "Shares"),  may be removed under Rule 144 of the Securities Act of 1933, as amended. We are providing this opinion to Clear Trust, LLC, the Company's transfer agent, and to the Company, to confirm that the Shares are exempted from registration under Rule 144 of the Securities Act, are unrestricted and freely tradable in the hands of Seller, and the "restricted" legend on the Shares should be removed.

In connection with such representation, we have reviewed and rely on Suprock's representation letter, dated November 11, 2021 (the "Representation Letter"), a copy of which is attached hereto as Exhibit A, and have assumed that the representations contained therein are complete, truthful, and accurate.

Quantum Energy, Inc.
Clear Trust, LLC
November 12, 2021
Page 2 of 6

In addition, we have also examined certificates of public officials, corporate documents and records and other certificates and instruments and have made other investigations as we have deemed necessary in connection with our opinions set forth in this letter. Such documents include, without limitation, the Company's SEC filings and other instruments and documents as we have deemed necessary or appropriate for the purposes of rendering this opinion.  During our examination of the documents described in this paragraph and the prior paragraph, we have assumed the genuineness of all signatures, the authenticity of all documents submitted to us as originals or reviewed by us from public filings, and the conformity to the original documents of all copies submitted to us or reviewed by us from public filings.

No opinion is expressed herein with respect to laws other than the laws of the State of New York and the federal laws of the United States.

As described in the Representation Letter, the Shares are owned by Seller as the result of the following transactions:

(a)     Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, the Company, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson"). We believe that Wilson made full payment and/or tendered full consideration for the Shares, as required by Rule 144(d), at the time of his acquisition.

(b)     On October 13, 2013, the Company authorized the implementation of a forward stock split of the issued shares of the Company's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 Shares held by Wilson becoming 30,000,000 Shares.

(c)     On April 8, 2017, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 850,000 shares of Common Stock of the Company.

(d)     On January 16, 2018, John Suprock and Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock and Laurie Suprock purchased and were delivered, as joint tenants, 850,000 shares of Common Stock of the Company.

(e)     On January 16, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which The John Suprock Roth IRA purchased and was delivered 325,000 shares of Common Stock of the Company.

(f)     On January 16, 2018, Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which The Laurie Suprock Roth IRA

Quantum Energy, Inc.
Clear Trust, LLC
November 12, 2021
Page 3 of 6

purchased and was delivered 325,000 shares of Common Stock of the Company.

(g) On March 8, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 650,000 shares of Common Stock of the Company.

(h) On March 11, 2018, Consortium entered into a Stock Purchase Agreement with Wilson, pursuant to which Consortium purchased and was delivered 400,000 shares of Common Stock of the Company.

As stated in the Representation Letter, none of JS, LS, nor Consortium is an underwriter with respect to the Shares, nor will the proposed sale of the Shares be part of a distribution of securities of the Company, as those terms are used in Section 2(11) of the Securities Act. As further stated in the Representation Letter, neither JS nor LS is now, and for the 90 days before the date of this letter neither of them has been, an officer, director, or 10% stockholder of the Company, or in any other way an "affiliate" of the Company, as that term is defined in Rule 144(a)(1) promulgated under the Securities Act ("Rule 144"), and no partner, member, officer, director or employee of Consortium is now, and for the 90 days before the date of this letter none of such persons has been, an officer, director, or 10% stockholder of the Company, or in any other way an "affiliate" of the Company.

Based upon and subject to the foregoing and having considered such questions of law as we have deemed necessary as a basis for the opinions expressed below, we are of the opinion that:

1. To our knowledge, (i) none of JS, LS nor any of the partners, members, officers, directors or employees of Consortium is a director, executive officer or 10% shareholder of the Company nor has been one for at least the preceding 90 days, and (ii) none of JS, LS, Consortium, nor any of the partners, members, officers, directors or employees of Consortium is an "affiliate" of the Company.

2. Rule 144(d)(1)(i) sets forth the general rule for the holding period for restricted securities, as follows:

> (1)  *General rule. (i) If the issuer of the securities is, and has been for a period of at least 90 days immediately before the sale, subject to the reporting requirements of section 13 or 15(d) of the Exchange Act, a minimum of six months must elapse between the later of the date of the acquisition of the securities from the issuer, or from an affiliate of the issuer, and any resale of such securities in reliance on this section for the account of either the acquiror or any subsequent holder of those securities.*

Presuming that Wilson was or became an affiliate of the Company at the time he acquired the Shares from the Company in June 2013, and regardless of whether or not he was an affiliate of the Company at the time he first sold Shares to Seller on April 8, 2017, he had held the Shares for a period of at least six (6) months prior to the transfer of any Shares to

Quantum Energy, Inc.
Clear Trust, LLC
November 12, 2021
Page 4 of 6

Seller, and Seller has held the Shares for longer than six months.  Thus, the six-month holding period has been satisfied by Seller.

3.     To our knowledge, the Company is subject to the reporting requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934 ("Exchange Act"), as applicable, and has been for at least 90 days prior to the intended sale of the Shares.

4.     (i) To our knowledge, subject to Paragraph 9 below, the Company has timely filed with the SEC on the EDGAR system all reports, and other materials required to be filed by Section 13 or 15(d) of the Exchange Act, as applicable, during the preceding 12 months. We further assume that the Company will timely file or has already timely filed with the SEC on the EDGAR system all reports, and other materials required to be filed by Section 13 or 15(d) of the Exchange Act, as applicable, between now and the earlier of (A) the date of the sale of all of the Shares and (B) the date that is three hundred sixty-five (365) days from the date of this letter (the "Outside Sale Date").

(ii) If the Company fails to timely file with the SEC on the EDGAR system any reports or other materials required to be filed by Section 13 or 15(d) of the Exchange Act (except for certain Forms 8-K), as applicable, between now and the earlier of the date of the sale of all of the Shares and the Outside Sale Date, it is and would be our opinion that (A) the Company is not in compliance with the requirements of Section 13 or 15(d) of the Exchange Act that the Company has timely filed with the SEC on the EDGAR system all reports and other materials during the preceding 12 months, (B) that at such time, the sale of the Shares by Seller would not be exempt from registration under the Securities Act pursuant to Section 4(a)(1) and Rule 144 (including Rule 144(b)) thereunder, and (C) that the Shares may not be sold without registration under the Securities Act and the legend may not be removed from the Shares.

5.     To our knowledge, the Company is a former shell company as defined in Rule 144(i); however, it is currently subject to the Exchange Act's reporting requirements, it has satisfied all "Form 10" information filing requirements, and it has been current on all of its required SEC filings for the last year and meets the requirements of Rule 144(i)(2), and is therefore no longer a shell company.

6.     Based on the representations and covenants made to us by Suprock, the Shares will be sold in "broker's transactions" within the meaning of Section 4(4) of the Securities Act and in compliance with Rule 144(f).

7.     We have relied upon Suprock's representations and covenants to us that the Shares will be sold by no later than the Outside Sale Date in "broker's transactions" in the public market, in making our determination that any applicable "impending sale" requirements under Rule 144 have been satisfied.

8.     The sale of the Shares by Seller is exempt from registration under the Securities Act pursuant to Section 4(a)(1) and Rule 144(b) thereunder and may be sold without registration, assuming sold by close of business on the Outside Sale Date (or earlier, if applicable), subject to our opinion set forth above in Paragraph 4(ii) and below in Paragraph 9.

Quantum Energy, Inc.
Clear Trust, LLC
November 12, 2021
Page 5 of 6

9.     The "restricted" legend may be removed from the Shares; *provided, however,* (i) notwithstanding any statement of fact or opinion set forth in this letter, to the extent that any such statement of fact in this letter is not true and correct as of the date hereof and/or (ii) in the event that the Shares have not been sold by the Outside Sale Date (as defined in Paragraph 4(i) above), the opinions rendered in this letter shall not be effective, this opinion letter shall be deemed voided and of no further force or effect, and the "restricted" legend should be reinstated to the Shares by the Company's transfer agent.

This opinion is being rendered for your benefit only and may not be used or relied upon, nor may copies be delivered to, any other person or entity without our express written consent in connection with the matters set forth herein; except that you may deliver copies of this opinion to (a) your attorneys and other professional advisors acting on your behalf in connection with the transactions described herein, (b) governmental regulatory agencies having jurisdiction over you to the extent disclosure of the opinion is required by applicable law or regulation, and (c) designated persons pursuant to order or legal process of any court or governmental agency or authority of competent jurisdiction.

Whenever our opinion herein with respect to the existence or absence of facts is qualified by the phrase "to our knowledge" or "known to us," it is intended to indicate that during our representation of Seller, no information has come to our attention that would give us actual knowledge of the existence or absence of such facts.  Except to the extent expressly set forth herein, and except for a review of our own files and discussions with Seller, we have not, however, undertaken any independent investigation to determine the existence or absence of such facts, and no inference as to our knowledge of the existence or absence of such facts should be drawn from the fact of our representation of such parties. We have assumed, with your permission, that all signatures of all the parties to the Representation Letter are authentic.

Very truly yours,

STEIN LAW, PLLC

Keith B. Stein, Esq.

cc:     Joshua Wurtzel, Esq. (by e-mail)
        Samuel L. Butt, Esq. (by e-mail)

**EXHIBIT A**

**Representation Letter**
(See attached)



An enterprise beyond the resources of any one member

# Consortium LLC

November 11, 2021

**BY E-MAIL**

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn:  Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn:  Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Stein Law, PLLC
P.O. Box 606
Salisbury, CT 06068
Attn: Keith B. Stein, Esq.
Email: kstein@steinlaw-pllc.com

Re:    **John Suprock, Laurie Suprock and Consortium LLC - Rule 144 Seller's Representation Letter**

To Whom It May Concern:

      The undersigned, John Suprock and Laurie Suprock, hereby represent that we are natural persons and husband and wife.  Laurie Suprock hereby represents that I am the sole member and manager of Consortium LLC, a South Dakota limited liability company ("Consortium").  We write to request the removal of the "restricted" legend in accordance with Rule 144 of the Securities Act of 1933, as amended (the "Securities Act"), on the shares of common stock, $0.001 par value (the "Common Stock"), of Quantum Energy, Inc. (the "Company"), that we, our respective Roth IRAs, and Consortium own, which consists of a total of 3,400,000 shares (the "Shares") that were received as the result of the following transactions:

(a)     Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, the Company, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson").  We believe that Wilson made full payment and/or tendered full consideration for the Shares, as required by Rule 144(d), at the time of his acquisition.

(b)     On October 13, 2013, the Company authorized the implementation of a forward stock split of the issued shares of the Company's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 Shares held by Wilson becoming 30,000,000 Shares.

(c)     On April 8, 2017, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 850,000 shares of Common Stock of the Company.

(d)     On January 16, 2018, John Suprock and Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock and Laurie Suprock purchased and were delivered, as joint tenants, 850,000 shares of Common Stock of the Company.

(e)     On January 16, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which The John Suprock Roth IRA purchased and was delivered 325,000 shares of Common Stock of the Company.

(f)     On January 16, 2018, Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which The Laurie Suprock Roth IRA purchased and was delivered 325,000 shares of Common Stock of the Company.

(g)     On March 8, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 650,000 shares of Common Stock of the Company.

(h)     On March 11, 2018, Consortium entered into a Stock Purchase Agreement with Wilson, pursuant to which Consortium purchased and was delivered 400,000 shares of Common Stock of the Company.

In connection with the matters set forth in this Representation Letter, we have consulted with securities counsel of our choice.

In connection with this request, we hereby further represent as follows:

1.      Neither of us nor Consortium is an underwriter with respect to the Shares, nor will the proposed sale of the Shares be part of a distribution of securities of the Company, as those terms are used in Section 2(11) of the Securities Act.

2.      Neither of us are now, and for the 90 days before the date of this letter neither of us have been, an officer, director, or 10% stockholder of the Company, or in any other way an "affiliate" of the Company, as that term is defined in Rule 144(a)(1) promulgated under the Securities Act ("Rule 144").  No partner, member, officer, director, or employee of Consortium is now, and for the 90 days before the date

of this letter none of such persons has been, an officer, director, or 10% stockholder of the Company, or in any other way an "affiliate" of the Company.

3.      We and Consortium have satisfied the six-month holding period requirement for the Shares set forth in Rule 144(d)(1)(i).

4.      Based on our review of information furnished by the Company, we believe that there is adequate current public information available with respect to the Company, and the Company is not a "shell" company as described in Rule 144(i)(1) or has met the conditions of Rule 144(i)(2).

5.      We are familiar with Rule 144 and agree that, in connection with the matters described above, you are relying on the statements made above. Thus, we attest to the accuracy of the representations in this letter.

6.      We and Consortium have a present intention to sell the Shares within three hundred sixty-five (365) days from the date of this letter (the "Outside Sale Date") in "broker's transactions" in the public market.  Thus, this representation letter is a letter of impending sale. Any of the Shares that have not been sold by close of business on the Outside Sale Date shall be promptly returned to the Company's transfer agent and the same "restricted" legend shall be reinstated.

We agree that the Company and its transfer agent may rely upon the above statements in relying upon Stein Law, PLLC's opinion regarding the subject matter hereof.  We will promptly notify the persons and entities described in the prior sentence if we find the foregoing information is no longer accurate or complete.  In consideration of the reliance of the Company and its transfer agent thereon, we agree to jointly and severally fully indemnify Stein Law, PLLC, and its partners, officers, directors, employees, representatives and agents, for, and to jointly and severally hold each of them harmless against, any liability, loss, damage, cost or expense (including any counsel fees and expenses reasonably incurred by them) arising out of or relating to any incorrect statements or information given by us in this letter or concerning the sale.

Very truly yours,

John Suprock

Laurie Suprock

3

# EXHIBIT 2

# STEIN LAW, PLLC

Keith B. Stein, Esq.

917-859-9744

kstein@steinlaw-pllc.com

November 19, 2021

**VIA E-MAIL**

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn:  Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn:  Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Re:  **John Suprock, Laurie Suprock and Consortium LLC**

To Whom It May Concern:

This firm has been retained by John Suprock ("JS") and Laurie Suprock ("LS"), natural persons and husband and wife (together, "Suprock"), and Consortium LLC, a limited liability company duly organized and validly existing under the laws of the state of South Dakota, and as to which LS is the sole member and manager ("Consortium", and together with Suprock, the "Sellerss"), to render an opinion concerning whether the "restricted" legend on the shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc. (the "Issuer") owned by Sellers, which consists of a total of 3,400,000 shares (the "Shares"),  may be removed under the Securities Act of 1933, as amended (the "Act") and Rule 144 promulgated thereunder ("Rule 144"). We are providing this opinion to Clear Trust, LLC, the Issuer's transfer agent, and to the Issuer, to confirm that the Shares are exempted from registration under Rule 144, are unrestricted and freely tradable in the hands of Sellers, and the "restricted" legend on the Shares should be removed.

In connection with such representation, we have reviewed and rely on Sellers' representation letter, dated November 18, 2021 (the "Representation Letter"), a copy of which is attached hereto as Exhibit A, and have assumed that the representations contained therein are complete, truthful, and accurate.

In addition, we have also examined certificates of public officials, corporate documents and records and other certificates and instruments and have made other investigations as we have deemed necessary in connection with our opinions set forth in

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 2 of 6

this letter. Such documents include, without limitation, the Issuer's SEC filings and other instruments and documents as we have deemed necessary or appropriate for the purposes of rendering this opinion. During our examination of the documents described in this paragraph and the prior paragraph, we have assumed the genuineness of all signatures, the authenticity of all documents submitted to us as originals or reviewed by us from public filings, and the conformity to the original documents of all copies submitted to us or reviewed by us from public filings.

No opinion is expressed herein with respect to laws other than the laws of the State of New York and the federal laws of the United States.

As described in the Representation Letter, the Shares are owned by Sellers as the result of the following transactions:

(a)     Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, the Issuer, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson"). To our knowledge, Wilson made full payment and/or tendered full consideration for the Shares, as required by Rule 144(d), at the time of his acquisition.

(b)     On October 13, 2013, the Issuer authorized the implementation of a forward stock split of the issued shares of the Issuer's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 Shares held by Wilson becoming 30,000,000 Shares.

(c)     On or about March 11, 2016, Consortium entered into a Stock Purchase Agreement with Wilson, pursuant to which Consortium purchased and was delivered 400,000 shares of Common Stock of the Issuer.

(d)     On April 8, 2017, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 850,000 shares of Common Stock of the Issuer.

(e)     On January 16, 2018, John Suprock and Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock and Laurie Suprock purchased and were delivered, as joint tenants, 850,000 shares of Common Stock of the Issuer.

(f)     On January 16, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which The John Suprock Roth IRA purchased and was delivered 325,000 shares of Common Stock of the Issuer.

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 3 of 6

(g)　　On January 16, 2018, Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which The Laurie Suprock Roth IRA purchased and was delivered 325,000 shares of Common Stock of the Issuer.

(h)　　On March 8, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 650,000 shares of Common Stock of the Issuer.

As stated in the Representation Letter, none of JS, LS, nor Consortium is an underwriter with respect to the Shares, nor will the proposed sale of the Shares be part of a distribution of securities of the Issuer, as those terms are used in Section 2(11) of the Securities Act. As further stated in the Representation Letter, neither JS nor LS is now, and for the 90 days before the date of this letter neither of them has been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer, as that term is defined in Rule 144(a)(1), and no partner, member, officer, director or employee of Consortium is now, and for the 90 days before the date of this letter none of such persons has been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer.

Based upon and subject to the foregoing and having considered such questions of law as we have deemed necessary as a basis for the opinions expressed below, we are of the opinion that:

1.　　To our knowledge, (i) none of JS, LS nor any of the partners, members, officers, directors or employees of Consortium is a director, executive officer or 10% shareholder of the Issuer nor has been one for at least the preceding 90 days, and (ii) none of JS, LS, Consortium, nor any of the partners, members, officers, directors or employees of Consortium is an "affiliate" of the Issuer.

2.　　Rule 144(d)(1)(i) sets forth the general rule for the holding period for restricted securities, as follows:

*(1)　　General rule. (i) If the issuer of the securities is, and has been for a period of at least 90 days immediately before the sale, subject to the reporting requirements of section 13 or 15(d) of the Exchange Act, a minimum of six months must elapse between the later of the date of the acquisition of the securities from the issuer, or from an affiliate of the issuer, and any resale of such securities in reliance on this section for the account of either the acquiror or any subsequent holder of those securities.*

Presuming that Wilson was or became an affiliate of the Issuer at the time he acquired the Shares from the Issuer in June 2013, he had held the Shares for a period of at least six (6) months prior to the transfer of any Shares to Sellers, and Sellers has held the Shares for longer than six (6) months. Thus, the six-month holding period has been satisfied.

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 4 of 6

3.      To our knowledge, the Issuer is subject to the reporting requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934 ("Exchange Act"), as applicable, and has been for at least ninety (90) days prior to the intended sale of the Shares.

4.      (i) To our knowledge, subject to Paragraph 9 below, the Issuer has timely filed with the SEC on the EDGAR system all reports, and other materials required to be filed by Section 13 or 15(d) of the Exchange Act, as applicable, during the preceding twelve (12) months. We further assume that the Issuer will timely file or has already timely filed with the SEC on the EDGAR system all reports, and other materials required to be filed by Section 13 or 15(d) of the Exchange Act, as applicable, between now and the earlier of (A) the date of the sale of all of the Shares and (B) the date that Sellers' broker or the Issuer may request the restrictive legend to be added back to any unsold Shares (the "Outside Sale Date").

                (ii) If the Issuer fails to timely file with the SEC on the EDGAR system any reports or other materials required to be filed by Section 13 or 15(d) of the Exchange Act (except for certain Forms 8-K), as applicable, between now and the earlier of the date of the sale of all of the Shares and the Outside Sale Date, it is and would be our opinion that (A) the Issuer is not in compliance with the requirements of Section 13 or 15(d) of the Exchange Act that the Issuer has timely filed with the SEC on the EDGAR system all reports and other materials during the preceding 12 months, (B) that at such time, the sale of the Shares by Sellers would not be exempt from registration under the Securities Act pursuant to Section 4(a)(1) and Rule 144 (including Rule 144(b)) thereunder, and (C) that the Shares may not be sold without registration under the Securities Act and the legend may not be removed from the Shares.

5.      To our knowledge, the Issuer is a former shell company as defined in Rule 144(i); however, it is currently subject to the Exchange Act's reporting requirements, it has satisfied all "Form 10" information filing requirements, and it has been current on all its required SEC filings for the last year and meets the requirements of Rule 144(i)(2) and is therefore no longer a shell company.

6.      Based on the representations and covenants made to us by Sellers, the Shares will be sold in "broker's transactions" within the meaning of Section 4(4) of the Securities Act and in compliance with Rule 144(f).

7.      We have relied upon Sellers' representations and warrrants to us that the Shares will be sold by no later than the Outside Sale Date in "broker's transactions" in the public market, in making our determination that any applicable "impending sale" requirements under Rule 144 have been satisfied.

8.      The sale of the Shares by Sellers is exempt from registration under the Securities Act pursuant to Section 4(a)(1) and Rule 144(b) thereunder and may be sold without registration, assuming sold by close of business on the Outside Sale Date (or

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 5 of 6

earlier, if applicable), subject to our opinion set forth above in Paragraph 4(ii) and below in Paragraph 9.

9.      The "restricted" legend may be removed from the Shares; *provided, however*, (i) notwithstanding any statement of fact or opinion set forth in this letter, to the extent that any such statement of fact in this letter is not true and correct as of the date hereof and/or (ii) in the event that the Shares have not been sold by the Outside Sale Date (as defined in Paragraph 4(i) above), the opinions rendered in this letter shall not be effective, this opinion letter shall be deemed voided and of no further force or effect, and the "restricted" legend should be reinstated to the Shares by the Issuer's transfer agent.

This opinion is being rendered for your benefit only and may not be used or relied upon, nor may copies be delivered to, any other person or entity without our express written consent in connection with the matters set forth herein; except that you may deliver copies of this opinion to (a) your attorneys and other professional advisors acting on your behalf in connection with the transactions described herein, (b) governmental regulatory agencies having jurisdiction over you to the extent disclosure of the opinion is required by applicable law or regulation, and (c) designated persons pursuant to order or legal process of any court or governmental agency or authority of competent jurisdiction.

Whenever our opinion herein with respect to the existence or absence of facts is qualified by the phrase "to our knowledge" or "known to us," it is intended to indicate that during our representation of Sellers, no information has come to our attention that would give us actual knowledge of the existence or absence of such facts.  Except to the extent expressly set forth herein, and except for a review of our own files and discussions with Sellers, we have not, however, undertaken any independent investigation to determine the existence or absence of such facts, and no inference as to our knowledge of the existence or absence of such facts should be drawn from the fact of our representation of such parties. We have assumed, with your permission, that all signatures of all the parties to the Representation Letter are authentic.

Very truly yours,

STEIN LAW, PLLC

Keith B. Stein, Esq.

cc:     Joshua Wurtzel, Esq. (by e-mail)
        Samuel L. Butt, Esq. (by e-mail)
        John and Laurie Suprock (by e-mail)

**EXHIBIT A**

**Representation Letter**
(See attached)



An enterprise beyond the resources of any one member

# Consortium LLC

November 18, 2021

**BY E-MAIL**

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn:  Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn:  Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Stein Law, PLLC
P.O. Box 606
Salisbury, CT 06068
Attn: Keith B. Stein, Esq.
Email: kstein@steinlaw-pllc.com

Re:    **John Suprock, Laurie Suprock and Consortium LLC - Rule 144 Seller's Representation Letter**

To Whom it May Concern:

The undersigned, John Suprock and Laurie Suprock, hereby represent that we are natural persons and husband and wife.  Laurie Suprock hereby represents that I am the sole member and manager of Consortium LLC, a South Dakota limited liability Issuer ("Consortium").  We write to request your issuance of a legal opinion regarding the removal of the "restricted" legend in accordance with Rule 144 of the Securities Act of 1933, as amended (the "Securities Act"), on the shares of common stock, $0.001 par value (the "Common Stock"), of Quantum Energy, Inc. (the "Issuer"), that we and Consortium own, which consists of a total of 3,400,000 shares (the "Shares") that were received as the result of the following transactions:

1

(a)     Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, the Issuer, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson").  We believe that Wilson made full payment and/or tendered full consideration for the Shares, as required by Rule 144(d), at the time of his acquisition.

(b)     On October 13, 2013, the Issuer authorized the implementation of a forward stock split of the issued shares of the Issuer's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 Shares held by Wilson becoming 30,000,000 Shares.

(c)     On or about March 11, 2016, Consortium entered into a Stock Purchase Agreement with Wilson, pursuant to which Consortium purchased and was delivered 400,000 shares of Common Stock of the Issuer.

(d)     On April 8, 2017, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 850,000 shares of Common Stock of the Issuer.

(e)     On January 16, 2018, John Suprock and Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock and Laurie Suprock purchased and were delivered, as joint tenants, 850,000 shares of Common Stock of the Issuer.

(f)     On January 16, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.

(g)     On January 16, 2018, Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which Laurie Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.

(h)     On March 8, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 650,000 shares of Common Stock of the Issuer.

In connection with the matters set forth in this Representation Letter, we have consulted with securities counsel of our choice.

In connection with this request, we hereby further represent and warrant as follows:

1.      We intend to sell the Shares in a manner permitted by Rule 144 ("Rule 144") under the Securities Act of 1933, as amended (the "Act").  We understand that after a period of time, our broker or the Issuer may request the restrictive legend to be added back to any unsold Shares.

2.      We have carefully reviewed Rule 144. We do not have any reason to believe that the proposed sale of the Shares would not comply with Rule 144.  We understand the Issuer's transfer agent, Clear Trust, LLC ("Clear Trust"), our broker, and Stein Law, PLLC will rely upon our statements herein.  If any such statements become inaccurate or incomplete, we will immediately notify Clear Trust, our broker, and Stein Law, PLLC.

3.      We have not made and do not propose to make any payment in connection with the offer or sale of the Shares to any person or entity except any customary broker's commission or dealer's charges.  We have not solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with the proposed sale pursuant to such order, and we will not do so.

4.      We are not acting in concert with any person in selling the Shares, and we have not agreed to so act.  We are not engaged in a plan with anyone else to dispose of the Shares.  We are not aware of

any facts or circumstances indicating that we are or may be an underwriter within the meaning of the Act with respect to the Shares, or that the sale of the Shares is part of a distribution of any securities.

5.      We are not aware of any material adverse information about the Issuer which has not been publicly disclosed.

6.      Neither of us are now, and for the 90 days before the date of this letter neither of us have been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer, as that term is defined in Rule 144(a)(1).  No partner, member, officer, director, or employee of Consortium is now, and for the 90 days before the date of this letter none of such persons has been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer.

7.      Based on information published or made available to us by the Issuer and relied upon by us, we have reason to believe there is adequate current public information, as set forth in Rule 144(c), available with respect to the Issuer.

8.      Based on our review of information furnished by the Issuer, the Issuer has either never been a shell company as defined by Rule 405 or it has fully complied with Rule 144(i)(2) and is now fully reporting and current in its filings.

9.      Either the prior owner of the Shares or we gave the Issuer or an affiliate of the Issuer full consideration for the Shares, or original security, as defined by Rule 144(d).

10.     Either (a) a minimum of one year has elapsed since the date that the Shares, or original security, were acquired from the Issuer or an affiliate of the Issuer as described in Rule 144(d)(I)(i); or (b) a minimum of six months but less than one year has elapsed since the date that the Shares, or original security, were acquired from the Issuer or an affiliate of the Issuer as described in Rule 144(d)(I)(ii).

We attest to the accuracy of the representations in this letter.  We agree that the Issuer, Clear Trust, our broker, and Stein Law, PLLC may rely upon the above statements in relying upon Stein Law, PLLC's opinion regarding the subject matter hereof.  In consideration of the reliance of the Issuer and its transfer agent thereon, we agree to jointly and severally fully indemnify Stein Law, PLLC, and its

partners, officers, directors, employees, representatives and agents, for, and to jointly and severally hold each of them harmless against, any liability, loss, damage, cost or expense (including any counsel fees and expenses reasonably incurred by them) arising out of or relating to any incorrect statements or information given by us in this letter or concerning the sale.

Very truly yours,

John Suprock

Laurie Suprock

# EXHIBIT 3

# STEIN LAW, PLLC

Keith B. Stein, Esq.
917-859-9744
kstein@steinlaw-pllc.com

November 19, 2021

**VIA E-MAIL**

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn:  Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn:  Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Re:  **John Suprock, Laurie Suprock and Consortium LLC**

To Whom It May Concern:

This firm has been retained by John Suprock ("JS") and Laurie Suprock ("LS"), natural persons and husband and wife (together, "Suprock"), and Consortium LLC, a limited liability company duly organized and validly existing under the laws of the state of South Dakota, and as to which LS is the sole member and manager ("Consortium", and together with Suprock, the "Sellerss"), to render an opinion concerning whether the "restricted" legend on the shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc. (the "Issuer") owned by Sellers, which consists of a total of 3,400,000 shares (the "Shares"),  may be removed under the Securities Act of 1933, as amended (the "Act") and Rule 144 promulgated thereunder ("Rule 144"). We are providing this opinion to Clear Trust, LLC, the Issuer's transfer agent, and to the Issuer, to confirm that the Shares are exempted from registration under Rule 144, are unrestricted and freely tradable in the hands of Sellers, and the "restricted" legend on the Shares should be removed.

In connection with such representation, we have reviewed and rely on Sellers' representation letter, dated November 18, 2021 (the "Representation Letter"), a copy of which is attached hereto as Exhibit A, and have assumed that the representations contained therein are complete, truthful, and accurate.

In addition, we have also examined certificates of public officials, corporate documents and records and other certificates and instruments and have made other investigations as we have deemed necessary in connection with our opinions set forth in

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 2 of 6

this letter. Such documents include, without limitation, the Issuer's SEC filings and other instruments and documents as we have deemed necessary or appropriate for the purposes of rendering this opinion.  During our examination of the documents described in this paragraph and the prior paragraph, we have assumed the genuineness of all signatures, the authenticity of all documents submitted to us as originals or reviewed by us from public filings, and the conformity to the original documents of all copies submitted to us or reviewed by us from public filings.

No opinion is expressed herein with respect to laws other than the laws of the State of New York and the federal laws of the United States.

As described in the Representation Letter, the Shares are owned by Sellers as the result of the following transactions:

(a)     Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, the Issuer, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson").  To our knowledge, Wilson made full payment and/or tendered full consideration for the Shares, as required by Rule 144(d), at the time of his acquisition.

(b)     On October 13, 2013, the Issuer authorized the implementation of a forward stock split of the issued shares of the Issuer's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 Shares held by Wilson becoming 30,000,000 Shares.

(c)     On or about March 11, 2016, Consortium entered into a Stock Purchase Agreement with Wilson, pursuant to which Consortium purchased and was delivered 400,000 shares of Common Stock of the Issuer.

(d)     On April 8, 2017, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 850,000 shares of Common Stock of the Issuer.

(e)     On January 16, 2018, John Suprock and Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock and Laurie Suprock purchased and were delivered, as joint tenants, 850,000 shares of Common Stock of the Issuer.

(f)     On January 16, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 3 of 6

(g)     On January 16, 2018, Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which Laurie Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.

(h)     On March 8, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 650,000 shares of Common Stock of the Issuer.

As stated in the Representation Letter, none of JS, LS, nor Consortium is an underwriter with respect to the Shares, nor will the proposed sale of the Shares be part of a distribution of securities of the Issuer, as those terms are used in Section 2(11) of the Securities Act. As further stated in the Representation Letter, neither JS nor LS is now, and for the 90 days before the date of this letter neither of them has been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer, as that term is defined in Rule 144(a)(1), and no partner, member, officer, director or employee of Consortium is now, and for the 90 days before the date of this letter none of such persons has been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer.

Based upon and subject to the foregoing and having considered such questions of law as we have deemed necessary as a basis for the opinions expressed below, we are of the opinion that:

1.     To our knowledge, (i) none of JS, LS nor any of the partners, members, officers, directors or employees of Consortium is a director, executive officer or 10% shareholder of the Issuer nor has been one for at least the preceding 90 days, and (ii) none of JS, LS, Consortium, nor any of the partners, members, officers, directors or employees of Consortium is an "affiliate" of the Issuer.

2.     Rule 144(d)(1)(i) sets forth the general rule for the holding period for restricted securities, as follows:

> *(1)     General rule. (i) If the issuer of the securities is, and has been for a period of at least 90 days immediately before the sale, subject to the reporting requirements of section 13 or 15(d) of the Exchange Act, a minimum of six months must elapse between the later of the date of the acquisition of the securities from the issuer, or from an affiliate of the issuer, and any resale of such securities in reliance on this section for the account of either the acquiror or any subsequent holder of those securities.*

Presuming that Wilson was or became an affiliate of the Issuer at the time he acquired the Shares from the Issuer in June 2013, he had held the Shares for a period of at least six (6) months prior to the transfer of any Shares to Sellers, and Sellers has held the Shares for longer than six (6) months. Thus, the six-month holding period has been satisfied.

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 4 of 6

3.      To our knowledge, the Issuer is subject to the reporting requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934 ("Exchange Act"), as applicable, and has been for at least ninety (90) days prior to the intended sale of the Shares.

4.      (i) To our knowledge, subject to Paragraph 9 below, the Issuer has timely filed with the SEC on the EDGAR system all reports, and other materials required to be filed by Section 13 or 15(d) of the Exchange Act, as applicable, during the preceding twelve (12) months. We further assume that the Issuer will timely file or has already timely filed with the SEC on the EDGAR system all reports, and other materials required to be filed by Section 13 or 15(d) of the Exchange Act, as applicable, between now and the earlier of (A) the date of the sale of all of the Shares and (B) the date that Sellers' broker or the Issuer may request the restrictive legend to be added back to any unsold Shares (the "Outside Sale Date").

(ii) If the Issuer fails to timely file with the SEC on the EDGAR system any reports or other materials required to be filed by Section 13 or 15(d) of the Exchange Act (except for certain Forms 8-K), as applicable, between now and the earlier of the date of the sale of all of the Shares and the Outside Sale Date, it is and would be our opinion that (A) the Issuer is not in compliance with the requirements of Section 13 or 15(d) of the Exchange Act that the Issuer has timely filed with the SEC on the EDGAR system all reports and other materials during the preceding 12 months, (B) that at such time, the sale of the Shares by Sellers would not be exempt from registration under the Securities Act pursuant to Section 4(a)(1) and Rule 144 (including Rule 144(b)) thereunder, and (C) that the Shares may not be sold without registration under the Securities Act and the legend may not be removed from the Shares.

5.      To our knowledge, the Issuer is a former shell company as defined in Rule 144(i); however, it is currently subject to the Exchange Act's reporting requirements, it has satisfied all "Form 10" information filing requirements, and it has been current on all its required SEC filings for the last year and meets the requirements of Rule 144(i)(2) and is therefore no longer a shell company.

6.      Based on the representations and covenants made to us by Sellers, the Shares will be sold in "broker's transactions" within the meaning of Section 4(4) of the Securities Act and in compliance with Rule 144(f).

7.      We have relied upon Sellers' representations and warrrants to us that the Shares will be sold by no later than the Outside Sale Date in "broker's transactions" in the public market, in making our determination that any applicable "impending sale" requirements under Rule 144 have been satisfied.

8.      The sale of the Shares by Sellers is exempt from registration under the Securities Act pursuant to Section 4(a)(1) and Rule 144(b) thereunder and may be sold without registration, assuming sold by close of business on the Outside Sale Date (or

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 5 of 6

earlier, if applicable), subject to our opinion set forth above in Paragraph 4(ii) and below in Paragraph 9.

9.      The "restricted" legend may be removed from the Shares; *provided, however*, (i) notwithstanding any statement of fact or opinion set forth in this letter, to the extent that any such statement of fact in this letter is not true and correct as of the date hereof and / or (ii) in the event that the Shares have not been sold by the Outside Sale Date (as defined in Paragraph 4(i) above), the opinions rendered in this letter shall not be effective, this opinion letter shall be deemed voided and of no further force or effect, and the "restricted" legend should be reinstated to the Shares by the Issuer's transfer agent.

This opinion is being rendered for your benefit only and may not be used or relied upon, nor may copies be delivered to, any other person or entity without our express written consent in connection with the matters set forth herein; except that you may deliver copies of this opinion to (a) your attorneys and other professional advisors acting on your behalf in connection with the transactions described herein, (b) governmental regulatory agencies having jurisdiction over you to the extent disclosure of the opinion is required by applicable law or regulation, and (c) designated persons pursuant to order or legal process of any court or governmental agency or authority of competent jurisdiction.

Whenever our opinion herein with respect to the existence or absence of facts is qualified by the phrase "to our knowledge" or "known to us," it is intended to indicate that during our representation of Sellers, no information has come to our attention that would give us actual knowledge of the existence or absence of such facts.  Except to the extent expressly set forth herein, and except for a review of our own files and discussions with Sellers, we have not, however, undertaken any independent investigation to determine the existence or absence of such facts, and no inference as to our knowledge of the existence or absence of such facts should be drawn from the fact of our representation of such parties. We have assumed, with your permission, that all signatures of all the parties to the Representation Letter are authentic.

Very truly yours,

STEIN LAW, PLLC

Keith B. Stein, Esq.

cc:     Joshua Wurtzel, Esq. (by e-mail)
        Samuel L. Butt, Esq. (by e-mail)
        John and Laurie Suprock (by e-mail)

**EXHIBIT A**

**Representation Letter**
(See attached)



An enterprise beyond the resources of any one member

# Consortium LLC

November 18, 2021

**BY E-MAIL**

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn: Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn: Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Stein Law, PLLC
P.O. Box 606
Salisbury, CT 06068
Attn: Keith B. Stein, Esq.
Email: kstein@steinlaw-pllc.com

Re:     **John Suprock, Laurie Suprock and Consortium LLC - Rule 144 Seller's Representation Letter**

To Whom it May Concern:

      The undersigned, John Suprock and Laurie Suprock, hereby represent that we are natural persons and husband and wife. Laurie Suprock hereby represents that I am the sole member and manager of Consortium LLC, a South Dakota limited liability Issuer ("Consortium"). We write to request your issuance of a legal opinion regarding the removal of the "restricted" legend in accordance with Rule 144 of the Securities Act of 1933, as amended (the "Securities Act"), on the shares of common stock, $0.001 par value (the "Common Stock"), of Quantum Energy, Inc. (the "Issuer"), that we and Consortium own, which consists of a total of 3,400,000 shares (the "Shares") that were received as the result of the following transactions:

(a)     Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, the Issuer, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson").  We believe that Wilson made full payment and/or tendered full consideration for the Shares, as required by Rule 144(d), at the time of his acquisition.

(b)     On October 13, 2013, the Issuer authorized the implementation of a forward stock split of the issued shares of the Issuer's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 Shares held by Wilson becoming 30,000,000 Shares.

(c)     On or about March 11, 2016, Consortium entered into a Stock Purchase Agreement with Wilson, pursuant to which Consortium purchased and was delivered 400,000 shares of Common Stock of the Issuer.

(d)     On April 8, 2017, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 850,000 shares of Common Stock of the Issuer.

(e)     On January 16, 2018, John Suprock and Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock and Laurie Suprock purchased and were delivered, as joint tenants, 850,000 shares of Common Stock of the Issuer.

(f)     On January 16, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.

(g)     On January 16, 2018, Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which Laurie Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.

(h)     On March 8, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 650,000 shares of Common Stock of the Issuer.

In connection with the matters set forth in this Representation Letter, we have consulted with securities counsel of our choice.

In connection with this request, we hereby further represent and warrant as follows:

1.     We intend to sell the Shares in a manner permitted by Rule 144 ("Rule 144") under the Securities Act of 1933, as amended (the "Act").  We understand that after a period of time, our broker or the Issuer may request the restrictive legend to be added back to any unsold Shares.

2.       We have carefully reviewed Rule 144. We do not have any reason to believe that the proposed sale of the Shares would not comply with Rule 144.  We understand the Issuer's transfer agent, Clear Trust, LLC ("Clear Trust"), our broker, and Stein Law, PLLC will rely upon our statements herein.  If any such statements become inaccurate or incomplete, we will immediately notify Clear Trust, our broker, and Stein Law, PLLC.

3.       We have not made and do not propose to make any payment in connection with the offer or sale of the Shares to any person or entity except any customary broker's commission or dealer's charges.  We have not solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with the proposed sale pursuant to such order, and we will not do so.

4.       We are not acting in concert with any person in selling the Shares, and we have not agreed to so act.  We are not engaged in a plan with anyone else to dispose of the Shares.  We are not aware of

any facts or circumstances indicating that we are or may be an underwriter within the meaning of the Act with respect to the Shares, or that the sale of the Shares is part of a distribution of any securities.

5.       We are not aware of any material adverse information about the Issuer which has not been publicly disclosed.

6.       Neither of us are now, and for the 90 days before the date of this letter neither of us have been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer, as that term is defined in Rule 144(a)(1).  No partner, member, officer, director, or employee of Consortium is now, and for the 90 days before the date of this letter none of such persons has been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer.

7.       Based on information published or made available to us by the Issuer and relied upon by us, we have reason to believe there is adequate current public information, as set forth in Rule 144(c), available with respect to the Issuer.

8.       Based on our review of information furnished by the Issuer, the Issuer has either never been a shell company as defined by Rule 405 or it has fully complied with Rule 144(i)(2) and is now fully reporting and current in its filings.

9.       Either the prior owner of the Shares or we gave the Issuer or an affiliate of the Issuer full consideration for the Shares, or original security, as defined by Rule 144(d).

10.       Either (a) a minimum of one year has elapsed since the date that the Shares, or original security, were acquired from the Issuer or an affiliate of the Issuer as described in Rule 144(d)(I)(i); or (b) a minimum of six months but less than one year has elapsed since the date that the Shares, or original security, were acquired from the Issuer or an affiliate of the Issuer as described in Rule 144(d)(I)(ii).

We attest to the accuracy of the representations in this letter.  We agree that the Issuer, Clear Trust, our broker, and Stein Law, PLLC may rely upon the above statements in relying upon Stein Law, PLLC's opinion regarding the subject matter hereof.  In consideration of the reliance of the Issuer and its transfer agent thereon, we agree to jointly and severally fully indemnify Stein Law, PLLC, and its

partners, officers, directors, employees, representatives and agents, for, and to jointly and severally hold each of them harmless against, any liability, loss, damage, cost or expense (including any counsel fees and expenses reasonably incurred by them) arising out of or relating to any incorrect statements or information given by us in this letter or concerning the sale.

Very truly yours,

John Suprock

Laurie Suprock

# EXHIBIT 4

# STEIN LAW, PLLC

Keith B. Stein, Esq.
917-859-9744
kstein@steinlaw-pllc.com

December 3, 2021

**VIA E-MAIL**

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn:  Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn:  Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Re:  **Consortium LLC**

To Whom It May Concern:

This firm has been retained by Laurie Suprock ("LS") and Consortium LLC, a limited liability company duly organized and validly existing under the laws of the state of South Dakota, and as to which LS is the sole member and manager ("Consortium" or the "Seller"), to render an opinion concerning whether the "restricted" legend on the shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc. (the "Issuer") owned by Seller, which consists of a total of 400,000 shares (the "Shares"),  may be removed under the Securities Act of 1933, as amended (the "Act") and Rule 144 promulgated thereunder ("Rule 144"). We are providing this opinion to Clear Trust, LLC, the Issuer's transfer agent, and to the Issuer, to confirm that the Shares are exempted from registration under Rule 144, are unrestricted and freely tradable in the hands of Seller, and the "restricted" legend on the Shares should be removed.

In connection with such representation, we have reviewed and rely on LS and Seller's representation letter, dated December 3, 2021 (the "Representation Letter"), a copy of which is attached hereto as Exhibit A, and have assumed that the representations contained therein are complete, truthful, and accurate.

In addition, we have also examined certificates of public officials, corporate documents and records and other certificates and instruments and have made other investigations as we have deemed necessary in connection with our opinions set forth in this letter. Such documents include, without limitation, the Issuer's SEC filings and other instruments and documents as we have deemed necessary or appropriate for the

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 2 of 6

purposes of rendering this opinion.  During our examination of the documents described in this paragraph and the prior paragraph, we have assumed the genuineness of all signatures, the authenticity of all documents submitted to us as originals or reviewed by us from public filings, and the conformity to the original documents of all copies submitted to us or reviewed by us from public filings.

No opinion is expressed herein with respect to laws other than the laws of the State of New York and the federal laws of the United States.

As described in the Representation Letter, the Shares are owned by Seller as the result of the following transactions:

(a)     On March 31, 2014, the Issuer entered into a 6% Series B Convertible Preferred Stock Purchase Agreement with John Suprock (the husband of Laurie Suprock), pursuant to which John Suprock purchased and was delivered 200,000 shares of 6% Series B Convertible Preferred Stock;

(b)     On or about March 11, 2016, the Issuer authorized the issuance of 400,000 shares of Common Stock to Consortium pursuant to the conversion terms of the March 31, 2014 6% Series B Stock Purchase Agreement with John Suprock and the terms of the 6% Series B Convertible Preferred Certificate of Designations (attached as Exhibit A to the March 31, 2014 agreement) with a conversion ratio agreed by the Company at 1:2 (200,000=400,000) based on a conversion notice received March 2, 2016 from Mr. Suprock, and instructed Pacific Stock Transfer to issue said shares.  On March 11, 2016, said 400,000 shares of Common Stock were issued to Consortium.

As stated in the Representation Letter, neither LS nor Consortium is an underwriter with respect to the Shares, nor will the proposed sale of the Shares be part of a distribution of securities of the Issuer, as those terms are used in Section 2(11) of the Securities Act.  As further stated in the Representation Letter, LS is not now, and for the 90 days before the date of this letter has not been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer, as that term is defined in Rule 144(a)(1), and no partner, member, officer, director or employee of Consortium is now, and for the 90 days before the date of this letter none of such persons has been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer.

Based upon and subject to the foregoing and having considered such questions of law as we have deemed necessary as a basis for the opinions expressed below, we are of the opinion that:

1.     To our knowledge, (i) neither LS nor any of the partners, members, officers, directors or employees of Consortium is a director, executive officer or 10% shareholder

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 3 of 6

of the Issuer nor has been one for at least the preceding 90 days, and (ii) neither LS nor Consortium, nor any of the partners, members, officers, directors or employees of Consortium is an "affiliate" of the Issuer.

      2.     Rule 144(d)(1)(i) sets forth the general rule for the holding period for restricted securities, as follows:

> *(1)     General rule. (i) If the issuer of the securities is, and has been for a period of at least 90 days immediately before the sale, subject to the reporting requirements of section 13 or 15(d) of the Exchange Act, a minimum of six months must elapse between the later of the date of the acquisition of the securities from the issuer, or from an affiliate of the issuer, and any resale of such securities in reliance on this section for the account of either the acquiror or any subsequent holder of those securities.*

Based upon the representations set forth in the Representation Letter, the issuance of the Shares to Seller occurred on or about March 11, 2016 and the Shares have been held by Seller since then. Thus, the six-month holding period has been satisfied.

      3.     To our knowledge, the Issuer is subject to the reporting requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934 ("Exchange Act"), as applicable, and has been for at least ninety (90) days prior to the intended sale of the Shares.

      4.     (i) To our knowledge, subject to Paragraph 9 below, the Issuer has timely filed with the SEC on the EDGAR system all reports, and other materials required to be filed by Section 13 or 15(d) of the Exchange Act, as applicable, during the preceding twelve (12) months. We further assume that the Issuer will timely file or has already timely filed with the SEC on the EDGAR system all reports, and other materials required to be filed by Section 13 or 15(d) of the Exchange Act, as applicable, between now and the earlier of (A) the date of the sale of all of the Shares and (B) the date that Seller' broker or the Issuer may request the restrictive legend to be added back to any unsold Shares  (the "Outside Sale Date").

         (ii) If the Issuer fails to timely file with the SEC on the EDGAR system any reports or other materials required to be filed by Section 13 or 15(d) of the Exchange Act (except for certain Forms 8-K), as applicable, between now and the earlier of the date of the sale of all of the Shares and the Outside Sale Date, it is and would be our opinion that (A) the Issuer is not in compliance with the requirements of Section 13 or 15(d) of the Exchange Act that the Issuer has timely filed with the SEC on the EDGAR system all reports and other materials during the preceding 12 months, (B) that at such time, the sale of the Shares by Seller would not be exempt from registration under the Securities Act pursuant to Section 4(a)(1) and Rule 144 (including Rule 144(b)) thereunder, and (C) that the Shares may not be sold without registration under the Securities Act and the legend may not be removed from the Shares.

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 4 of 6

5.      To our knowledge, the Issuer is a former shell company as defined in Rule 144(i); however, it is currently subject to the Exchange Act's reporting requirements, it has satisfied all "Form 10" information filing requirements, and it has been current on all its required SEC filings for the last year and meets the requirements of Rule 144(i)(2) and is therefore no longer a shell company.

6.      Based on the representations and covenants made to us by Seller, the Shares will be sold in "broker's transactions" within the meaning of Section 4(4) of the Securities Act and in compliance with Rule 144(f).

7.      We have relied upon Seller's representations, warrants and covenants to us that the Shares will be sold by no later than the Outside Sale Date in "broker's transactions" in the public market, in making our determination that any applicable "impending sale" requirements under Rule 144 have been satisfied.

8.      The sale of the Shares by Seller is exempt from registration under the Securities Act pursuant to Section 4(a)(1) and Rule 144(b) thereunder and may be sold without registration, assuming sold by close of business on the Outside Sale Date (or earlier, if applicable), subject to our opinion set forth above in Paragraph 4(ii) and below in Paragraph 9.

9.      The "restricted" legend may be removed from the Shares; *provided, however,* (i) notwithstanding any statement of fact or opinion set forth in this letter, to the extent that any such statement of fact in this letter is not true and correct as of the date hereof and/or (ii) in the event that the Shares have not been sold by the Outside Sale Date (as defined in Paragraph 4(i) above), the opinions rendered in this letter shall not be effective, this opinion letter shall be deemed voided and of no further force or effect, and the "restricted" legend should be reinstated to the Shares by the Issuer's transfer agent.

This opinion is being rendered for your benefit only and may not be used or relied upon, nor may copies be delivered to, any other person or entity without our express written consent in connection with the matters set forth herein; except that you may deliver copies of this opinion to (a) your attorneys and other professional advisors acting on your behalf in connection with the transactions described herein, (b) governmental regulatory agencies having jurisdiction over you to the extent disclosure of the opinion is required by applicable law or regulation, and (c) designated persons pursuant to order or legal process of any court or governmental agency or authority of competent jurisdiction.

Whenever our opinion herein with respect to the existence or absence of facts is qualified by the phrase "to our knowledge" or "known to us," it is intended to indicate that during our representation of Seller, no information has come to our attention that would give us actual knowledge of the existence or absence of such facts. Except to the extent expressly set forth herein, and except for a review of our own files and discussions with Seller, we have not, however, undertaken any independent investigation to

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 5 of 6

determine the existence or absence of such facts, and no inference as to our knowledge of the existence or absence of such facts should be drawn from the fact of our representation of such parties. We have assumed, with your permission, that all signatures of all the parties to the Representation Letter are authentic.

Very truly yours,

STEIN LAW, PLLC

Keith B. Stein, Esq.

cc:   Joshua Wurtzel, Esq. (by e-mail)
      Samuel L. Butt, Esq. (by e-mail)
      John and Laurie Suprock (by e-mail)

**EXHIBIT A**

**Representation Letter**
(See attached)



An enterprise beyond the resources of any one member

# Consortium LLC

December 3, 2021

**BY E-MAIL**

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn:  Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn:  Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Stein Law, PLLC
P.O. Box 606
Salisbury, CT 06068
Attn: Keith B. Stein, Esq.
Email: kstein@steinlaw-pllc.com

Re:      **Consortium LLC - Rule 144 Seller's Representation Letter**

To Whom it May Concern:

The undersigned, Laurie Suprock, hereby represents that I am the sole member and manager of Consortium LLC, a South Dakota limited liability Issuer ("Consortium"). I write to request your issuance of a legal opinion regarding the removal of the "restricted" legend in accordance with Rule 144 of the Securities Act of 1933, as amended (the "Securities Act"), on the shares of common stock, $0.001 par value (the "Common Stock"), of Quantum Energy, Inc. (the "Issuer"), that Consortium owns, which consists of a total of 400,000 shares (the "Shares") that were received as the result of the following transactions:

(a)      Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June

25, 2013, the Issuer, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson").   We believe that Wilson made full payment and/or tendered full consideration for the Shares, as required by Rule 144(d), at the time of his acquisition.

(b)     On October 13, 2013, the Issuer authorized the implementation of a forward stock split of the issued shares of the Issuer's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 Shares held by Wilson becoming 30,000,000 Shares.

(c)     On March 31, 2014, the Issuer entered into a 6% Series B Convertible Preferred Stock Purchase Agreement, pursuant to which John Suprock purchased and was delivered 200,000 shares of 6% Series B Convertible Preferred Stock;

(d)     On or about March 11, 2016, the Issuer authorized the issuance of 400,000 shares of Common Stock to Consortium pursuant to the conversion terms of the March 31, 2014 6% Series B Stock Purchase Agreement with John Suprock and the terms of the 6% Series B Convertible Preferred Certificate of Designations (attached as Exhibit A to the March 31, 2014 agreement) with a conversion ratio agreed by the Company at 1:2 (200,000=400,000) based on a conversion notice received March 2, 2016 from Mr. Suprock, and instructed Pacific Stock Transfer to issue said shares. On March 11, 2016, said 400,000 shares of Common Stock were issued to Consortium.

In connection with the matters set forth in this Representation Letter, I have consulted with securities counsel of my choice.

In connection with this request, I hereby further represent, warrant, and covenant as follows:

1.     I intend to cause Consortium to sell the Shares in a manner permitted by Rule 144 ("Rule 144") under the Securities Act of 1933, as amended (the "Act"). I understand that after a period of time, my broker or the Issuer may request the restrictive legend to be added back to any unsold Shares.

2.     I have carefully reviewed Rule 144. I do not have any reason to believe that the proposed sale of the Shares would not comply with Rule 144. I understand the Issuer's transfer agent, Clear Trust, LLC ("Clear Trust"), my broker, and Stein Law, PLLC will rely upon my statements herein. If any such statements become inaccurate or incomplete, I will immediately notify Clear Trust, my broker, and Stein Law, PLLC.

3.     Neither I nor Consortium has made and do neither of us propose to make any payment in connection with the offer or sale of the Shares to any person or entity except any customary broker's commission or dealer's charges. Neither I nor Consortium has solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with the proposed sale pursuant to such order, and neither of us will do so.

4.     Neither I nor Consortium is acting in concert with any person in selling the Shares, and neither of us has agreed to so act. Neither I nor Consortium is engaged in a plan with anyone else to

dispose of the Shares.  Neither I nor Consortium is aware of any facts or circumstances indicating that either of us may be an underwriter within the meaning of the Act with respect to the Shares, or that the sale of the Shares is part of a distribution of any securities.

5.      Neither I nor Consortium is aware of any material adverse information about the Issuer which has not been publicly disclosed.

6.      I am not now, and for the 90 days before the date of this letter I have not been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer, as that term is defined in Rule 144(a)(1).  No partner, member, officer, director, or employee of Consortium is now, and

for the 90 days before the date of this letter none of such persons has been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer.

7.      Based on information published or made available to me and Consortium by the Issuer and relied upon by us, we have reason to believe there is adequate current public information, as set forth in Rule 144(c), available with respect to the Issuer.

8.      Based on my review of information furnished by the Issuer, the Issuer has either never been a shell company as defined by Rule 405 or it has fully complied with Rule 144(i)(2) and is now fully reporting and current in its filings.

9.      Either the prior owner of the Shares or Consortium gave the Issuer or an affiliate of the Issuer full consideration for the Shares, or original security, as defined by Rule 144(d).

10.     Either (a) a minimum of one year has elapsed since the date that the Shares, or original security, were acquired from the Issuer or an affiliate of the Issuer as described in Rule 144(d)(I)(i); or (b) a minimum of six months but less than one year has elapsed since the date that the Shares, or original security, were acquired from the Issuer or an affiliate of the Issuer as described in Rule 144(d)(I)(ii).

I attest to the accuracy of the representations in this letter.  I and Consortium agree that the Issuer, Clear Trust, my broker, and Stein Law, PLLC may rely upon the above statements in relying upon Stein Law, PLLC's opinion regarding the subject matter hereof.  In consideration of the reliance of the Issuer and its transfer agent thereon, I and Consortium agree to jointly and severally fully indemnify Stein Law, PLLC, and its partners, officers, directors, employees, representatives and agents, for, and to jointly and severally hold each of them harmless against, any liability, loss, damage, cost or expense (including any counsel fees and expenses reasonably incurred by them) arising out of or relating to any incorrect statements or information given by me in this letter or concerning the sale.

Very truly yours,

Laurie Suprock

*Individually and as Sole Member and Manager Of Consortium*

# STEIN LAW, PLLC

Keith B. Stein, Esq.

917-859-9744

kstein@steinlaw-pllc.com

December 3, 2021

**VIA E-MAIL**

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn:  Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn:  Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Re: **John and Laurie Suprock**

To Whom It May Concern:

This firm has been retained by John Suprock ("JS") and Laurie Suprock ("LS"), husband and wife (together, "Sellers"), to render an opinion concerning whether the "restricted" legend on the shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc. (the "Issuer") owned by Sellers, which consists of a total of 3,000,000 shares (the "Shares"),  may be removed under the Securities Act of 1933, as amended (the "Act") and Rule 144 promulgated thereunder ("Rule 144"). We are providing this opinion to Clear Trust, LLC, the Issuer's transfer agent, and to the Issuer, to confirm that the Shares are exempted from registration under Rule 144, are unrestricted and freely tradable in the hands of Sellers, and the "restricted" legend on the Shares should be removed.

In connection with such representation, we have reviewed and rely on Sellers' representation letter, dated December 3, 2021 (the "Representation Letter"), a copy of which is attached hereto as Exhibit A, and have assumed that the representations contained therein are complete, truthful, and accurate.

In addition, we have also examined certificates of public officials, corporate documents and records and other certificates and instruments and have made other investigations as we have deemed necessary in connection with our opinions set forth in this letter. Such documents include, without limitation, the Issuer's SEC filings and other instruments and documents as we have deemed necessary or appropriate for the purposes of rendering this opinion.  During our examination of the documents described

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 2 of 6

in this paragraph and the prior paragraph, we have assumed the genuineness of all signatures, the authenticity of all documents submitted to us as originals or reviewed by us from public filings, and the conformity to the original documents of all copies submitted to us or reviewed by us from public filings.

No opinion is expressed herein with respect to laws other than the laws of the State of New York and the federal laws of the United States.

As described in the Representation Letter, the Shares are owned by Sellers as the result of the following transactions:

(a)     Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, the Issuer, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson"). To our knowledge, Wilson made full payment and/or tendered full consideration for the Shares, as required by Rule 144(d), at the time of his acquisition.

(b)     On October 13, 2013, the Issuer authorized the implementation of a forward stock split of the issued shares of the Issuer's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 Shares held by Wilson becoming 30,000,000 Shares.

(c)     On or about April 11, 2017, the Issuer issued and delivered to John Suprock 850,000 shares of Common Stock of the Issuer, as compensation under and pursuant to that certain Referral Agreement, dated as of March 30, 2017, between the Issuer and John Suprock.

(d)     On January 16, 2018, John Suprock and Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock and Laurie Suprock purchased and were delivered, as joint tenants, 850,000 shares of Common Stock of the Issuer.

(e)     On January 16, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.

(f)     On January 16, 2018, Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which Laurie Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.

(g)     On March 8, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 650,000 shares of Common Stock of the Issuer.

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 3 of 6

As stated in the Representation Letter, neither JS nor LS is an underwriter with respect to the Shares, nor will the proposed sale of the Shares be part of a distribution of securities of the Issuer, as those terms are used in Section 2(11) of the Securities Act.  As further stated in the Representation Letter, neither JS nor LS is now, and for the 90 days before the date of this letter neither of them has been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer, as that term is defined in Rule 144(a)(1).

Based upon and subject to the foregoing and having considered such questions of law as we have deemed necessary as a basis for the opinions expressed below, we are of the opinion that:

1.      To our knowledge, Neither JS nor LS is a director, executive officer or 10% shareholder of the Issuer nor has been one for at least the preceding 90 days.

2.      Rule 144(d)(1)(i) sets forth the general rule for the holding period for restricted securities, as follows:

> *(1)      General rule. (i) If the issuer of the securities is, and has been for a period of at least 90 days immediately before the sale, subject to the reporting requirements of section 13 or 15(d) of the Exchange Act, a minimum of six months must elapse between the later of the date of the acquisition of the securities from the issuer, or from an affiliate of the issuer, and any resale of such securities in reliance on this section for the account of either the acquiror or any subsequent holder of those securities.*

Presuming that Wilson was or became an affiliate of the Issuer at the time he acquired the Shares from the Issuer in June 2013, he had held the Shares for a period of at least six (6) months prior to the transfer of any Shares to Sellers, and Sellers has held the Shares for longer than six (6) months.  Thus, the six-month holding period has been satisfied.

3.      To our knowledge, the Issuer is subject to the reporting requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934 ("Exchange Act"), as applicable, and has been for at least ninety (90) days prior to the intended sale of the Shares.

4.      (i) To our knowledge, subject to Paragraph 9 below, the Issuer has timely filed with the SEC on the EDGAR system all reports, and other materials required to be filed by Section 13 or 15(d) of the Exchange Act, as applicable, during the preceding twelve (12) months. We further assume that the Issuer will timely file or has already timely filed with the SEC on the EDGAR system all reports, and other materials required to be filed by Section 13 or 15(d) of the Exchange Act, as applicable, between now and the earlier of (A) the date of the sale of all of the Shares and (B) the date that Sellers' broker or the Issuer may request the restrictive legend to be added back to any unsold Shares (the "Outside Sale Date").

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 4 of 6

(ii) If the Issuer fails to timely file with the SEC on the EDGAR system any reports or other materials required to be filed by Section 13 or 15(d) of the Exchange Act (except for certain Forms 8-K), as applicable, between now and the earlier of the date of the sale of all of the Shares and the Outside Sale Date, it is and would be our opinion that (A) the Issuer is not in compliance with the requirements of Section 13 or 15(d) of the Exchange Act that the Issuer has timely filed with the SEC on the EDGAR system all reports and other materials during the preceding 12 months, (B) that at such time, the sale of the Shares by Sellers would not be exempt from registration under the Securities Act pursuant to Section 4(a)(1) and Rule 144 (including Rule 144(b)) thereunder, and (C) that the Shares may not be sold without registration under the Securities Act and the legend may not be removed from the Shares.

5.      To our knowledge, the Issuer is a former shell company as defined in Rule 144(i); however, it is currently subject to the Exchange Act's reporting requirements, it has satisfied all "Form 10" information filing requirements, and it has been current on all its required SEC filings for the last year and meets the requirements of Rule 144(i)(2) and is therefore no longer a shell company.

6.      Based on the representations and covenants made to us by Sellers, the Shares will be sold in "broker's transactions" within the meaning of Section 4(4) of the Securities Act and in compliance with Rule 144(f).

7.      We have relied upon Sellers' representations, warrants and covenants to us that the Shares will be sold by no later than the Outside Sale Date in "broker's transactions" in the public market, in making our determination that any applicable "impending sale" requirements under Rule 144 have been satisfied.

8.      The sale of the Shares by Sellers is exempt from registration under the Securities Act pursuant to Section 4(a)(1) and Rule 144(b) thereunder and may be sold without registration, assuming sold by close of business on the Outside Sale Date (or earlier, if applicable), subject to our opinion set forth above in Paragraph 4(ii) and below in Paragraph 9.

9.      The "restricted" legend may be removed from the Shares; *provided, however*, (i) notwithstanding any statement of fact or opinion set forth in this letter, to the extent that any such statement of fact in this letter is not true and correct as of the date hereof and/or (ii) in the event that the Shares have not been sold by the Outside Sale Date (as defined in Paragraph 4(i) above), the opinions rendered in this letter shall not be effective, this opinion letter shall be deemed voided and of no further force or effect, and the "restricted" legend should be reinstated to the Shares by the Issuer's transfer agent.

This opinion is being rendered for your benefit only and may not be used or relied upon, nor may copies be delivered to, any other person or entity without our express written consent in connection with the matters set forth herein; except that you may deliver copies of this opinion to (a) your attorneys and other professional advisors acting

Quantum Energy, Inc.
Clear Trust, LLC
November 18, 2021
Page 5 of 6

on your behalf in connection with the transactions described herein, (b) governmental regulatory agencies having jurisdiction over you to the extent disclosure of the opinion is required by applicable law or regulation, and (c) designated persons pursuant to order or legal process of any court or governmental agency or authority of competent jurisdiction.

Whenever our opinion herein with respect to the existence or absence of facts is qualified by the phrase "to our knowledge" or "known to us," it is intended to indicate that during our representation of Sellers, no information has come to our attention that would give us actual knowledge of the existence or absence of such facts. Except to the extent expressly set forth herein, and except for a review of our own files and discussions with Sellers, we have not, however, undertaken any independent investigation to determine the existence or absence of such facts, and no inference as to our knowledge of the existence or absence of such facts should be drawn from the fact of our representation of such parties. We have assumed, with your permission, that all signatures of all the parties to the Representation Letter are authentic.

Very truly yours,

STEIN LAW, PLLC

Keith B. Stein, Esq.

cc:     Joshua Wurtzel, Esq. (by e-mail)
        Samuel L. Butt, Esq. (by e-mail)
        John and Laurie Suprock (by e-mail)

**EXHIBIT A**

**Representation Letter**
(See attached)

December 3, 2021

**BY E-MAIL**

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn:  Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn:  Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Stein Law, PLLC
P.O. Box 606
Salisbury, CT 06068
Attn: Keith B. Stein, Esq.
Email: kstein@steinlaw-pllc.com

Re:      **John Suprock and Laurie Suprock - Rule 144 Seller's Representation Letter**

To Whom it May Concern:

The undersigned, John Suprock and Laurie Suprock, hereby represent that we are natural persons and husband and wife.  We write to request your issuance of a legal opinion regarding the removal of the "restricted" legend in accordance with Rule 144 of the Securities Act of 1933, as amended (the "Securities Act"), on the shares of common stock, $0.001 par value (the "Common Stock"), of Quantum Energy, Inc. (the "Issuer"), that we own, which consists of a total of 3,000,000 shares (the "Shares") that were received as the result of the following transactions:

(a)      Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, the Issuer, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson").  We believe that Wilson made full payment and/or tendered full consideration for the Shares, as required by Rule 144(d), at the time of his acquisition.

(b)      On October 13, 2013, the Issuer authorized the implementation of a forward stock split of the issued shares of the Issuer's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 Shares held by Wilson becoming 30,000,000 Shares.

Quantum Energy, Inc.
Clear Trust, LLC
Stein Law, PLLC
November 18, 2021
Page 2 of 3

(c)     On or about April 11, 2017, the Issuer issued and delivered to John Suprock 850,000 shares of Common Stock of the Issuer, as compensation under and pursuant to that certain Referral Agreement, dated as of March 30, 2017, between the Issuer and John Suprock.

(d)     On January 16, 2018, John Suprock and Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock and Laurie Suprock purchased and were delivered, as joint tenants, 850,000 shares of Common Stock of the Issuer.

(e)     On January 16, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.

(f)     On January 16, 2018, Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which Laurie Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.

(g)     On March 8, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 650,000 shares of Common Stock of the Issuer.

In connection with the matters set forth in this Representation Letter, we have consulted with securities counsel of our choice.

In connection with this request, we hereby further represent, warrant and covenant as follows:

1.     We intend to sell the Shares in a manner permitted by Rule 144 ("Rule 144") under the Securities Act of 1933, as amended (the "Act"). We understand that after a period of time, our broker or the Issuer may request the restrictive legend to be added back to any unsold Shares.

2.     We have carefully reviewed Rule 144. We do not have any reason to believe that the proposed sale of the Shares would not comply with Rule 144. We understand the Issuer's transfer agent, Clear Trust, LLC ("Clear Trust"), our broker, and Stein Law, PLLC will rely upon our statements herein. If any such statements become inaccurate or incomplete, we will immediately notify Clear Trust, our broker, and Stein Law, PLLC.

3.     We have not made and do not propose to make any payment in connection with the offer or sale of the Shares to any person or entity except any customary broker's commission or dealer's charges. We have not solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with the proposed sale pursuant to such order, and we will not do so.

4.     We are not acting in concert with any person in selling the Shares, and we have not agreed to so act. We are not engaged in a plan with anyone else to dispose of the Shares. We are not aware of any facts or circumstances indicating that we are or may be an underwriter within the meaning of the Act with respect to the Shares, or that the sale of the Shares is part of a distribution of any securities.

Quantum Energy, Inc.
Clear Trust, LLC
Stein Law, PLLC
November 18, 2021
Page 3 of 3

5.      We are not aware of any material adverse information about the Issuer which has not been publicly disclosed.

6.      Neither of us are now, and for the 90 days before the date of this letter neither of us have been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer, as that term is defined in Rule 144(a)(1).  No partner, member, officer, director, or employee of Consortium is now, and for the 90 days before the date of this letter none of such persons has been, an officer, director, or 10% stockholder of the Issuer, or in any other way an "affiliate" of the Issuer.

7.      Based on information published or made available to us by the Issuer and relied upon by us, we have reason to believe there is adequate current public information, as set forth in Rule 144(c), available with respect to the Issuer.

8.      Based on our review of information furnished by the Issuer, the Issuer has either never been a shell company as defined by Rule 405 or it has fully complied with 144(i)(2) and is now fully reporting and current in its filings.

9.      Either the prior owner of the Shares or we gave the Issuer or an affiliate of the Issuer full consideration for the Shares, or original security, as defined by Rule 144(d).

10.      Either (a) a minimum of one year has elapsed since the date that the Shares, or original security, were acquired from the Issuer or an affiliate of the Issuer as described in Rule 144(d)(I)(i); or (b) a minimum of six months but less than one year has elapsed since the date that the Shares, or original security, were acquired from the Issuer or an affiliate of the Issuer as described in Rule 144(d)(I)(ii).

We attest to the accuracy of the representations in this letter.  We agree that the Issuer, Clear Trust, our broker, and Stein Law, PLLC may rely upon the above statements in relying upon Stein Law, PLLC's opinion regarding the subject matter hereof.  In consideration of the reliance of the Issuer and its transfer agent thereon, we agree to jointly and severally fully indemnify Stein Law, PLLC, and its partners, officers, directors, employees, representatives and agents, for, and to jointly and severally hold each of them harmless against, any liability, loss, damage, cost or expense (including any counsel fees and expenses reasonably incurred by them) arising out of or relating to any incorrect statements or information given by us in this letter or concerning the sale.

Very truly yours,

_____

John Suprock

_____

Laurie Suprock

# EXHIBIT 5

# STEIN LAW, PLLC

Keith B. Stein, Esq.
917-859-9744
kstein@steinlaw-pllc.com

January 7, 2022

**VIA E-MAIL**

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn: Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn: Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Re: **John and Laurie Suprock - Section 4(a)(1) Opinion Letter**

To Whom It May Concern:

This firm has been retained by John Suprock ("JS") and Laurie Suprock ("LS"), husband and wife (together, "Sellers"), as special securities counsel in connection with the sale of shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc., a Nevada corporation (the "Issuer") owned by Sellers, which consists of a total of 3,000,000 shares (the "Opinion Stock"), and to render an opinion concerning whether the Opinion Stock may be sold into the public markets without prior registration under the Securities Act of 1933, as amended (the "1933 Act"), or whether the Opinion Stock will continue to constitute "restricted securities" as that term is defined in Rule 144(a)(3) promulgated under the 1933 Act. We are providing this opinion to Clear Trust, LLC, the Issuer's transfer agent, and to the Issuer, to confirm that the Opinion Stock is unrestricted and freely tradable in the hands of Sellers, the sale of the Opinion Stock into the public markets is exempted from registration under Section 4(a)(1) promulgated under the 1933 Act, and the restrictive legend or stop transfer orders on the shares of Opinion Stock should be removed.

In connection with such representation, we have reviewed and rely on Sellers' representation letter, dated January 6, 2022 (the "Representation Letter"), a copy of which is attached hereto as Exhibit A, and have assumed that the representations contained therein are complete, truthful, and accurate.

In addition, we have also examined certificates of public officials, corporate and transaction documents and records and other certificates and instruments and have made other investigations as we have deemed necessary in connection with our opinions set forth in this letter. Such documents include, without limitation, (i) the Issuer's SEC filings and other instruments and documents as we have deemed necessary or appropriate for the purposes of rendering this opinion, (ii) a copy of the Agreement Concerning the Exchange of Common Stock

Quantum Energy, Inc.
Clear Trust, LLC
January 7, 2022
Page 2 of 7

Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc. ("FTPM"),dated June 25, 2013, pursuant to which the Issuer acquired 100% of the issued and outstanding shares of common stock of FTPM in exchange for the issuance of 200,000 shares of the Common Stock of the Issuer to the shareholders of FTPM (*i.e.*, Stanley F. Wilson), which such share issuance was exempt from registration pursuant to Section 4(2) or 3(b) of the Act, (iii) a copy of the Unanimous Written Consent of Directors of the Board of Directors of the Issuer, dated as of October 31, 2013, and executed by Stanley F. Wilson, Chairman of the Board of Directors of the Issuer, authorizing the implementation of a forward stock split of the issued shares of the Common Stock of the Issuer in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, and (iv) a copy of the Related Action Notification Form submitted by the Issuer to FINRA on October 31, 2013, related to the SEA Rule 10b-17 Action (*i.e.*, the forward stock split), and (v) those certain stock purchase agreements pursuant to which the Opinion Stock was purchased by Sellers (as described more fully in the Representation Letter).  During our examination of the documents described in this paragraph and the prior paragraph, we have assumed, without independent verification, the genuineness of all signatures thereon, the legal capacity of all signatories thereto, the authenticity of all documents submitted to us as originals, or reviewed by us from public filings, the conformity to the original documents of all copies submitted to us or reviewed by us from public filings, and the veracity of each document.

No opinion is expressed herein with respect to laws other than the laws of the State of New York and the federal laws of the United States.

As described in the Representation Letter, the Opinion Stock is owned by Sellers as the result of the following transactions:

(a)     Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, the Issuer, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson").

(b)     On October 13, 2013, the Issuer authorized the implementation of a forward stock split of the issued shares of the Issuer's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 shares of Common Stock held by Wilson becoming 30,000,000 shares.

(c)     On or about April 11, 2017, the Issuer issued and delivered to John Suprock 850,000 shares of Common Stock of the Issuer, as compensation under and pursuant to that certain Referral Agreement, dated as of March 30, 2017, between the Issuer and John Suprock.

(d)     On January 16, 2018, John Suprock and Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock and Laurie Suprock purchased and were delivered, as joint tenants, 850,000 shares of Common Stock of the Issuer.

(e)     On January 16, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.

Quantum Energy, Inc.
Clear Trust, LLC
January 7, 2022
Page 3 of 7

     (f)     On January 16, 2018, Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which Laurie Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.

     (g)     On March 8, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 650,000 shares of Common Stock of the Issuer.

As also stated in the Representation Letter, we have been advised that (i) the consideration for the purchase of the Opinion Stock was fully provided to Wilson and the Company, respectively, in excess of two years ago, (ii) neither JS nor LS has ever been a director, executive officer, or record or beneficial holder of 10% or more of the Company's then-issued and outstanding common stock, or in any other way an "affiliate" of the Issuer, as that term is defined in Rule 144(a)(1) promulgated under the 1933 Act, and (iii) neither JS nor LS is a dealer. Further, we relied upon the information contained in the Issuer's most recent Form 10-K/Amendment No. 2, for the fiscal year ended February 28, 2021, filed with the Securities and Exchange Commission (the "Commission") on December 15, 2021, for the number of the Company's issued and outstanding shares of Common Stock as of February 28, 2021 (48,491,485). There have been no filings by the Issuer since such filing indicating any change in such number of outstanding shares of common stock.

The 1933 Act generally requires that, for secondary sales (resales) of securities into the public markets, (i) the securities must have been issued and sold in a primary transaction pursuant to an effective registration statement that had been filed with the Commission unless (ii) the primary distribution transaction or the securities themselves were exempt from the registration requirements of Section 5 of the 1933 Act. If the primary transaction was accomplished through an exemption from such registration requirements, then the secondary sale (resale) of the securities must be the subject of an effective registration statement unless an exemption therefrom is available.

Section 4(a)(1) of the 1933 Act exempts from the registration requirements "transactions by any person other than an issuer, underwriter, or dealer." A holder of securities, who is not an issuer or a dealer is, therefore, able to sell his securities in a private sale without registration if the holder is not an underwriter, as defined in Section 2(a)(11) of the 1933 Act. Generally, a person is an "underwriter" if he acquires securities with a view to "distribution" or is participating in a "distribution" (which generally means an offering that is not a private offering). As noted below, we have concluded that neither JS nor LS is an underwriter, as so defined.

Implicit within Section 2(a)(11) of the 1933 Act is the conclusion that a seller of securities is not an "underwriter" unless a "distribution" is present. Although "distribution" is not defined in the 1933 Act, the Commission has stated that a "distribution" "comprises the entire process by which in the course of a public offering a block of securities is dispersed and ultimately comes to rest in the hands of the investing public." The Commission and some courts have equated the term "distribution" with a "public offering."

The last sentence of Section 2(a)(11) provides that, for purposes of such section, the term "issuer" includes not only the actual issuer of a security, but also any person in a "control"

Quantum Energy, Inc.
Clear Trust, LLC
January 7, 2022
Page 4 of 7

relationship with the issuer. Thus, if a "distribution" is involved, a seller of securities will be considered to be an "underwriter" to whom the Section 4(a)(1) exemption from registration will not be available if any of the following apply:

- The seller purchased his or her securities from the issuer (or an affiliate of the issuer) with a view to their distribution;

- The seller is offering or selling for the issuer (or an affiliate of the issuer) in connection with the distribution of the securities;

- The seller participates or has a direct or indirect participation in any such distribution; or

- The seller participates or has a participation in the direct or indirect underwriting of any such distribution.

These four characteristics are sometimes referred to as the "four tests of underwriter status." The effect of Section 4(a)(1) is to deny an exemption from registration to, and to subject to the registration process, a resale transaction in which a reselling person acts as a link in a chain of transactions through which securities move from the issuer to the investing public.  To avoid the first of these tests (and the one that usually presents the most difficulty in this context), the selling stockholder must establish that he or she did not purchase the shares from the issuer with a view to their "distribution" or, to phrase it in the affirmative, that the seller purchased the shares "for investment purposes only."

In *United States v. Shewood.,* 175 F.Supp 480,483 (SDNY 1959), the U.S. District Court for the Southern District of New York held, in the context of a criminal proceeding, that, in the absence of any evidence showing that the purchaser did not take the shares for investment, the passage of two years after the purchase of restricted securities in a private placement before the commencement of a secondary distribution precluded a finding that the shares were purchased with a view to distribution.

The Commission has historically intended that the Section 4(a)(1) exemption be available for routine trading transactions between individual investors with respect to small amounts of securities already issued and having "come to rest" in the hands of the investing public.[1] The number of shares of Opinion Stock proposed to be sold by Sellers constitutes a small percentage (approximately 6.18%) of the number of the Company's issued and outstanding shares of Common Stock.

Professors Loss and Seligman, in *Securities Regulation* (Little Brown and Co., 3rd Edition), explain that "[s]ection [(4(a)(1) of the 1933 Act] ... was intended to 'broadly [draw] the line between  distribution of securities and trading in securities, indicating that the act is, in the main, concerned with the problem of distribution as distinguished from trading.'"

Professor Hazen, in *The Law of Securities Regulation* (West Publishing Co., 3rd Edition), notes  that "Section 4(1), especially when read in connection with the dealers' and unsolicited

---

[1] The Opinion Stock, in the hands of Sellers, meets such a test.

Quantum Energy, Inc.
Clear Trust, LLC
January 7, 2022
Page 5 of 7

brokers' transaction exemptions in Sections 4(3) and 4(4), exempts most day-to-day transactions that are effected on an exchange or in the over-the-counter markets."

Professor Loss, in *Fundamentals of Securities Regulation* (Little Brown and Co., 2nd Edition) notes that the *Sherwood* decision caused many securities lawyers to take the position that, absent other evidence that the holder was participating in a distribution for the issuer, a "nonaffiliate holder" could avoid underwriter status and thus rely on Section 4(a)(1) to make the resale of restricted securities without registration if he or she had signed an investment letter at the time of the purchase and held the restricted securities for at least two years. In the view of some commentators, securities have "come to rest" in the hands of a stockholder on the second anniversary of the sale and issuance of such securities to the holder and that, absent other factors, any resale thereof would constitute a separate transaction from the issuer's primary offering. Accordingly, securities "come to rest," when a sufficient period of time has passed from their sale and issuance to establish that the holder did not take them with a view to their distribution.

Professors Loss and Seligman explain: "It follows that, if the person who bought from an issuer (or affiliate) has held the securities long enough to make credible his assertion that he did not take them with a view to distribution - so that, as it used to be said, the securities have 'come to rest' in his hands - he should not be brought within the 'has purchased from' portion of the 'underwriter' definition in §2(11), and his later distribution should be exempted under §4(1)."

The Commission has never accepted the view that the passage of two years or even a longer period of time precludes a determination of underwriter status, arguing instead that, whether a person purchased securities with a view to distribution is a question of fact to be determined on a case-by-case basis in light of all of the circumstances. Suffice it to say there are no clear guidelines. If it can be established that the restricted securities have "come to rest" in the hands of the "nonaffiliate holder" (after the passage of an appropriate period of time), then, provided there is no other evidence showing that the holder took the shares with a view to distribution and provided that the holder does not meet any of the other four tests of underwriter status discussed above, he or she is free to make public or private resales in reliance on Section 4(a)(1).

Based on the information that we have been provided by Sellers, which we have no reason to question, and in reliance on the documents described above and in the Representation Letter, and due to the passage of more than two years between the date of the last sale of Opinion Stock to Sellers and the Company's and Wilson's receipt of full consideration therefore, and the date of this letter, we have concluded that none of the "four tests of underwriter status" applies to either of the Sellers. Accordingly, it is our opinion that you may generate one or more certificates (without restrictive legend or stop transfer instructions) that represent the 3,000,000 shares of Opinion Stock, which may then be sold into the public markets without prior registration under the 1933 Act in accordance with the exemption from the registration requirements of Section 5 of the 1933 Act provided by Section 4(a)(1) thereof, such that, upon such sale, such shares will no longer constitute restricted securities.

Quantum Energy, Inc.
Clear Trust, LLC
January 7, 2022
Page 6 of 7

This opinion is being rendered for your benefit only and may not be used or relied upon, nor may copies be delivered to, any other person or entity without our express written consent in connection with the matters set forth herein; except that you may deliver copies of this opinion to (a) your attorneys and other professional advisors acting on your behalf in connection with the transactions described herein, (b) governmental regulatory agencies having jurisdiction over you to the extent disclosure of the opinion is required by applicable law or regulation, and (c) designated persons pursuant to order or legal process of any court or governmental agency or authority of competent jurisdiction.

Whenever our opinion herein with respect to the existence or absence of facts is qualified by the phrase "to our knowledge" or "known to us," it is intended to indicate that during our representation of Sellers, no information has come to our attention that would give us actual knowledge of the existence or absence of such facts. Except to the extent expressly set forth herein, and except for a review of our own files and discussions with Sellers, we have not, however, undertaken any independent investigation to determine the existence or absence of such facts, and no inference as to our knowledge of the existence or absence of such facts should be drawn from the fact of our representation of such parties. We have assumed, with your permission, that all signatures of all the parties to the Representation Letter are authentic.

Very truly yours,

STEIN LAW, PLLC

Keith B. Stein, Esq.

cc:     Joshua Wurtzel, Esq. (by e-mail)
        Samuel L. Butt, Esq. (by e-mail)

**EXHIBIT A**

**Representation Letter**
(See attached)

January 6, 2022

**BY E-MAIL**

John L Suprock
Laurie L Suprock
401 E 8th St
Suite 214 #1325
Sioux Falls, SD 57103

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn: Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn: Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Stein Law, PLLC
P.O. Box 606
Salisbury, CT 06068
Attn: Keith B. Stein, Esq.
Email: kstein@steinlaw-pllc.com

Re:     **John Suprock and Laurie Suprock - Section 4(a)(1) Seller's Representation Letter**

To Whom it May Concern:

The undersigned, John Suprock and Laurie Suprock, hereby represent that we are natural persons and husband and wife. We write in connection with our proposed sale of shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc. (the "Issuer") owned by us, which consists of a total of 3,000,000 shares (the "Opinion Stock"). We request that you render an opinion concerning whether the Opinion Stock may be sold into the public markets without prior registration under the Securities Act of 1933, as amended (the "1933 Act") and Section 4(a)(1) promulgated thereunder ("Section 4(a)(1)"), is unrestricted and freely tradable by us, and the restrictive legend or stop transfer orders on the Opinion Stock should be removed in connection with such sale.

We obtained the Opinion Stock as the result of the following transactions:

(a)     Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, which we have reviewed, the Issuer, among other actions, issued 200,000 shares of

Quantum Energy, Inc.
Clear Trust, LLC
Stein Law, PLLC
January 6, 2022
Page 2 of 3

Common Stock to Stanley F. Wilson ("Wilson").  We believe that, pursuant to said Agreement, Wilson made full payment and/or tendered full consideration for the shares at the time of his acquisition.

(b)     On October 13, 2013, the Issuer authorized the implementation of a forward stock split of the issued shares of the Issuer's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 shares held by Wilson becoming 30,000,000 shares.  Such authorization is evidenced by that certain Unanimous Written Consent of Directors of the Board of Directors of the Issuer, dated as of October 31, 2013, and executed by Stanley F. Wilson, Chairman of the Board of Directors of the Issuer, which we have reviewed.

(c)     On or about April 11, 2017, the Issuer issued and delivered to John Suprock 850,000 shares of Common Stock of the Issuer, as compensation under and pursuant to that certain Referral Agreement, dated as of March 30, 2017, between the Issuer and John Suprock, which we have reviewed.  John Suprock made full payment and/or tendered full consideration for said shares at the time of his acquisition.

(d)     On January 16, 2018, John Suprock and Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock and Laurie Suprock purchased and were delivered, as joint tenants, 850,000 shares of Common Stock of the Issuer.  John and Laurie Suprock made full payment and/or tendered full consideration for said shares at the time of their acquisition.

(e)     On January 16, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.  John Suprock made full payment and/or tendered full consideration for said shares at the time of his acquisition.

(f)     On January 16, 2018, Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which Laurie Suprock purchased and was delivered 325,000 shares of Common Stock of the Issuer.  Laurie Suprock made full payment and/or tendered full consideration for said shares at the time of her acquisition.

(g)     On March 8, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 650,000 shares of Common Stock of the Issuer.  John Suprock made full payment and/or tendered full consideration for said shares at the time of his acquisition.

In connection with the matters set forth in this Representation Letter, we have consulted with securities counsel of our choice.

In connection with this request, we hereby further represent, warrant and covenant as follows:

1.     At the time of each of the afore-described acquisition of shares, we acquired the shares of Opinion Stock with investment intent and without a view to a distribution.  The date of our latest

Quantum Energy, Inc.
Clear Trust, LLC
Stein Law, PLLC
January 6, 2022
Page 3 of 3

acquisition of Opinion Stock and our tender of full consideration therefore was March 8, 2018, more than two years prior to the date of this Representation Letter.

2.      We intend to sell the Opinion Stock into the public markets in a brokered transaction exempt from registration under Section 4(a)(1).

3.      We have carefully reviewed Section 4(a)(1). Neither of us are now, nor has ever been, a director, executive officer, or record or beneficial holder of 10% or more of the Company's then-issued and outstanding common stock, or in any other way an "affiliate" of the Issuer, as that term is defined in Rule 144(a)(1) promulgated under the 1933 Act. Neither of us is a dealer.

4.      We have not solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with the proposed sale pursuant to such order, and we will not do so.

5.      We are not aware of any facts or circumstances related to this matter that would result in either of us being deemed an "underwriter" (as such term is defined in Section 2(a)(11) of the Securities Act) with respect to our proposed sale of the Opinion Stock.

We attest to the accuracy of the representations in this letter. We understand the Issuer's transfer agent, Clear Trust, LLC ("Clear Trust"), our broker, and Stein Law, PLLC will rely upon our statements herein, and we agree that the Issuer, Clear Trust, our broker, and Stein Law, PLLC may rely upon the above statements in relying upon Stein Law, PLLC's opinion regarding the subject matter hereof. If any such statements become inaccurate or incomplete, we will immediately notify Clear Trust, our broker, and Stein Law, PLLC.

In consideration of the reliance of the Issuer and its transfer agent thereon, we agree to jointly and severally fully indemnify Stein Law, PLLC, and its partners, officers, directors, employees, representatives and agents, for, and to jointly and severally hold each of them harmless against, any liability, loss, damage, cost or expense (including any counsel fees and expenses reasonably incurred by them) arising out of or relating to any incorrect statements or information given by us in this letter or concerning the sale.

Very truly yours,

John Suprock

Laurie Suprock

# Stein Law, PLLC

Keith B. Stein, Esq.
917-859-9744
kstein@steinlaw-pllc.com

January 7, 2022

**VIA E-MAIL**

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn:  Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn:  Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Re:  **Consortium LLC - Section 4(a)(1) Opinion Letter**

To Whom It May Concern:

This firm has been retained by Laurie Suprock ("LS"), the wife of John Suprock and the sole member and manager of Consortium LLC, a South Dakota limited liability company ("Seller"), as special securities counsel in connection with the sale of shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc., a Nevada corporation (the "Issuer") owned by Seller, which consists of a total of 400,000 shares (the "Opinion Stock"),  and to render an opinion concerning whether the Opinion Stock may be sold into the public markets without prior registration under the Securities Act of 1933, as amended (the "1933 Act"), or whether the Opinion Stock will continue to constitute "restricted securities" as that term is defined in Rule 144(a)(3) promulgated under the 1933 Act. We are providing this opinion to Clear Trust, LLC, the Issuer's transfer agent, and to the Issuer, to confirm that the Opinion Stock is unrestricted and freely tradable in the hands of Sellers, the sale of the Opinion Stock into the public markets is exempted from registration under Section 4(a)(1) promulgated under the 1933 Act, and the restrictive legend or stop transfer orders on the shares of Opinion Stock should be removed.

In connection with such representation, we have reviewed and rely on LS's representation letter, dated January 6, 2022 (the "Representation Letter"), a copy of which is attached hereto as Exhibit A, and have assumed that the representations contained therein are complete, truthful, and accurate.

In addition, we have also examined certificates of public officials, corporate and transaction documents and records and other certificates and instruments and have made other investigations as we have deemed necessary in connection with our opinions set forth in this letter. Such documents include, without limitation, (i) the Issuer's SEC filings and other instruments and documents as we have deemed necessary or appropriate for the purposes of

Quantum Energy, Inc.
Clear Trust, LLC
January 7, 2022
Page 2 of 7

rendering this opinion, and (ii) those certain stock purchase agreements pursuant to which the Opinion Stock was purchased by Seller (as described more fully in the Representation Letter). During our examination of the documents described in this paragraph and the prior paragraph, we have assumed, without independent verification, the genuineness of all signatures thereon, the legal capacity of all signatories thereto, the authenticity of all documents submitted to us as originals, or reviewed by us from public filings, the conformity to the original documents of all copies submitted to us or reviewed by us from public filings, and the veracity of each document.

No opinion is expressed herein with respect to laws other than the laws of the State of New York and the federal laws of the United States.

As described in the Representation Letter, the Opinion Stock is owned by Seller as the result of the following transactions:

(a)     On March 31, 2014, the Issuer entered into a 6% Series B Convertible Preferred Stock Purchase Agreement, pursuant to which John Suprock purchased and was delivered 200,000 shares of 6% Series B Convertible Preferred Stock.  John Suprock made full payment and/or tendered full consideration for said shares at the time of his acquisition.

(b)     On or about March 11, 2016, the Issuer authorized the issuance of 400,000 shares of Common Stock to Consortium pursuant to the conversion terms of the March 31, 2014 6% Series B Stock Purchase Agreement with John Suprock and the terms of the 6% Series B Convertible Preferred Certificate of Designations (attached as Exhibit A to the March 31, 2014 agreement) with a conversion ratio agreed by the Company at 1:2 (200,000=400,000) based on a conversion notice received March 2, 2016 from Mr. Suprock, and instructed Pacific Stock Transfer to issue said shares to Consortium.  On March 11, 2016, said 400,000 shares of Common Stock were issued to Consortium.  John Suprock made full payment and/or tendered full consideration for said shares at the time of the issuance to Consortium.

As also stated in the Representation Letter, we have been advised that (i) the consideration for the purchase of the Opinion Stock was fully provided to the Company in excess of two years ago, (ii) LS is not now and has never been a director, executive officer, or record or beneficial holder of 10% or more of the Company's then-issued and outstanding common stock, or in any other way an "affiliate" of the Issuer, as that term is defined in Rule 144(a)(1) promulgated under the 1933 Act, (iii) no partner, member, officer, director, or employee of Consortium is now, nor has ever been, a director, executive officer, or record or beneficial holder of 10% or more of the Company's then-issued and outstanding common stock, or in any other way an "affiliate" of the Issuer, and (iv) neither LS nor Consortium is a dealer.  Further, we relied upon the information contained in the Issuer's most recent Form 10-K/Amendment No. 2, for the fiscal year ended February 28, 2021, filed with the Securities and Exchange Commission (the "Commission") on December 15, 2021, for the number of the Company's issued and outstanding shares of Common Stock as of February 28, 2021 (48,491,485).  There have been no filings by the Issuer since such filing indicating any change in such number of outstanding shares of common stock.

Quantum Energy, Inc.
Clear Trust, LLC
January 7, 2022
Page 3 of 7

The 1933 Act generally requires that, for secondary sales (resales) of securities into the public markets, (i) the securities must have been issued and sold in a primary transaction pursuant to an effective registration statement that had been filed with the Commission unless (ii) the primary distribution transaction or the securities themselves were exempt from the registration requirements of Section 5 of the 1933 Act. If the primary transaction was accomplished through an exemption from such registration requirements, then the secondary sale (resale) of the securities must be the subject of an effective registration statement unless an exemption therefrom is available.

Section 4(a)(1) of the 1933 Act exempts from the registration requirements "transactions by any person other than an issuer, underwriter, or dealer." A holder of securities, who is not an issuer or a dealer is, therefore, able to sell his or her securities in a private sale without registration if the holder is not an underwriter, as defined in Section 2(a)(11) of the 1933 Act.  Generally, a person is an "underwriter" if he or she acquires securities with a view to "distribution" or is participating in a "distribution" (which generally means an offering that is not a private offering). As noted below, we have concluded that neither LS nor Consortium is an underwriter, as so defined.

Implicit within Section 2(a)(11) of the 1933 Act is the conclusion that a seller of securities is not an "underwriter" unless a "distribution" is present. Although "distribution" is not defined in the 1933 Act, the Commission has stated that a "distribution" "comprises the entire process by which in the course of a public offering a block of securities is dispersed and ultimately comes to rest in the hands of the investing public." The Commission and some courts have equated the term "distribution" with a "public offering."

The last sentence of Section 2(a)(11) provides that, for purposes of such section, the term "issuer" includes not only the actual issuer of a security, but also any person in a "control" relationship with the issuer. Thus, if a "distribution" is involved, a seller of securities will be considered to be an "underwriter" to whom the Section 4(a)(1) exemption from registration will not be available if any of the following apply:

- The seller purchased his or her securities from the issuer (or an affiliate of the issuer) with a view to their distribution;

- The seller is offering or selling for the issuer (or an affiliate of the issuer) in connection with the distribution of the securities;

- The seller participates or has a direct or indirect participation in any such distribution; or

- The seller participates or has a participation in the direct or indirect underwriting of any such distribution.

These four characteristics are sometimes referred to as the "four tests of underwriter status." The effect of Section 4(a)(1) is to deny an exemption from registration to, and to subject to the registration process, a resale transaction in which a reselling person acts as a link in a chain of transactions through which securities move from the issuer to the investing public.  To avoid the first of these tests (and the one that usually presents the

Quantum Energy, Inc.
Clear Trust, LLC
January 7, 2022
Page 4 of 7

most difficulty in this context), the selling stockholder must establish that he or she did not purchase the shares from the issuer with a view to their "distribution" or, to phrase it in the affirmative, that the seller purchased the shares "for investment purposes only."

In *United States v. Shewood.*, 175 F.Supp 480,483 (SDNY 1959), the U.S. District Court for the Southern District of New York held, in the context of a criminal proceeding, that, in the absence of any evidence showing that the purchaser did not take the shares for investment, the passage of two years after the purchase of restricted securities in a private placement before the commencement of a secondary distribution precluded a finding that the shares were purchased with a view to distribution.

The Commission has historically intended that the Section 4(a)(1) exemption be available for routine trading transactions between individual investors with respect to small amounts of securities already issued and having "come to rest" in the hands of the investing public.[1] The number of shares of Opinion Stock proposed to be sold by Seller constitutes a small percentage (approximately 0.82%) of the number of the Company's issued and outstanding shares of Common Stock.

Professors Loss and Seligman, in *Securities Regulation* (Little Brown and Co., 3rd Edition), explain that "[s]ection [(4(a)(1) of the 1933 Act] ... was intended to 'broadly [draw] the line between distribution of securities and trading in securities, indicating that the act is, in the main, concerned with the problem of distribution as distinguished from trading.'"

Professor Hazen, in *The Law of Securities Regulation* (West Publishing Co., 3rd Edition), notes that "Section 4(1), especially when read in connection with the dealers' and unsolicited brokers' transaction exemptions in Sections 4(3) and 4(4), exempts most day-to-day transactions that are effected on an exchange or in the over-the-counter markets."

Professor Loss, in *Fundamentals of Securities Regulation* (Little Brown and Co., 2nd Edition) notes that the *Sherwood* decision caused many securities lawyers to take the position that, absent other evidence that the holder was participating in a distribution for the issuer, a "nonaffiliate holder" could avoid underwriter status and thus rely on Section 4(a)(1) to make the resale of restricted securities without registration if he or she had signed an investment letter at the time of the purchase and held the restricted securities for at least two years. In the view of some commentators, securities have "come to rest" in the hands of a stockholder on the second anniversary of the sale and issuance of such securities to the holder and that, absent other factors, any resale thereof would constitute a separate transaction from the issuer's primary offering. Accordingly, securities "come to rest," when a sufficient period of time has passed from their sale and issuance to establish that the holder did not take them with a view to their distribution.

Professors Loss and Seligman explain: "It follows that, if the person who bought from an issuer (or affiliate) has held the securities long enough to make credible his assertion that he did not take them with a view to distribution - so that, as it used to be said, the securities have 'come to rest' in his hands - he should not be brought within the 'has purchased from' portion of the 'underwriter' definition in §2(11), and his later distribution should

---

[1] The Opinion Stock, in the hands of Seller, meets such a test.

Quantum Energy, Inc.
Clear Trust, LLC
January 7, 2022
Page 5 of 7

be exempted under §4(1)."

The Commission has never accepted the view that the passage of two years or even a longer period of time precludes a determination of underwriter status, arguing instead that, whether a person purchased securities with a view to distribution is a question of fact to be determined on a case-by-case basis in light of all of the circumstances. Suffice it to say there are no clear guidelines. If it can be established that the restricted securities have "come to rest" in the hands of the "nonaffiliate holder" (after the passage of an appropriate period of time), then, provided there is no other evidence showing that the holder took the shares with a view to distribution and provided that the holder does not meet any of the other four tests of underwriter status discussed above, he or she is free to make public or private resales in reliance on Section 4(a)(1).

Based on the information that we have been provided by LS and Seller, which we have no reason to question, and in reliance on the documents described above and in the Representation Letter, and due to the passage of more than two years between the date of the last sale of Opinion Stock to Seller and the Company's receipt of full consideration therefore, and the date of this letter, we have concluded that none of the "four tests of underwriter status" applies to LS or the Seller. Accordingly, it is our opinion that you may generate one or more certificates (without restrictive legend or stop transfer instructions) that represent the 400,000 shares of Opinion Stock, which may then be sold into the public markets without prior registration under the 1933 Act in accordance with the exemption from the registration requirements of Section 5 of the 1933 Act provided by Section 4(a)(1) thereof, such that, upon such sale, such shares will no longer constitute restricted securities.

This opinion is being rendered for your benefit only and may not be used or relied upon, nor may copies be delivered to, any other person or entity without our express written consent in connection with the matters set forth herein; except that you may deliver copies of this opinion to (a) your attorneys and other professional advisors acting on your behalf in connection with the transactions described herein, (b) governmental regulatory agencies having jurisdiction over you to the extent disclosure of the opinion is required by applicable law or regulation, and (c) designated persons pursuant to order or legal process of any court or governmental agency or authority of competent jurisdiction.

Whenever our opinion herein with respect to the existence or absence of facts is qualified by the phrase "to our knowledge" or "known to us," it is intended to indicate that during our representation of Sellers, no information has come to our attention that would give us actual knowledge of the existence or absence of such facts. Except to the extent expressly set forth herein, and except for a review of our own files and discussions with Sellers, we have not, however, undertaken any independent investigation to determine the existence or absence of such facts, and no inference as to our knowledge of the existence or absence of such facts should be drawn from the fact of our representation of such parties. We have assumed, with your permission, that all signatures of all the parties to the Representation Letter are authentic.

Quantum Energy, Inc.
Clear Trust, LLC
January 7, 2022
Page 6 of 7

Very truly yours,

STEIN LAW, PLLC

Keith B. Stein, Esq.

cc:   Joshua Wurtzel, Esq. (by e-mail)
      Samuel L. Butt, Esq. (by e-mail)

**EXHIBIT A**

**Representation Letter**
(See attached)



An enterprise beyond the resources of any one member

# Consortium LLC

January 6, 2022

<u>BY E-MAIL</u>

Quantum Energy, Inc.
3805 Rockbottom
North Las Vegas, NV 89030
Attn:  Craig Kitchen
Email: kitchen@qegy.energy

Clear Trust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn:  Latasha Sinordo
Email: inbox@cleartrusttransfer.com

Stein Law, PLLC
P.O. Box 606
Salisbury, CT 06068
Attn: Keith B. Stein, Esq.
Email: kstein@steinlaw-pllc.com

Re:    **Consortium LLC - Section 4(a)(1) Seller's Representation Letter**

To Whom it May Concern:

The undersigned, Laurie Suprock, hereby represents that I am the sole member and manager of Consortium LLC, a South Dakota limited liability Issuer ("Consortium").  I am also the wife of John Suprock. I write in connection with Consortium's proposed sale of shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc. (the "Issuer") owned by it, which consists of a total of 400,000 shares (the "Opinion Stock").  I request that you render an opinion concerning whether the Opinion Stock may be sold into the public markets without prior registration under the Securities Act of 1933, as amended (the "1933 Act") and Section 4(a)(1) promulgated thereunder ("Section 4(a)(1)"), is unrestricted and freely tradable by Consortium, and the restrictive legend or stop transfer orders on the Opinion Stock should be removed in connection with such sale.

Quantum Energy, Inc.
Clear Trust, LLC
Stein Law, PLLC
January 6, 2022
Page 2 of 3

Consortium obtained the Shares as the result of the following transactions:

(a)     On March 31, 2014, the Issuer entered into a 6% Series B Convertible Preferred Stock Purchase Agreement, which I have reviewed, pursuant to which John Suprock purchased and was delivered 200,000 shares of 6% Series B Convertible Preferred Stock. John Suprock made full payment and/or tendered full consideration for said shares at the time of his acquisition.

(b)     On or about March 11, 2016, the Issuer authorized the issuance of 400,000 shares of Common Stock to Consortium pursuant to the conversion terms of the March 31, 2014 6% Series B Stock Purchase Agreement with John Suprock and the terms of the 6% Series B Convertible Preferred Certificate of Designations (attached as Exhibit A to the March 31, 2014 agreement) with a conversion ratio agreed by the Company at 1:2 (200,000=400,000) based on a conversion notice received March 2, 2016 from Mr. Suprock, and instructed Pacific Stock Transfer to issue said shares to Consortium. On March 11, 2016, said 400,000 shares of Common Stock were issued to Consortium. John Suprock made full payment and/or tendered full consideration for said shares at the time of the issuance to Consortium.

In connection with the matters set forth in this Representation Letter, I have consulted with securities counsel of my choice.

In connection with this request, I hereby further represent, warrant, and covenant as follows:

1.     At the time of the afore-described acquisition of shares, the shares of Opinion Stock were acquired with investment intent and without a view to a distribution. The date of Consortium's acquisition of Opinion Stock and the tender of full consideration therefore was March 11, 2016, more than two years prior to the date of this Representation Letter.

2.     I intend to cause Consortium to sell the Opinion Stock into the public markets in a brokered transaction exempt from registration under Section 4(a)(1).

3.     I have carefully reviewed Section 4(a)(1). I am not now, nor have I ever been, a director, executive officer, or record or beneficial holder of 10% or more of the Company's then-issued and outstanding common stock, or in any other way an "affiliate" of the Issuer, as that term is defined in Rule 144(a)(1) promulgated under the 1933 Act. No partner, member, officer, director, or employee of Consortium is now, nor has ever been, a director, executive officer, or record or beneficial holder of 10% or more of the Company's then-issued and outstanding common stock, or in any other way an "affiliate" of the Issuer. Neither I nor Consortium is a dealer.

4.     Neither I nor Consortium has solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with the proposed sale pursuant to such order, and neither of us will do so.

Quantum Energy, Inc.
Clear Trust, LLC
Stein Law, PLLC
January 6, 2022
Page 3 of 3

5.      I am not aware of any facts or circumstances related to this matter that would result in either of me or Consortium being deemed an "underwriter" (as such term is defined in Section 2(a)(11) of the Securities Act) with respect to Consortium's proposed sale of the Opinion Stock. I attest to the accuracy of the representations in this letter.

I understand the Issuer's transfer agent, Clear Trust, LLC ("Clear Trust"), the broker, and Stein Law, PLLC will rely upon my statements herein, and I agree that the Issuer, Clear Trust, the broker, and Stein Law, PLLC may rely upon the above statements in relying upon Stein Law, PLLC's opinion regarding the subject matter hereof.  If any such statements become inaccurate or incomplete, I will immediately notify Clear Trust, the broker, and Stein Law, PLLC.

In consideration of the reliance of the Issuer and its transfer agent thereon, I and Consortium agree to jointly and severally fully indemnify Stein Law, PLLC, and its partners, officers, directors, employees, representatives and agents, for, and to jointly and severally hold each of them harmless against, any liability, loss, damage, cost or expense (including any counsel fees and expenses reasonably incurred by them) arising out of or relating to any incorrect statements or information given by me in this letter or concerning the sale.

Very truly yours,

Laurie Suprock
*Individually and as Sole Member and Manager
Of Consortium*

# EXHIBIT 6

# STEIN LAW, PLLC

Keith B. Stein, Esq.
917-859-9744
kstein@steinlaw-pllc.com

January 13, 2022

**VIA E-MAIL**

ClearTrust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn: CT Team
Email: inbox@cleartrusttransfer.com

Re: **John Suprock, Laurie Suprock and Consortium LLC - Section 4(a)(1) Opinion Letter**

To Whom It May Concern:

This firm has been retained by John Suprock ("JS") and Laurie Suprock ("LS"), husband and wife, and by LS on behalf of Consortium LLC, a South Dakota limited liability company as to which LS is the sole member and manager ("Consortium", and together with JS and LS, the "Sellers"), as special securities counsel in connection with the proposed sale of shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc., a Nevada corporation (the "Company") owned in the aggregate by Sellers, which consists of a total of 3,400,000 shares (the "Opinion Stock"). More specifically, our opinion has been requested concerning whether the Opinion Stock may be sold into the public markets without prior registration under the Securities Act of 1933, as amended (the "1933 Act") and Section 4(a)(1) promulgated thereunder ("Section 4(a)(1)"), and with the removal of the restrictive legend or stop transfer orders on the shares of Opinion Stock, or whether the Opinion Stock will continue to constitute "restricted securities" as that term is defined in Rule 144(a)(3) promulgated under the 1933 Act.

In connection with such representation, we have reviewed and rely on Sellers' representation letters, each dated January 13, 2022 (the "Representation Letters"), copies of which are attached hereto as Exhibit A, and have assumed that the representations contained therein are complete, truthful, and accurate.

In addition, we have also examined certificates of public officials, corporate and transaction documents and records and other certificates and instruments and have made other investigations as we have deemed necessary in connection with our opinions set forth in this letter. Such documents include, without limitation, (i) the Company's SEC filings and other instruments and documents as we have deemed necessary or appropriate for the purposes of rendering this opinion, (ii) a copy of the Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc. ("FTPM"), dated June 25, 2013, pursuant to which the Company acquired 100% of the issued and outstanding shares of common stock of FTPM in exchange for the issuance of 200,000 shares of the Common Stock of the Company to the shareholders of FTPM (*i.e.*, Stanley F. Wilson), which such share issuance was exempt from registration pursuant to Section 4(2) or 3(b) of the Act, (iii) a copy of the Unanimous Written Consent of Directors of the Board of Directors of the Company, dated as

Quantum Energy, Inc.
Clear Trust, LLC
January 13, 2022
Page 2 of 9

of October 31, 2013, and executed by Stanley F. Wilson, Chairman of the Board of Directors of the Company, authorizing the implementation of a forward stock split of the issued shares of the Common Stock of the Company in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, (iv) a copy of the Related Action Notification Form submitted by the Company to FINRA on October 31, 2013, related to the Rule 10b-17 Action (*i.e.*, the forward stock split), and (v) those certain stock purchase agreements pursuant to which the Opinion Stock was purchased by Sellers (as described more fully in the Representation Letters). During our examination of the Representation Letters and the documents described in this paragraph, we have assumed, without independent verification, the genuineness of all signatures thereon, the legal capacity of all signatories thereto, the authenticity of all documents submitted to us as originals, or reviewed by us from public filings, the conformity to the original documents of all copies submitted to us or reviewed by us from public filings, and the veracity of each document.

No opinion is expressed herein with respect to laws other than the laws of the State of New York and the federal laws of the United States.

As described in the Representation Letters, we have been advised that the Opinion Stock is owned by Sellers as the result of the following transactions:

(a) Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, the Company, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson").

(b) On October 13, 2013, the Company authorized the implementation of a forward stock split of the issued shares of the Company's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 shares of Common Stock held by Wilson becoming 30,000,000 shares.

(c) On or about April 11, 2017, the Company issued and delivered to John Suprock 850,000 shares of Common Stock of the Company, as compensation under and pursuant to that certain Referral Agreement, dated as of March 30, 2017, between the Company and John Suprock.

(d) On January 16, 2018, John Suprock and Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock and Laurie Suprock purchased and were delivered, as joint tenants, 850,000 shares of Common Stock of the Company.

(e) On January 16, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 325,000 shares of Common Stock of the Company.

Quantum Energy, Inc.
Clear Trust, LLC
January 13, 2022
Page 3 of 9

(f)     On January 16, 2018, Laurie Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which Laurie Suprock purchased and was delivered 325,000 shares of Common Stock of the Company.

(g)     On March 8, 2018, John Suprock entered into a Stock Purchase Agreement with Wilson, pursuant to which John Suprock purchased and was delivered 650,000 shares of Common Stock of the Company.

(h)     On March 31, 2014, the Company entered into a 6% Series B Convertible Preferred Stock Purchase Agreement, pursuant to which John Suprock purchased and was delivered 200,000 shares of 6% Series B Convertible Preferred Stock.  John Suprock made full payment and/or tendered full consideration for said shares at the time of his acquisition.

(i)     On or about March 11, 2016, the Company authorized the issuance of 400,000 shares of Common Stock to Consortium pursuant to the conversion terms of the March 31, 2014 6% Series B Stock Purchase Agreement with John Suprock and the terms of the 6% Series B Convertible Preferred Certificate of Designations (attached as Exhibit A to the March 31, 2014 agreement) with a conversion ratio agreed by the Company at 1:2 (200,000=400,000) based on a conversion notice received March 2, 2016 from Mr. Suprock, and instructed Pacific Stock Transfer to issue said shares to Consortium.  On March 11, 2016, said 400,000 shares of Common Stock were issued to Consortium.  John Suprock made full payment and/or tendered full consideration for said shares at the time of the issuance to Consortium.

We have been advised of the following:

(i)     The consideration for the purchase of the Opinion Stock was fully provided to Wilson and the Company, respectively, in excess of two years ago.

(ii)     Neither JS nor LS is now, or has ever been, a director or executive officer of the Company.

(iii)     No partner, member, officer, director, or employee of Consortium is now, nor has ever been, a director or executive officer of the Company.

(iv)     Prior to January 12, 2022 (the day prior to the date of this letter), neither JS nor LS, nor any partner, member, officer, director, or employee of Consortium has ever been a record or beneficial holder of 10% or more of the Company's then-issued and outstanding Common Stock.  On January 12, 2022, the Company reported that it had entered into settlement agreements with four former officers and directors and one former affiliate shareholder of the Company resulting in a reduction in the number of issued and outstanding shares of Common Stock to 31,970,497 (as such number was confirmed on January 13, 2022 by ClearTrust, LLC, the Company's transfer agent, to the undersigned).  None of JS, LS, or Consortium was a party to such settlement agreements.  However, as the result of said reduction in the number of issued and outstanding shares of Common Stock, JS,

Quantum Energy, Inc.
Clear Trust, LLC
January 13, 2022
Page 4 of 9

        LS, and Consortium, taken together, are now the record or beneficial holders of 10% or more of the Company's issued and outstanding Common Stock as of the date hereof.

(v)       None of JS, LS, or Consortium has ever been controlled by or under common control with the Company and none of them has ever had any contractual rights to exercise any control over the Company.

(vi)      None of JS, LS, or Consortium has the ability, by relationship, contract or otherwise, to affect the management or policies of the Company.

(vii)     None of JS, LS, or Consortium possesses the power, directly or indirectly, to elect or designate any member of the Company's Board of Directors.

(viii)    There are no familial relationships and no other business relationships among JS, LS, and Consortium, on the one hand, and the Company, on the other hand.

(ix)      There are no other indicia of control with respect to the Company as exhibited by JS, LS, or Consortium of which we are aware.

(x)       JS, LS, and Consortium have been, always, passive investors in the Company.

(xi)      None of JS, LS or Consortium is a dealer.

(xii)     At the time of each acquisition, each of JS, LS, and Consortium acquired the shares of Opinion Stock with investment intent and without a view to a distribution.

Further, we have relied upon oral confirmation on January 13, 2022 from ClearTrust, LLC, the Company's transfer agent, that the number of the Company's issued and outstanding shares of Common Stock as of the date of this letter (January 13, 2022) is 31,970,497.

The 1933 Act generally requires that, for secondary sales (resales) of securities into the public markets, (i) the securities must have been issued and sold in a primary transaction pursuant to an effective registration statement that had been filed with the Commission unless (ii) the primary distribution transaction or the securities themselves were exempt from the registration requirements of Section 5 of the 1933 Act. If the primary transaction was accomplished through an exemption from such registration requirements, then the secondary sale (resale) of the securities must be the subject of an effective registration statement unless an exemption therefrom is available.

Section 4(a)(1) of the 1933 Act exempts from the registration requirements "transactions by any person other than an issuer, underwriter, or dealer." A holder of securities who is not an issuer or a dealer is, therefore, able to sell his or her securities in a private sale without registration if the holder is not an underwriter, as defined in Section 2(a)(11) of the 1933 Act. Generally, a person is an "underwriter" if he or she acquires securities with a view to "distribution" or is participating in a "distribution" (which generally means an offering that is not a private offering). As noted below, we have concluded that neither DS nor CS is an underwriter, as so defined.

Quantum Energy, Inc.
Clear Trust, LLC
January 13, 2022
Page 5 of 9

Implicit within Section 2(a)(11) of the 1933 Act is the conclusion that a seller of securities is not an "underwriter" unless a "distribution" is present. Although "distribution" is not defined in the 1933 Act, the Securities and Exchange Commission (the "Commission") has stated that a "distribution" "comprises the entire process by which in the course of a public offering a block of securities is dispersed and ultimately comes to rest in the hands of the investing public." The Commission and some courts have equated the term "distribution" with a "public offering."

The last sentence of Section 2(a)(11) provides that, for purposes of such section, the term "issuer" includes not only the actual issuer of a security, but also any person in a "control" relationship with the Company. Thus, if a "distribution" is involved, a seller of securities will be considered to be an "underwriter" to whom the Section 4(a)(1) exemption from registration will not be available if any of the following apply:

- The seller purchased his or her securities from the issuer (or an affiliate of the issuer) with a view to their distribution;

- The seller is offering or selling for the issuer (or an affiliate of the issuer) in connection with the distribution of the securities;

- The seller participates or has a direct or indirect participation in any such distribution; or

- The seller participates or has a participation in the direct or indirect underwriting of any such distribution.

These four characteristics are sometimes referred to as the "four tests of underwriter status." The effect of Section 4(a)(1) is to deny an exemption from registration to, and to subject to the registration process, a resale transaction in which a reselling person acts as a link in a chain of transactions through which securities move from an issuer to the investing public.  To avoid the first of these tests (and the one that usually presents the most difficulty in this context), the selling stockholder must establish that he or she did not purchase the shares from the issuer with a view to their "distribution" or, to phrase it in the affirmative, that the seller purchased the shares "for investment purposes only."

In *United States v. Shewood.*, 175 F.Supp 480,483 (SDNY 1959), the U.S. District Court for the Southern District of New York held, in the context of a criminal proceeding, that, in the absence of any evidence showing that the purchaser did not take the shares for investment, the passage of two years after the purchase of restricted securities in a private placement before the commencement of a secondary distribution precluded a finding that the shares were purchased with a view to distribution.

The Commission has historically intended that the Section 4(a)(1) exemption be available for routine trading transactions by individual investors with respect to securities already issued and having "come to rest" in the hands of the investing public.[1]

---

[1] The Opinion Stock, in the hands of Sellers, meets such a test.

Quantum Energy, Inc.
Clear Trust, LLC
January 13, 2022
Page 6 of 9

Professors Loss and Seligman, in *Securities Regulation* (Little Brown and Co., 3rd Edition), explain that "[s]ection [(4(a)(1) of the 1933 Act] … was intended to 'broadly [draw] the line between distribution of securities and trading in securities, indicating that the act is, in the main, concerned with the problem of distribution as distinguished from trading.'"

Professor Hazen, in *The Law of Securities Regulation (*West Publishing Co., 3rd Edition), notes that "Section 4(1), especially when read in connection with the dealers' and unsolicited brokers' transaction exemptions in Sections 4(3) and 4(4), exempts most day-to-day transactions that are effected on an exchange or in the over-the-counter markets."

Professor Loss, in *Fundamentals of Securities Regulation* (Little Brown and Co., 2nd Edition) notes that the *Sherwood* decision caused many securities lawyers to  take the position  that, absent other evidence that the holder was participating in a distribution for the issuer, a "nonaffiliate holder" could  avoid underwriter status and thus rely on Section 4(a)(1) to make the resale of restricted securities without registration if he or she had signed an investment letter at the time of the  purchase  and  held  the restricted securities for  at least two  years. In  the view of some  commentators, securities have "come to rest" in the hands of a stockholder on the second anniversary of the sale and issuance of such securities to the holder and that, absent other factors, any resale thereof would constitute a separate transaction from the issuer's primary offering.  Accordingly, securities "come to rest," when a sufficient period of time has passed from their sale and issuance to establish that the holder did not take them with a view to their distribution.

Professors Loss and Seligman explain: "It follows that, if the person who bought from an issuer (or affiliate) has held the securities long enough to make credible his assertion that he did not take them with a view to distribution -  so that, as it used to be said, the securities have 'come to rest' in his hands - he should  not  be brought within the 'has purchased  from'  portion  of the 'underwriter'  definition in §2(11), and  his later distribution should be exempted under §4(1)."

The Commission has never accepted the view that the passage of two years or even a longer period of time precludes a determination of underwriter status, arguing instead that, whether a person purchased securities with a view to distribution is a question of fact to be determined on a case-by-case basis in light of all of the circumstances.  Suffice it to say there are no clear guidelines. If it can be established that the restricted securities have "come to rest" in the hands of the "nonaffiliate holder" (after the passage of an appropriate period of time), then, provided there is no other evidence showing that the holder took the shares with a view to distribution and provided that the holder does not meet any of the other four tests of underwriter status discussed above, he or she is free to make public or private resales in reliance on Section 4(a)(1).

The term "affiliate" is defined in Rule 405 under the 1933 Act as a "person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with," an issuer. The term "control" is defined in Rule 405 under the Act as "the possession, direct or indirect, of the power to direct or cause the direction of the management and

Quantum Energy, Inc.
Clear Trust, LLC
January 13, 2022
Page 7 of 9

policies of a person, whether through the ownership of voting securities, by contract, or otherwise."

The SEC Staff has consistently taken the position that the determination of "control" status is dependent in large part on the facts and circumstances involved and, therefore, has declined to state definitively what circumstances will result in a person being deemed to be in "control" of an issuer.   Ten percent ownership, standing alone, is not dispositive of the question of "control" status.

Based on the information that we have been provided by Sellers, which we have no reason to question, and in reliance on the documents described above and the information in the Representation Letters, and due to the passage of more than two years between the date of the sale of Opinion Stock to Sellers and Wilson's and the Company's, respectively, receipt of full consideration therefore, and the date of this letter, we have concluded that (i) none of the "four tests of underwriter status" applies to any of JS, LS or Consortium, and therefore none of JS, LS, or Consortium should be deemed to be an "underwriter", (ii) none of the Sellers should be deemed to be an affiliate or control person of the Company, and (iii) none of the shares of Opinion Stock should be deemed to be "control securities".  Accordingly, it is our opinion that you may generate one or more certificates (without restrictive legend or stop transfer instructions) that represent the 3,400,000 shares of Opinion Stock, which may then be sold into the public markets without prior registration under the 1933 Act in accordance with the exemption from the registration requirements of Section 5 of the 1933 Act provided by Section 4(a)(1) thereof, such that, upon such sale, such shares will no longer constitute restricted securities.

This opinion is being rendered for your benefit only and may not be used or relied upon, nor may copies be delivered to, any other person or entity, including without limitation the Company, without our express written consent in connection with the matters set forth herein; except that you may deliver copies of this opinion to (a) your attorneys and other professional advisors acting on your behalf in connection with the transactions described herein, (b) governmental regulatory agencies having jurisdiction over you to the extent disclosure of the opinion is required by applicable law or regulation, and (c) designated persons pursuant to order or legal process of any court or governmental agency or authority of competent jurisdiction.

Whenever our opinion herein with respect to the existence or absence of facts is qualified by the phrase "we have been advised", it is intended to indicate that during our representation of Sellers, no information has come to our attention that would give us actual knowledge of the existence or absence of such facts.  Except to the extent expressly set forth herein, and except for a review of our own files and discussions with Sellers and their other counsel, we have not, however, undertaken any independent investigation to determine the existence or absence of such facts, and no inference as to our knowledge of the existence or absence of such facts should be drawn from the fact of our representation of such parties.

We do not undertake by delivery of this opinion or otherwise to advise you of any change in any matter set forth herein, whether based on a change in law or a change in any fact arising subsequent to the date hereof that might affect the opinion expressed herein.

Quantum Energy, Inc.
Clear Trust, LLC
January 13, 2022
Page 8 of 9

This opinion letter is governed by and shall be interpreted in accordance with the Legal Opinion Accord and accompanying commentary and technical Notes as published in The Business Lawyer, Volume 14, No 1, November 1991 (the "Accord"), except as modified in this letter.  As a consequence, it is subject to a number of assumptions, qualifications, exceptions, definitions, limitations on coverage, and other limitations, all as more particularly described in the Accord, and this opinion letter should be read in conjunction therewith.

Very truly yours,

STEIN LAW, PLLC

Keith B. Stein, Esq.


cc:     Joshua Wurtzel, Esq. (by e-mail)
        Samuel L. Butt, Esq. (by e-mail)

**EXHIBIT A**

**Representation Letters**
(See attached)

**John Suprock**
**401 E. 8th Street**
**Suite 214 #1325**
**Sioux Falls, SD 57103**

January 13, 2022

**BY E-MAIL**

ClearTrust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn:  CT Team
Email: inbox@cleartrusttransfer.com

Stein Law, PLLC
P.O. Box 606
Salisbury, CT 06068
Attn: Keith B. Stein, Esq.
Email: kstein@steinlaw-pllc.com

Re:     **John Suprock - Section 4(a)(1) Seller's Representation Letter**

To Whom it May Concern:

The undersigned, John Suprock, hereby writes in connection with my proposed sale of shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc. (the "Company") owned by me, which consists of a total of 1,825,000 shares (the "Opinion Stock").  I request that Stein Law, PLLC render an opinion concerning whether the Opinion Stock may be sold into the public markets without prior registration under the Securities Act of 1933, as amended (the "1933 Act") and Section 4(a)(1) promulgated thereunder ("Section 4(a)(1)"), and with the removal of the restrictive legend or stop transfer orders on the shares of Opinion Stock, or whether the Opinion Stock will continue to constitute "restricted securities" as that term is defined in Rule 144(a)(3) promulgated under the 1933 Act.

I obtained the Opinion Stock as the result of the following transactions:

(a)     Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, which we have reviewed, the Company, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson").  I believe that, pursuant to said Agreement, Wilson made full payment and/or tendered full consideration for the shares at the time of his acquisition.

ClearTrust, LLC
Stein Law, PLLC
January 13, 2022
Page 2 of 3

(b)     On October 13, 2013, the Company authorized the implementation of a forward stock split of the issued shares of the Company's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 shares held by Wilson becoming 30,000,000 shares.  Such authorization is evidenced by that certain Unanimous Written Consent of Directors of the Board of Directors of the Company, dated as of October 31, 2013, and executed by Stanley F. Wilson, Chairman of the Board of Directors of the Company, which I have reviewed.

(c)     On or about April 11, 2017, the Company issued and delivered to me 850,000 shares of Common Stock of the Company, as compensation under and pursuant to that certain Referral Agreement, dated as of March 30, 2017, between the Company and me, which I have reviewed.  I made full payment and/or tendered full consideration for said shares at the time of my acquisition.

(d)     On January 16, 2018, I entered into a Stock Purchase Agreement with Wilson, pursuant to which I purchased and was delivered 325,000 shares of Common Stock of the Company.  I made full payment and/or tendered full consideration for said shares at the time of my acquisition.

(e)     On March 8, 2018, I entered into a Stock Purchase Agreement with Wilson, pursuant to which I purchased and was delivered 650,000 shares of Common Stock of the Company.  I made full payment and/or tendered full consideration for said shares at the time of my acquisition.

In connection with the matters set forth in this Representation Letter, I have consulted with securities counsel of my choice.

In connection with this request, I hereby further represent and warrant as follows:

1.     At the time of each of the afore-described acquisition of shares, I acquired the shares of Opinion Stock with investment intent and without a view to a distribution.  The date of my last acquisition of Opinion Stock and my tender of full consideration therefore was March 8, 2018, more than two years prior to the date of this Representation Letter.

2.     I intend to sell the Opinion Stock into the public markets in a brokered transaction exempt from registration under Section 4(a)(1).

3.     I have carefully reviewed Section 4(a)(1).  I am not now, nor have I ever been, a director or executive officer of the Company.  Prior to January 12, 2022 (the day prior to the date of this letter), I have never been a record or beneficial holder of 10% or more of the Company's then-issued and outstanding Common Stock.  On January 12, 2022, the Company reported that it had entered into settlement agreements with four former officers and directors and one former affiliate shareholder of the Company resulting in a reduction in the number of issued and outstanding shares of Common Stock to 31,970,497 (as such number was confirmed by ClearTrust, LLC, the Company's transfer agent).  I was not a party to such settlement agreements.  However, as the result of said reduction in the number of issued

ClearTrust, LLC
Stein Law, PLLC
January 13, 2022
Page 3 of 3

and outstanding shares of Common Stock, I may now, taken together with my wife Laurie Suprock, be deemed the record or beneficial holder of 10% or more of the Company's issued and outstanding Common Stock as of the date hereof.

4.      I have never been controlled by or under common control with the Company and I have never had any contractual rights to exercise any control over the Company. I do not have the ability, by relationship, contract or otherwise, to affect the management or policies of the Company. I do not possess the power, directly or indirectly, to elect or designate any member of the Company's Board of Directors. There are no familial relationships and no other business relationships between me and the Company. I have been, always, a passive investor in the Company.

5.      I am not a dealer.

6.      I am not aware of any facts or circumstances related to this matter or the Company that would result in me being deemed an "underwriter" (as such term is defined in Section 2(a)(11) of the 1933 Act) with respect to my proposed sale of the Opinion Stock.

7.      Except as described in paragraph 3 above, I am not aware of any facts or circumstances related to this matter or the Company that would result in me being deemed an "affiliate" of the Company (as such term is defined in Rule 405 promulgated under the 1933 Act).

8.      I have not solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with the proposed sale, and I will not do so.

I attest to the accuracy of the representations in this letter. I understand the Company's transfer agent, ClearTrust, LLC ("ClearTrust"), and my counsel Stein Law, PLLC will rely upon my statements herein, and I agree that ClearTrust may rely upon the above statements in relying upon Stein Law, PLLC's opinion regarding the subject matter hereof. If any such statements become inaccurate or incomplete, I will immediately notify Clear Trust and Stein Law, PLLC.

In consideration of the reliance of the afore-mentioned parties herein, I agree to fully indemnify Stein Law, PLLC, and its partners, officers, directors, employees, representatives and agents, for, and to hold each of them harmless against, any liability, loss, damage, cost or expense (including any counsel fees and expenses reasonably incurred by them) arising out of or relating to any incorrect statements or information given by me in this letter or concerning the sale.

Very truly yours,

John Suprock

**Laurie Suprock**
**401 E. 8th Street**
**Suite 214 #1325**
**Sioux Falls, SD 57103**

January 13, 2022

**BY E-MAIL**

ClearTrust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn:  CT Team
Email: inbox@cleartrusttransfer.com

Stein Law, PLLC
P.O. Box 606
Salisbury, CT 06068
Attn: Keith B. Stein, Esq.
Email: kstein@steinlaw-pllc.com

Re:      **Laurie Suprock - Section 4(a)(1) Seller's Representation Letter**

To Whom it May Concern:

The undersigned, Laurie Suprock, hereby writes in connection with my proposed sale of shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc. (the "Company") owned by me, which consists of a total of 325,000 shares (the "Opinion Stock").  I request that Stein Law, PLLC  render an opinion concerning whether the Opinion Stock may be sold into the public markets without prior registration under the Securities Act of 1933, as amended (the "1933 Act") and Section 4(a)(1) promulgated thereunder ("Section 4(a)(1)"), and with the removal of the restrictive legend or stop transfer orders on the shares of Opinion Stock, or whether the Opinion Stock will continue to constitute "restricted securities" as that term is defined in Rule 144(a)(3) promulgated under the 1933 Act.

I obtained the Opinion Stock as the result of the following transactions:

(a)      Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, which we have reviewed, the Company, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson").  I believe that, pursuant to said Agreement, Wilson made full payment and/or tendered full consideration for the shares at the time of his acquisition.

ClearTrust, LLC
Stein Law, PLLC
January 13, 2022
Page 2 of 3

(b)     On October 13, 2013, the Company authorized the implementation of a forward stock split of the issued shares of the Company's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 shares held by Wilson becoming 30,000,000 shares.  Such authorization is evidenced by that certain Unanimous Written Consent of Directors of the Board of Directors of the Company, dated as of October 31, 2013, and executed by Stanley F. Wilson, Chairman of the Board of Directors of the Company, which I have reviewed.

(c)     On January 16, 2018, I entered into a Stock Purchase Agreement with Wilson, pursuant to which I purchased and was delivered 325,000 shares of Common Stock of the Company.  I made full payment and/or tendered full consideration for said shares at the time of my acquisition.

In connection with the matters set forth in this Representation Letter, I have consulted with securities counsel of my choice.

In connection with this request, I hereby further represent and warrant as follows:

1.     At the time of each of the afore-described acquisition of shares, I acquired the shares of Opinion Stock with investment intent and without a view to a distribution.  The date of my last acquisition of Opinion Stock and my tender of full consideration therefore was January 16, 2018, more than two years prior to the date of this Representation Letter.

2.     I intend to sell the Opinion Stock into the public markets in a brokered transaction exempt from registration under Section 4(a)(1).

3.     I have carefully reviewed Section 4(a)(1).  I am not now, nor have I ever been, a director or executive officer of the Company.  Prior to January 12, 2022 (the day prior to the date of this letter), I have never been a record or beneficial holder of 10% or more of the Company's then-issued and outstanding Common Stock.  On January 12, 2022, the Company reported that it had entered into settlement agreements with four former officers and directors and one former affiliate shareholder of the Company resulting in a reduction in the number of issued and outstanding shares of Common Stock to 31,970,497 (as such number was confirmed by ClearTrust, LLC, the Company's transfer agent).  I was not a party to such settlement agreements.  However, as the result of said reduction in the number of issued and outstanding shares of Common Stock, I may now, taken together with my husband John Suprock, be deemed the record or beneficial holder of 10% or more of the Company's issued and outstanding Common Stock as of the date hereof.

4.     I have never been controlled by or under common control with the Company and I have never had any contractual rights to exercise any control over the Company.  I do not have the ability, by relationship, contract or otherwise, to affect the management or policies of the Company.  I do not possess the power, directly or indirectly, to elect or designate any member of the Company's Board of Directors.  There are no familial relationships and no other business relationships between me and the Company.  I have been, always, a passive investor in the Company.

ClearTrust, LLC
Stein Law, PLLC
January 13, 2022
Page 3 of 3

5.      I am not a dealer.

6.      I am not aware of any facts or circumstances related to this matter or the Company that would result in me being deemed an "underwriter" (as such term is defined in Section 2(a)(11) of the 1933 Act) with respect to my proposed sale of the Opinion Stock.

7.      Except as described in paragraph 3 above, I am not aware of any facts or circumstances related to this matter or the Company that would result in me being deemed an "affiliate" of the Company (as such term is defined in Rule 405 promulgated under the 1933 Act).

8.      I have not solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with the proposed sale, and I will not do so.

I attest to the accuracy of the representations in this letter.  I understand the Company's transfer agent, ClearTrust, LLC ("ClearTrust"), and my counsel Stein Law, PLLC will rely upon my statements herein, and I agree that ClearTrust may rely upon the above statements in relying upon Stein Law, PLLC's opinion regarding the subject matter hereof.  If any such statements become inaccurate or incomplete, I will immediately notify Clear Trust and Stein Law, PLLC.

In consideration of the reliance of the afore-mentioned parties herein, I agree to fully indemnify Stein Law, PLLC, and its partners, officers, directors, employees, representatives and agents, for, and to hold each of them harmless against, any liability, loss, damage, cost or expense (including any counsel fees and expenses reasonably incurred by them) arising out of or relating to any incorrect statements or information given by me in this letter or concerning the sale.

Very truly yours,

Laurie Suprock

**John and Laurie Suprock**
**401 E. 8th Street**
**Suite 214 #1325**
**Sioux Falls, SD 57103**

January 13, 2022

**BY E-MAIL**

ClearTrust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn: CT Team
Email: inbox@cleartrusttransfer.com

Stein Law, PLLC
P.O. Box 606
Salisbury, CT 06068
Attn: Keith B. Stein, Esq.
Email: kstein@steinlaw-pllc.com

Re:     **John and Laurie Suprock - Section 4(a)(1) Seller's Representation Letter**

To Whom it May Concern:

The undersigned, John and Laurie Suprock, hereby represent that we are natural persons and husband and wife.  We write in connection with our proposed sale of shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc. (the "Company") owned jointly by us, which consists of a total of 850,000 shares (the "Opinion Stock").  We request that Stein Law, PLLC  render an opinion concerning whether the Opinion Stock may be sold into the public markets without prior registration under the Securities Act of 1933, as amended (the "1933 Act") and Section 4(a)(1) promulgated thereunder ("Section 4(a)(1)"), and with the removal of the restrictive legend or stop transfer orders on the shares of Opinion Stock, or whether the Opinion Stock will continue to constitute "restricted securities" as that term is defined in Rule 144(a)(3) promulgated under the 1933 Act.

We obtained the Opinion Stock as the result of the following transactions:

(a)      Pursuant to that certain Agreement Concerning the Exchange of Common Stock Between Quantum Energy, Inc. and the Shareholder of FTPM Resources, Inc., dated June 25, 2013, which we have reviewed, the Company, among other actions, issued 200,000 shares of Common Stock to Stanley F. Wilson ("Wilson").  We believe that, pursuant to said Agreement, Wilson made full payment and/or tendered full consideration for the shares at the time of his acquisition.

ClearTrust, LLC
Stein Law, PLLC
January 13, 2022
Page 2 of 3

(b)     On October 13, 2013, the Company authorized the implementation of a forward stock split of the issued shares of the Company's Common Stock in a ratio of 150 to 1 for all shares issued as of the record date of November 15, 2013, which resulted in the 200,000 shares held by Wilson becoming 30,000,000 shares.  Such authorization is evidenced by that certain Unanimous Written Consent of Directors of the Board of Directors of the Company, dated as of October 31, 2013, and executed by Stanley F. Wilson, Chairman of the Board of Directors of the Company, which we have reviewed.

(c)     On January 16, 2018, we entered into a Stock Purchase Agreement with Wilson, pursuant to which I purchased and was delivered 850,000 shares of Common Stock of the Company.  We made full payment and/or tendered full consideration for said shares at the time of my acquisition.

In connection with the matters set forth in this Representation Letter, we have consulted with securities counsel of my choice.

In connection with this request, we hereby further represent and warrant as follows:

1.     At the time of the afore-described acquisition of shares, we acquired the shares of Opinion Stock with investment intent and without a view to a distribution.  The date of our acquisition of Opinion Stock and our tender of full consideration therefore was January 16, 2018, more than two years prior to the date of this Representation Letter.

2.     We intend to sell the Opinion Stock into the public markets in a brokered transaction exempt from registration under Section 4(a)(1).

3.     We have carefully reviewed Section 4(a)(1).  Neither of us are now, nor has ever been, a director or executive officer of the Company.  Prior to January 12, 2022 (the day prior to the date of this letter), neither of us has ever been a record or beneficial holder of 10% or more of the Company's then-issued and outstanding Common Stock.  On January 12, 2022, the Company reported that it had entered into settlement agreements with four former officers and directors and one former affiliate shareholder of the Company resulting in a reduction in the number of issued and outstanding shares of Common Stock to 31,970,497 (as such number was confirmed by ClearTrust, LLC, the Company's transfer agent).  Neither of us was a party to such settlement agreements.  However, as the result of said reduction in the number of issued and outstanding shares of Common Stock, we are now, taken together, the record or beneficial holders of 10% or more of the Company's issued and outstanding Common Stock as of the date hereof.

4.     Neither of us has ever been controlled by or under common control with the Company, and neither of us has ever had any contractual rights to exercise any control over the Company.  Neither of us has the ability, by relationship, contract or otherwise, to affect the management or policies of the Company.  Neither of us possesses the power, directly or indirectly, to elect or designate any member of the Company's Board of Directors.  There are no familial relationships and no other business relationships between either of us and the Company.  We have been, always, passive investors in the Company.

ClearTrust, LLC
Stein Law, PLLC
January 13, 2022
Page 3 of 3

5.      Neither of us is a dealer.

6.      Neither of us is aware of any facts or circumstances related to this matter or the Company that would result in either of us being deemed an "underwriter" (as such term is defined in Section 2(a)(11) of the 1933 Act) with respect to my proposed sale of the Opinion Stock.

7.      Except as described in paragraph 4 above, neither of us is aware of any facts or circumstances related to this matter or the Company that would result in either of us being deemed an "affiliate" of the Company (as such term is defined in Rule 405 promulgated under the 1933 Act).

8.      Neither of us has solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with our proposed sale, and we will not do so.

We attest to the accuracy of the representations in this letter.  We understand the Company's transfer agent, ClearTrust, LLC ("ClearTrust"), and our counsel Stein Law, PLLC will rely upon our statements herein, and we agree that ClearTrust may rely upon the above statements in relying upon Stein Law, PLLC's opinion regarding the subject matter hereof.  If any such statements become inaccurate or incomplete, we will immediately notify ClearTrust and Stein Law, PLLC.

In consideration of the reliance of the afore-mentioned parties herein, We agree, jointly and severally, to fully indemnify Stein Law, PLLC, and its partners, officers, directors, employees, representatives and agents, for, and to hold each of them harmless against, any liability, loss, damage, cost or expense (including any counsel fees and expenses reasonably incurred by them) arising out of or relating to any incorrect statements or information given by us in this letter or concerning the sale.

Very truly yours,

John Suprock

Laurie Suprock

**Laurie Suprock**
**401 E. 8th Street**
**Suite 214 #1325**
**Sioux Falls, SD 57103**

January 13, 2022

**BY E-MAIL**

ClearTrust, LLC
16540 Pointe Village Drive
Suite 205
Lutz, Florida 33558
Attn: CT Team
Email: inbox@cleartrusttransfer.com

Stein Law, PLLC
P.O. Box 606
Salisbury, CT 06068
Attn: Keith B. Stein, Esq.
Email: kstein@steinlaw-pllc.com

Re:     **Consortium LLC - Section 4(a)(1) Seller's Representation Letter**

To Whom it May Concern:

The undersigned, Laurie Suprock, hereby represents that I am the sole member and manager of Consortium LLC, a South Dakota limited liability Issuer ("Consortium"). I am also the wife of John Suprock. I write in connection with Consortium's proposed sale of shares of common stock, $0.001 par value (the "Common Stock") of Quantum Energy, Inc. (the "Company") owned by it, which consists of a total of 400,000 shares (the "Opinion Stock"). I request that Stein Law, PLLC render an opinion concerning whether the Opinion Stock may be sold into the public markets without prior registration under the Securities Act of 1933, as amended (the "1933 Act") and Section 4(a)(1) promulgated thereunder ("Section 4(a)(1)"), and with the removal of the restrictive legend or stop transfer orders on the shares of Opinion Stock, or whether the Opinion Stock will continue to constitute "restricted securities" as that term is defined in Rule 144(a)(3) promulgated under the 1933 Act.

Consortium obtained the Opinion Stock as the result of the following transactions:

(a)     On March 31, 2014, the Company entered into a 6% Series B Convertible Preferred Stock Purchase Agreement, which I have reviewed, pursuant to which John Suprock purchased and was delivered 200,000 shares of 6% Series B Convertible Preferred Stock. John Suprock made full payment and/or tendered full consideration for said shares at the time of his acquisition.

ClearTrust, LLC
Stein Law, PLLC
January 13, 2022
Page 2 of 3

(b)     On or about March 11, 2016, the Company authorized the issuance of 400,000 shares of Common Stock to Consortium pursuant to the conversion terms of the March 31, 2014 6% Series B Stock Purchase Agreement with John Suprock and the terms of the 6% Series B Convertible Preferred Certificate of Designations (attached as Exhibit A to the March 31, 2014 agreement) with a conversion ratio agreed by the Company at 1:2 (200,000=400,000) based on a conversion notice received March 2, 2016 from Mr. Suprock, and instructed Pacific Stock Transfer to issue said shares to Consortium. On March 11, 2016, said 400,000 shares of Common Stock were issued to Consortium. John Suprock made full payment and/or tendered full consideration for said shares at the time of the issuance to Consortium.

In connection with the matters set forth in this Representation Letter, I have consulted with securities counsel of my choice.

In connection with this request, I hereby further represent and warrant as follows:

1.     At the time of the afore-described acquisition of shares, the shares of Opinion Stock were acquired with investment intent and without a view to a distribution. The date of Consortium's acquisition of Opinion Stock and the tender of full consideration therefore was March 11, 2016, more than two years prior to the date of this Representation Letter.

2.     I intend to cause Consortium to sell the Opinion Stock into the public markets in a brokered transaction exempt from registration under Section 4(a)(1).

3.     I have carefully reviewed Section 4(a)(1). I am not now, nor have I ever been, a director or executive officer of the Company. No partner, member, officer, director, or employee of Consortium is now, nor has ever been, a director or executive officer of the Company. Prior to January 12, 2022 (the day prior to the date of this letter), neither I nor any partner, member, officer, director, or employee of Consortium has ever been a record or beneficial holder of 10% or more of the Company's then-issued and outstanding Common Stock. On January 12, 2022, the Company reported that it had entered into settlement agreements with four former officers and directors and one former affiliate shareholder of the Company resulting in a reduction in the number of issued and outstanding shares of Common Stock to 31,970,497 (as such number was confirmed by ClearTrust, LLC, the Company's transfer agent). Neither I nor Consortium was a party to such settlement agreements. However, as the result of said reduction in the number of issued and outstanding shares of Common Stock, I and Consortium may now, taken together with my husband John Suprock, be deemed the record or beneficial holder of 10% or more of the Company's issued and outstanding Common Stock as of the date hereof.

4.     Neither I nor Consortium has ever been controlled by or under common control with the Company and neither I nor Consortium has ever had any contractual rights to exercise any control over the Company. Neither I nor Consortium has the ability, by relationship, contract or otherwise, to affect the management or policies of the Company. Neither I nor Consortium possesses the power, directly or indirectly, to elect or designate any member of the Company's Board of Directors. There are no familial relationships and no other business relationships between me or Consortium and the Company. I and Consortium have been, always, passive investors in the Company.

ClearTrust, LLC
Stein Law, PLLC
January 13, 2022
Page 3 of 3

5.      Neither I nor Consortium is a dealer.

6.      I am not aware of any facts or circumstances related to this matter or the Company that would result in me or Consortium being deemed an "underwriter" (as such term is defined in Section 2(a)(11) of the 1933 Act) with respect to my proposed sale of the Opinion Stock.

7.      Except as described in paragraph 3 above, I am not aware of any facts or circumstances related to this matter or the Company that would result in me or Consortium being deemed an "affiliate" of the Company (as such term is defined in Rule 405 promulgated under the 1933 Act).

8.      Neither I nor Consortium has solicited or arranged for the solicitation of orders to buy in anticipation of or in connection with the proposed sale, and I will not do so.

I attest to the accuracy of the representations in this letter.  I understand the Company's transfer agent, ClearTrust, LLC ("ClearTrust"), and my counsel Stein Law, PLLC will rely upon my statements herein, and I agree that ClearTrust may rely upon the above statements in relying upon Stein Law, PLLC's opinion regarding the subject matter hereof.  If any such statements become inaccurate or incomplete, I will immediately notify Clear Trust and Stein Law, PLLC.

In consideration of the reliance of the afore-mentioned parties herein, I agree to fully indemnify Stein Law, PLLC, and its partners, officers, directors, employees, representatives and agents, for, and to hold each of them harmless against, any liability, loss, damage, cost or expense (including any counsel fees and expenses reasonably incurred by them) arising out of or relating to any incorrect statements or information given by me in this letter or concerning the sale.

Very truly yours,

Laurie Suprock
*Individually and as Sole Member and Manager*
*Of Consortium*