JONATHAN D. BLUM, ESQ.
Nevada Bar No. 09515
**WILEY PETERSEN**
1050 Indigo Dr., Suite 200B
Las Vegas, Nevada 89145
Telephone No. (702) 910-3329
Facsimile: (702) 553-3467
jblum@wileypetersenlaw.com

Samuel L. Butt *(admitted pro hac vice)*
sbutt@schlamstone.com
Joshua D. Wurtzel *(admitted pro hac vice)*
jwurtzel@schlamstone.com
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, NY 10004
Telephone: 212-344-5400
Facsimile: 212-344-7677

*Attorneys for Plaintiffs John Suprock, Laurie Suprock, Consortium LLC, and Renewable Energy Now, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JOHN L. SUPROCK, an individual, LAURIE L. SUPROCK, an individual, CONSORTIUM LLC, a South Dakota limited liability company, and RENEWABLE ENERGY NOW, LLC, a Montana limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>QUANTUM ENERGY, INC., a Nevada corporation, and CLEARTRUST, LLC, a Florida limited liability company,<br><br>Defendants. | CASE NO.: 2:22-CV-00494-GMN-EJY<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiffs John L. Suprock ("Mr. Suprock"), Laurie L. Suprock ("Mrs. Suprock"), Consortium LLC ("Consortium"), and Renewable Energy Now, LLC ("Renewable Energy" and, collectively, with Mr. Suprock, Mrs. Suprock, and Consortium, "Plaintiffs") submit this Memorandum of Law in opposition to Defendant Quantum Energy, Inc.'s ("Quantum") Motion to Dismiss Plaintiffs' Complaint

1

as being violative of Rule 13 and for failure to state a claim pursuant to Rule 12(b)(6) or, in the alternative, to strike certain allegations contained in paragraphs 6 and 7 of the Complaint in accordance with Rule 12(f).

## I. INTRODUCTION

Plaintiffs were compelled to bring this lawsuit because Quantum has deliberately and improperly prevented Plaintiffs from selling their 3.4 million shares in Quantum by directing Quantum's then transfer agent, ClearTrust, LLC ("Clear Trust"),[1] not to remove the "restrictive" legend on such shares. Further, Quantum has refused to issue to Mr. Suprock 466,560 additional shares of Quantum stock pursuant to the clear terms of a convertible Note dated October 29, 2019 (the "Note").

Now Quantum moves to dismiss this case. Not surprisingly, since its actions are undoubtedly improper, Quantum's main argument is a procedural one: that this case should be dismissed under the first-to-file rule because in December 2021 Quantum filed an action, *Quantum Energy, Inc. v. PCS Advisors LLC and John Suprock*, Case No. 2:21-cv-02814-JAD-BNW, (the "Quantum Action"), concerning 850,000 shares of Quantum. Quantum's argument concerning the first-to-file rule proceeds from the false presumption that the Quantum Action and this action involve "the same parties and issues," and therefore should be rejected. Other than Quantum and Mr. Suprock, the parties in this action differ from those in the Quantum Action, and the issues are dissimilar. In the Quantum Action, which is the subject of a fully briefed motion to dismiss, the issue is whether the defendants in that action, Mr. Suprock and one of his companies, PCS Advisors, LLC ("PCS Advisors"), are entitled to keep 850,000 shares issued to Mr. Suprock pursuant to the agreements between Mr. Suprock, PCS Advisors and Quantum. The issues in this matter concern whether Plaintiffs meet the requirements to have the "restrictive" legend removed from their 3.4 million shares (they do), the failure of Quantum to issue Mr. Suprock additional shares under the Note, and an additional 120,000 Quantum shares

---

[1] In April 2022, Plaintiffs' counsel was informed by counsel for ClearTrust that Quantum had terminated ClearTrust on or about April 11, 2022, effective May 16, 2022. (Butt Decl. ¶ 6). Accordingly, on or about April 20, 2022, because ClearTrust was named only in the declaratory judgment causes of action, Plaintiffs dismissed ClearTrust as a defendant. (*Id.*).

2

issued to another company belonging to Mr. Suprock, Renewable Energy. Further, even if the first-to-file rule applied, which it does not, under the circumstances of this case, this Court should exercise its discretion and decline to dismiss this action in favor of the Quantum Action or, at best for Quantum, transfer it to Judge Dorsey before whom the Quantum Action is pending.

Quantum's motion to dismiss Plaintiffs' First and Second Causes of Action for conversion because they are brought under common-law, rather than a Nevada statutory regime, fares no better. The argument ignores that Quantum took active steps, including exempting itself from SEC reporting requirements and buying back shares from shareholders other than Plaintiffs, to thwart Plaintiffs' attempts to sell their shares. Quantum relies primarily on two cases from outside the jurisdiction to support its argument, although the Nevada Supreme Court has expressly stated that it "express[es] no opinion as to whether NRS 104.8401 and NRS 104.8407 displace the common law remedies available against a transfer agent for misfeasance." *Guilfoyle v. Olde Monmouth Stock Transfer Co., Inc.*, 130 Nev. 801, 810, n.5 (2014). Thus, even if the Nevada statutory regime might otherwise apply, Plaintiffs' common law claims survive due to Quantum's malfeasance. Finally, Quantum does not argue that Plaintiffs' conversion claims would fail to state a cause of action under the Nevada statutory regime, so, to the extent this Court determines that the statute, rather than common law, should apply, it should dismiss Plaintiffs' conversion claims without prejudice and grant leave to amend since the (possible) defect can easily be cured.

Lastly, Quantum's motion to strike should be denied because it cannot be said that the matters to which Quantum objects will have no possible bearing on the subject matter of the litigation and because Quantum has not shown any prejudice, as required.

## II. STATEMENT OF RELEVANT FACTS[2]

### A. Quantum's Efforts To Thwart Plaintiffs' Sale Of Their Quantum Shares

Plaintiffs acquired 3,400,000 shares of Quantum (the "Shares"), all of which contained a "restrictive" legend which precludes the sale of such Shares unless: (i) the shares are registered, or

---

[2] Given the limited nature of Quantum's motion to dismiss, only select facts relevant to this motion are set forth herein. To the extent additional facts are required, for the purposes of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs respectfully refers to the Complaint.

3

(ii) subject to an exemption from registration. (Compl. ¶¶ 18-24). Because Quantum did not register the Shares in connection with any transaction, the only way the restricted legend could come off is if an exemption to registration applied. To invoke an exemption to registration and seek the removal of a restricted legend, a stockholder must submit a request to the issuer, Quantum, or its transfer agent (at the time, ClearTrust), with an attorney opinion letter explaining that the shares may be publicly sold. (*Id.* ¶ 38; *id.* Exs. 1-6).

Initially, Plaintiffs' securities counsel correctly opined that the legend could be removed pursuant to the exemption under Rule 144(d)(1)(i) promulgated under the Securities Act of 1933. (*See id.* ¶ 38; *id.* Exs. 1-4). This was so because, *inter alia*, Quantum was subject to the reporting requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934 ("Exchange Act"), and had been for at least 90 days prior to the intended sale of the Shares and because Quantum had timely filed with the SEC on the EDGAR system all reports, and other materials required to be filed by Section 13 or 15(d) of the Exchange Act, during the preceding twelve months. (*Id.* ¶ 44).

For no legitimate business purpose, Quantum went out of its way to ensure that Plaintiffs could not rely on Rule 144. (*Id.* ¶ 45). On or about December 21, 2021, Quantum filed a Form 15, entitled "Certification and Notice of Termination of Registration under Section 12(g) of the Securities Exchange Act of 1934 or Suspension of Duty to File Reports Under Sections 13 and 15(d) of the Securities Exchange Act of 1934." (*Id.*). Quantum's purposefully rendering itself not subject to the reporting requirements of Sections 13 and 15(d) of the Exchange Act meant that Plaintiffs could not continue to rely upon Rule 144, and by such filing Quantum intended to delay and preclude Plaintiffs from selling the Shares. (*Id.*). Until this Form 15 was filed, Quantum was a mandatory filer. (*Id.*). The only reason for Quantum to file the Form 15 when it did, after filing with the United States Securities and Exchange Commission ("SEC") for years, and shortly after Plaintiffs sought removal of the "restrictive" legend, was to prevent Plaintiffs from selling their Shares. (*Id.*). Quantum further instructed ClearTrust not to remove the "restrictive" legend. (*Id.* ¶ 44).

Despite Quantum's bad faith actions, Plaintiffs continued to try to get the "restrictive" legend removed and submitted a further opinion letter from securities counsel setting forth that the legend could be removed under Section 4(a)(1) promulgated under the 1933 Act ("Section 4(a)(1)"), and the

4

restrictive legend or stop transfer orders on the Shares should be removed. (*Id.* ¶ 46; *id.* Exs. 5-6).

Given that Section 4(a)(1) clearly applied, Quantum then took affirmative efforts so that it could argue (albeit incorrectly) that Section 4(a)(1) was inapplicable. On or about January 12, 2022, Quantum announced the purported return and retirement of 19,382,676 common shares, which, according to Quantum reduced the outstanding common shares to 30,455,943 from 49,828,629. (*Id.* ¶ 51).

Due solely to the share retirement executed by Quantum, Plaintiffs could be deemed to be the record or beneficial holders of 10% or more of Quantum's issued and outstanding common stock, but only if the holdings of each Plaintiff are counted together, which percentage holding Quantum used to argue that Section 4(a)(1) did not apply because Plaintiffs were affiliates of Quantum. (*Id.* ¶¶ 51-52).

Thus, on January 17, 2022, Plaintiffs submitted a final opinion letter from its securities counsel, dated January 13, 2022, explaining why Plaintiffs were not affiliates of Quantum and that the "restrictive" legend would properly be removed under Section 4(a)(1) despite the reduced number of outstanding shares. (*Id.* ¶ 53; *id.* Ex. 6).

On January 24, 2022, ClearTrust informed Plaintiff's counsel that Quantum did not approve the legend removal for Plaintiffs on the asserted basis that each was an affiliate of Quantum, which Plaintiffs had already demonstrated was incorrect. (*Id.* ¶ 58).

Whatever else may have motivated Quantum's animus towards Plaintiffs, Quantum undertook all these steps, certainly in part, because Plaintiffs refused to accept an unfavorable (and perhaps illegal) share exchange Quantum proposed in October 2021. (*See id.* ¶ 6). When Mr. Suprock asked for time for counsel to review the proposal, Craig Kitchen of Quantum responded with invective, threatening that if Mr. Suprock did not accept the exchange, he would be "tied up in litigation along with former directors and officers for the next few years in federal court," among other statements. (Butt Declaration Ex. 4, ¶ 5).

**B.  The Quantum Action**

True to Quantum's threats, the Quantum Action was filed on December 11, 2021. (*See* Butt Decl. Ex. 1). In the Quantum Action, Quantum alleged that Mr. Suprock and PCS Advisors were not entitled to keep 850,000 shares issued to Mr. Suprock pursuant to a referral agreement entered into

between PCS Advisors and Quantum. (Butt Decl. Ex. 1 at ¶¶ 18-23). Mr. Suprock and PCS Advisors have moved to dismiss the Quantum Action, which motion is fully briefed. (*Id.* Exs. 2-3). As set forth in Mr. Suprock's and PCS Advisor's motion papers, the Quantum Action should be dismissed because, *inter alia*, a subsequent cancellation agreement between Mr. Suprock and PCS Advisors explicitly permitted them to retain the 850,000 shares. (*Id.*).

### C. The Note

On October 21, 2019, Mr. Suprock entered into an 8% Promissory Note with Quantum, in the amount of $20,000 (the "Note"), pursuant to which Quantum promised to repay Mr. Suprock the $20,000 principal loaned by Mr. Suprock 24 months after the date of the Note. (Compl. ¶ 63).

Pursuant to the Note, Quantum was also to pay Mr. Suprock interest at the rate of 8% per annum in shares of restricted Common Stock of Quantum. (*Id.* ¶ 64).

Mr. Suprock wired $20,000 to Quantum, to the account of Quantum's lawyer, Jerold N. Siegan, pursuant to the Note and the wire instructions provided by Quantum. The Note contained a Notice of Conversion pursuant to which Mr. Suprock could convert any amount of principal and accrued and unpaid interest into Quantum Common Stock at $0.05 per share. (*Id.* ¶ 65).

Accordingly, $20,000 would become 400,000 shares of Quantum Stock. (*Id.* ¶ 66).

On October 29, 2021, Mr. Suprock submitted the Notice of Conversion to Craig Kitchen of Quantum, with a copy to Quantum's counsel, pursuant to the terms of the Note. Under the terms of the Note, the $20,000 principal plus $3,328 in interest as of October 29, 2021 should have been converted to 466,560 shares. (*Id.* ¶ 67).

Quantum improperly rejected the conversion, and has not issued the 466,560 shares or paid any principal or interest on the Note. (*Id.* ¶¶ 68-76).

### III. ARGUMENT

#### A. Quantum's Pending Action Against PCS Advisors and Mr. Suprock Does Not Require Dismissal Of This Action

Quantum argues that this action should be dismissed because it filed a prior action, the Quantum Action. (Mot. at 2). Quantum further contends that the "general rule" is that "if two federal actions involve the same parties and issues, the court hearing the earlier commenced case has priority to

adjudicate the controversy, unless sufficient cause" warrants a departure from that rule. (Mot. at 2-3). This argument, however, proceeds from the false presumption that the Quantum Action and this action involve "the same parties and issues." Other than Quantum and Mr. Suprock, the parties in this action differ from those in the Quantum Action and the issues are dissimilar.

The most basic aspect of the first-to-file rule is that it is discretionary; 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (*quoting Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). In applying the first-to-file rule, a court looks to three threshold factors: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Alltrade*, 946 F.2d at 625–26. Even if these three criteria are met, the district court retains the discretion to disregard the first-to-file rule in the interests of equity. *Id.* at 622. The latter two factors are not satisfied here and, even if they were, this Court should decline to dismiss in the exercise of its discretion.

### 1) The Parties And Issues In The Two Actions Are Dissimilar

As an initial matter, the Quantum Action, as alleged by Quantum, concerns a referral agreement between Quantum and PCS Advisors, and PCS's performance thereunder. (Butt Decl. Ex. 1). Quantum claims that PCS Advisors and Mr. Suprock are not entitled to keep the 850,000 Quantum shares set forth in the referral agreement at issue and which a subsequent cancellation agreement fully entitled PCS Advisors and Mr. Suprock to keep. (*See* Butt Decl. Ex. 1 at ¶¶ 18-23 and Exhibit 4 thereto; Butt Decl. Exs. 2-3). In contrast, as set forth above, Plaintiffs in this action, including Mr. Suprock, were compelled to bring this lawsuit because Quantum prevented them from selling their shares in Quantum. Specifically, Quantum refused to allow the sale of the 3,400,000 shares of Quantum stock (the "Shares") that Plaintiffs collectively hold, and have held for years—erroneously and frivolously claiming that the sale of the Shares does not qualify for exemption under Section 4(a)(1) of the Securities Act of 1933, and also refused to enable the consummation of such sale with the removal of the "restrictive" legend on the Shares. This action also concerns an additional 466,560 shares owed to Mr. Suprock pursuant to a convertible Note that Quantum has refused to issue, as well as 120,000

shares issued to Renewable Energy. (Compl. ¶¶ 61-62). None of Mrs. Suprock, Consortium, or Renewable Energy are parties to the Quantum Action.

While Quantum will certainly point to cases that the second prong of the first-to-file test can be met where there are additional parties present, this is not a case where only a single party is added or the added parties are of no consequence other than an attempt to defeat the first-to-file rule. Rather, here, Renewable Energy seeks relief with respect to its 120,000 shares, Consortium with respect to its 400,000 shares, and Mrs. Suprock with respect to 325,000 shares in her own name and another 850,000 held as a joint tenant with Mr. Suprock. (*See, e.g.*, Compl. ¶¶ 19, 21, 23, 61-62). None of these parties have anything to do with the claims in the Quantum Action. Indeed, absent intervention, these parties could not seek relief in the Quantum Action since they are not defendants in that action, which motion practice would not foster the goal of efficiency underlying the first-to-file rule. *Alltrade*, 946 F.2d 625 (noting purpose of rule is "promoting efficiency"). Dismissal is not appropriate where the first-filed case fails to provide adequate remedies for the plaintiffs in the second case. *See Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1150 (E.D.Ca. 2010) (refusing to apply first-to-file rule).

As to the third prong, while exact identity of the issues is not necessarily required, it is not enough that the 850,000 shares at issue in the Quantum Action are part of the 3.4 million shares that Quantum is precluding Mr. Suprock and other individuals and entities from selling. "The possibility that issues adjudicated in one action may be preclusive in the other falls short of the sameness required for the "first to file" rule to apply or to forestall the discretion the court has in the circumstances of a particular case to deny dismissal or transfer under that rule." *Am. Traffic Sols., Inc. v. Red Light, LLC*, 2006 WL 1159926, at *3 (D. Ariz. May 2, 2006). Critically, even if, in the other action, the Court were to rule that somehow PCS Advisors and Mr. Suprock were not entitled to those 850,000 shares, the result would have no effect on the question of whether the "restrictive" legend should be removed from the remaining 2,550,000 shares that are the subject of Plaintiffs' Fourth Cause of Action for Declaratory Judgment (Compl. ¶¶ 105-113), nor would it pertain to the additional 466,560 shares Mr. Suprock is owed pursuant to the terms of the Note, (*see, e.g.*, *id.* ¶¶ 114-120), or the 120,000 shares owned by Renewable Energy. *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997) (affirming district court's refusal to apply first-to-file rule where issues were distinct). Thus, the question in the

8

Quantum Action is not at the "heart" of this action, which seeks to remove the "restrictive" legend with respect to shares other than the 850,000 at issue in the Quantum Action, nor is there "substantial overlap" of the actions. *Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1241 (9th Cir. 2015); *see also Urbina v. Freedom Mortg. Corp.*, 2020 WL 6728935, at *4 (E.D. Cal. Nov. 16, 2020) (lifting stay previously imposed under first to file rule because "although there may be some similarity of issues between this action and the Texas case, the court does not find the cases to be 'substantially similar' enough to justify leaving the stay in this case in effect"); *Optec Displays, Inc. v. Nat'l Led Sign Co.*, 2008 WL 11338470, at *5 (C.D. Cal. July 30, 2008) ("Because the issues involved in the two actions are not sufficiently similar, the First to File Rule is inapplicable"). Accordingly, Quantum's motion should be denied for this reason as well.

Additionally, the issues in this action are broader than those in the Quantum Action, requiring that this case be permitted to proceed. *See Montana Env't Info. Ctr. v. Bernhardt*, 2020 WL 4346604, at *3 (D. Mont. July 29, 2020) (declining to transfer case under first to file rule because, *inter alia*, issues in case were broader than those in first filed case); *Montana Merchandising, Inc. v. Dave's Killer Bread, Inc.*, 2017 WL 2536530, *5 (D. Mont. June 9, 2017) (declining to apply the first-to-file rule where second-filed action included "additional plaintiffs, defendants, and claims" and the claims extended "beyond the scope of the claims of the [first-filed] case"); *Roller Bearing Co. of Am., Inc. v. American Software, Inc.*, 570 F.Supp.2d 376, 388 (D. Conn. 2008) (finding judicial economy was best served by allowing the much broader second-filed action to proceed).

Quantum finally contends that courts have enjoined later filed actions if they are based on what a court has determined to be a compulsory counterclaim under Fed. R. Civ. P. 13(a). (Mot. at 3-4). First, it is apparent that Plaintiffs' claims in this action do not "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim" since the Quantum Action is limited to 850,000 of the nearly 4,000,000 shares at issue, and include three additional plaintiffs who would have to be added to the Quantum Action.

For a claim to arise from the same transaction or occurrence, "the essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir.

2004) (internal quotation marks and citation omitted). As set forth herein, that is not the case here. *Am. Nat'l Mfg. Inc. v. Select Comfort Corp.*, 2016 WL 9450472, at *4 (C.D. Cal. Sept. 28, 2016) (rejecting argument that claims were compulsory counterclaims because, where "Plaintiffs' claims involve Select Comfort's activity with respect to its trademarks, the claims also (1) involve trademark cases against Defendants who are not plaintiffs in the present action; and (2) depend on other unrelated conduct of Select Comfort, such as Select Comfort's acquisition of Comfortaire").

Furthermore, the Quantum Action concerns whether or not Mr. Suprock and PCS Advisors are entitled to the 850,000 shares pursuant to the agreements at issue in that action. Whether the "restrictive" legend should be removed from such shares, if Mr. Suprock and PCS Advisors are entitled to keep them, as they should be, has nothing to do with the agreements at issue in the Quantum Action or Mr. Suprock's and PCS Advisors' work thereunder. Thus, contrary to Quantum's argument, the facts are not so logically connected that even a claim with respect to the "restrictive" legend on the 850,000 shares would be a compulsory counterclaim in the Quantum Action. What is more, even if Quantum were correct (which it is not) that one portion of one cause of action would be subject to Fed. R. Civ. P. 13, (Mot. at 4), such an argument admits that this action is unrelated for Rule 13's purposes. Accordingly, the cases cited by Quantum for this argument, *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961) (noting that of two causes of action in second filed case, the first was identical to the counterclaim in the prior action and the second arose from the same lease transaction, unlike here) and *United Fruit Co. v. Standard Fruit & Steamship Co.*, 282 F. Supp. 338, 340 (D. Mass 1968) (all facts concerned alleged same labels and conduct that were at issue in the first action, unlike here), are inapposite.[3]

Finally, since defendants in the Quantum Action have moved to dismiss, no answer (or counterclaim) is currently due. If anything, the claim in the Quantum Action should be brought as counterclaims or defenses in this action.

---

[3] Quantum also argues that the requirements of Fed. R. Civ. P. 13(b) are met because the Court in the Quantum Action would have jurisdiction over Plaintiffs in this matter. While Plaintiffs need not belabor the point, that is incorrect. As discussed in Mr. Suprock's and PCS Advisors' reply in support of their motion to dismiss in the Quantum Action, which is expressly incorporated by reference herein, this action cannot be a basis for jurisdiction in the Quantum Action. (Butt Decl. Ex. 3, at 2-3).

Quantum's request that this matter at the very least be stayed pending the decision on the motion to dismiss in the Quantum Action, (Mot. at 4, n. 1), should be rejected. Since the first-to-file rule does not apply here, for all the reasons set forth herein, a stay would be inappropriate and only effectuate Quantum's goal of delaying Plaintiffs relief for as long as possible. Even if the first-to-file rule applied, which it does not, because the cases involve different parties and relief, at best for Quantum, this action should be transferred to Judge Dorsey of this district, before whom the Quantum Action is pending. *Alltrade*, 946 F.2d at 623.

### 2) The Court Should Deny Plaintiffs' Motion Pursuant To Its Discretion

#### a) The Quantum Action Is Part of Quantum's Bad Faith Efforts To Preclude Plaintiffs From Selling Their Shares

Even if the first-to-file rule requirements were satisfied, which they are not, exceptions to the first-to-file rule may apply in cases of bad faith, anticipatory suit, forum shopping, or where the balance of convenience favors the later-filed action. *Alltrade*, 946 F.2d at 625-26. The Quantum Action was filed on December 11, 2021. (Butt Decl. Ex. 1). At this time, Plaintiffs in this action had submitted requests to ClearTrust, Quantum's transfer agent, to remove the "restrictive" legend from their shares pursuant to Rule 144(d)(1)(i) promulgated under the Securities Act of 1933. (Compl. Exs. 1-4). Shortly thereafter, on December 17, 2021, Quantum, through counsel Hamilton & Associates Law Group, P.A., by Brenda Hamilton, sent a letter to ClearTrust, incorrectly claiming that Rule 144 was not available with respect to the Shares and directing ClearTrust not to process the legend removal from the Shares. (*Id.* ¶ 44). Then, to further thwart Plaintiffs' attempts to sell their Shares, on or about December 21, 2021, as set forth above, Quantum filed a Form 15 with the SEC, purporting to suspend its duty to file reports under Sections 13 and 15(d) of the Securities Exchange Act of 1934. (*Id.* ¶ 45). Quantum's purposefully rendering itself not subject to the reporting requirements of Sections 13 and 15(d) of the Exchange Act meant that Plaintiffs could not continue to rely upon Rule 144, and by such filing Quantum intended to delay and preclude Plaintiffs from selling the Shares. (*Id.*). Until this Form 15 was filed, Quantum was a mandatory filer. (*Id.*). The only reason for Quantum to file the Form 15 when it did, after filing with the SEC for years, was to prevent Plaintiffs from selling their Shares. (*Id.*).

Subsequently, when Plaintiffs then sought to rely on a different mechanism to get the "restrictive" legend removed from their shares, Section 4(a)(1) of the Securities Act of 1933, Quantum purported to buy back sufficient shares such that Plaintiffs, collectively, became the holders of more than 10% of Quantum's shares, which fact Quantum then argued, incorrectly, precluded removal of the "restrictive" legend. (*Id.* ¶¶ 51-52).

Clearly, the filing of the Quantum Action was part and parcel of Quantum's efforts to thwart Plaintiffs' attempts to sell their shares and filed in anticipation of this lawsuit. Indeed, when Mr. Suprock refused to accept an unfavorable (and perhaps illegal) share exchange back in October 2021 from Quantum, Craig Kitchen of Quantum responded with invective, threatening that if Mr. Suprock did not accept the exchange, he would be " tied up in litigation along with former directors and officers for the next few years in federal court," among other statements. (Butt Decl. Ex. 4, ¶ 5).

Thus, the Quantum Action was filed in bad faith and in anticipation of Plaintiffs' suit herein, and this Court should decline to dismiss for this reason as well.

Quantum is incorrect that Plaintiffs' allegations that Quantum's acts, including the filing of the Quantum Action, were in bad faith requires dismissal under the first-to-file rule. (Mot. at 2). Quantum overemphasizes the allegation in a prefatory paragraph of Plaintiffs' Complaint, which is but one of many instances alleged of Quantum's bad faith, (*see, e.g.*, Compl. ¶¶ 44-45, 51-52), and which bad faith is not a consideration as to whether the "restrictive" legend should be removed under Section 4(a)(1). Certainly, there is no "case within a case", (Mot. at 2), that requires adjudication of the Quantum Action to establish that removal of the legend is proper. To the extent bad faith is relevant to other causes of action for relief Plaintiffs seek, (*see, e.g.*, Compl. ¶ 103), adjudicating the Quantum Action is not required to establish such bad faith given the numerous other allegations of bad faith in the Complaint. Further, Plaintiffs' reference to the Quantum Action as "related", (Mot. at 2), is similarly inconsequential. The reference meant simply that the Quantum Action was but one element of the parties' broader disputes. Quantum's blatant attempt to forestall this action by bringing an action that concerns only 850,000 of the nearly four million shares at issue and that does not concern three of plaintiffs herein, should not be rewarded.

///

### b) The Quantum Action Is The Subject Of a Pending Motion To Dismiss

Mr. Suprock and PCS Advisors moved to dismiss the Quantum Action on March 21, 2022, and the motion was fully briefed on May 2, 2022. (Butt Decl. Exs. 2-3). As set forth in Mr. Suprock's and PCS Advisors' motion papers, Quantum's claim in the Quantum Action fails because the February 28, 2018 Cancellation Agreement between those parties entitled PCS Advisors to retain the 850,000 shares at issue. The potential for dismissal should preclude this court from dismissing this action in favor of the Quantum Action.

### c) Even If The First-To-File Rule Applies, Equitable Considerations Establish That Dismissal Is Not Appropriate

Even if the Court determines that the first-to-file rule applies (it does not), for the reasons stated above, including (a) that the issues in this matter are much broader than those in the Quantum Action; (b) that Mrs. Suprock, Consortium, and Renewable Energy would not be able to assert counterclaims in the Quantum Action; and (c) Quantum has gone to great lengths to prohibit Plaintiffs from selling their shares despite Plaintiffs being permitted to do so, first under Rule 144 and then under Section 4(a)(1), this Court should additionally decline to apply the rule pursuant to its equitable discretion. *Alltrade*, 946 F.2d at 628; *see also Adoma*, 711 F. Supp.2d at 1150 (Dismissal is not appropriate where the first-filed case fails to provide adequate remedies for the plaintiffs in the second case); *Burns v. Gerber Products Co.*, 2012 WL 8251405 at *3-4 (E.D.Wa. Sept. 4, 2012) (denying motion to dismiss because second action included claims and covered class members not present in first action).

## II. PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION FOR CONVERSION SHOULD NOT BE DISMISSED

Quantum argues that Plaintiffs' First and Second Causes of Action for conversion should be dismissed because the statutory scheme under Nev. Rev. Stat. § 104.8401 governs since Plaintiffs seek removal of the "restrictive" legend. (Mot. at 5-6).

Quantum relies principally on two non-binding cases from New York to support its contention that the Nevada statutory scheme displaces a common law claim for conversion in the case of the failure to remove a "restrictive" legend because such failure is nonfeasance as opposed to malfeasance. (Mot. at 6) (citing *Campbell v. Liberty Transfer Co.*, 2006 WL 3751529, at *17 (E.D.N.Y. Dec. 19, 2006)

and *Shaw v. Empire Stock Transfer Inc.*, 381 F. Supp.3d 286, 291 (S.D.N.Y. 2019)). Neither case is binding, and the Nevada Supreme Court has expressly stated that it "express[es] no opinion as to whether NRS 104.8401 and NRS 104.8407 displace the common law remedies available against a transfer agent for misfeasance." *Guilfoyle v. Olde Monmouth Stock Transfer Co., Inc.*, 130 Nev. 801, 810, n.5 (2014). It is respectfully submitted that Quantum's actions in prohibiting Plaintiffs from realizing the value of their shares constitutes a cognizable common law conversion claim under Nevada law. *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 606, 5 P.3d 1043, 1048 (2000) (conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights"). To the extent that the question turns on a distinction between nonfeasance versus misfeasance, as Quantum contends, (Mot. at 6), particularly given the numerous affirmative steps taken by Quantum in its attempt to thwart Plaintiffs' requests to have the "restrictive" legend removed, *see, e.g.*, Compl. ¶¶ 44-45, 51-52 (directing ClearTrust not to remove the legend, filing the Form 15(d) to preclude reliance on Rule 144 and then buying back shares to argue that Plaintiffs were affiliates regarding Section 4(a)(1)), Plaintiffs' conversion claim reflects more than just a simple refusal to remove the "restrictive" legend, but rather active misfeasance which, even under *Shaw*, is actionable at common law. 381 F. Supp.3d at 291-92; *see also Campbell*, 2006 WL 3751529, at *17 (distinguishing between malfeasance and nonfeasance).

   Plaintiffs' Second Cause of Action, concerning the 120,000 Quantum shares issued to Renewable Energy, is also properly pled. A careful reading of the Complaint makes clear that Plaintiffs are not seeking removal or the "restrictive" legend from the Renewable Energy shares, but damages for cancelling such shares without basis. (Compl. ¶¶ 90, 92; *see also id.* at ¶¶ 105-120 (seeking removal of "restrictive" legend for: (a) 3.4 million shares owned by Mr. and Mrs. Suprock and Consortium; and (b) shares that should have been issued to Mr. Suprock in accordance with the convertible Note at issue). Quantum even admits that where there is "misfeasance", as in a conversion claim, common law, rather than the statutory scheme, would apply. (Mot. at 6). To the extent this Court adopts the reasoning of *Shaw*, that case made clear that cancellation of shares could be the subject of a conversion claim despite the Nevada statutory scheme relied upon by Quantum. 381 F. Supp.3d at 291-92. The

entirety of Quantum's argument on this cause of action is irrelevant, and Plaintiffs' Second Cause of Action must not be dismissed.

To the extent this Court determines that either or both of Plaintiffs' First and Second Causes of Action must be dismissed since they are governed under the Nevada statutory scheme, Plaintiffs request that such dismissal should be without prejudice and that Plaintiffs be permitted to file an amended complaint to replead such claims under the statute. *Astound Grp. v. Faraday Future*, 2019 WL 8051705, at *1 (D. Nev. Mar. 28, 2019) (granting leave to amend where plaintiff may be able to cure pleading defects); *see also Shaw*, 381 F. Supp.3d at 289 (dismissing complaint with leave to replead sufficient facts to support a statutory violation). Quantum makes no argument that a conversion claim could not be properly pled under the statute.

### III. <u>QUANTUM'S MOTION TO STRIKE SHOULD BE DENIED</u>

Quantum's motion to strike should be denied. Rule 12(f) provides that courts may strike from a pleading matter that is redundant, immaterial, impertinent, or scandalous. Fed. R. Civ. P. 12(f). However, a motion to strike material from a pleading is "heavily disfavored." *Edwards v. Juan Martinez, Inc.*, 506 F. Supp. 3d 1061, 1077 (D. Nev. 2020) (denying motion to strike term "illegal" in complaint). "The allocation of burden on a motion to strike establishes a high bar to success." *Lapena v. Las Vegas Metropolitan Department*, 2022 WL 479496, at *1 (D. Nev. Feb. 16, 2022) (denying motion to strike). Courts will not grant a motion to strike "unless it is clear that the matter to be stricken could not have any possible bearing on the subject matter of the litigation." *Id.* (quoting *In re Facebook PPC Advertising Litig.*, 709 F. Supp. 2d 762, 773 (N.D. Cal. 2010).) "[I]f there is any doubt as to whether under any contingency the matter may raise an issue, the motion may be denied." *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, 460 F. Supp. 2d 1222, 1234 (D. Nev. 2006) (quoting 2A MOORE'S FEDERAL PRACTICE, ¶ 12-207). Additionally, courts view the pleadings in the light most favorable to the nonmovant. *Cal. Dept. of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).

The prior conduct of those who are currently running Quantum and their motivations are relevant to Plaintiffs' allegations, for example, that Quantum has refused to issue additional shares pursuant to the Note in bad faith, (Compl. ¶ 103), simply because they do not like Plaintiffs and that

Plaintiffs did not bow to Quantum's pressure to enter into an unfavorable deal. Thus, it cannot be said that the matters will have no possible bearing on the subject matter of the litigation, and the motion must be denied. Moreover, in view of the high burden Quantum faces, together with the lack of any prejudice cited by Quantum, the motion must be denied for these reasons as well. *Edwards*, 506 F. Supp.3d at 1077 (denying motion to strike term "illegal"); *Lapena*, 2022 WL 479496, at *1 (denying motion to strike); *In re Facebook PPC Advertising Litig.*, 709 F. Supp.2d at 773 (denying motion to strike where "Defendant does not allege that it will suffer any specific undue prejudice, arguing only that the statements are hearsay and minimally probative"); *Humana Inc. v. Mallinckrodt ARD LLC*, 2020 WL 3041309, at *14, n.15 (C.D. Ca. Mar. 9, 2020) (denying motion to strike paragraph of complaint referring to settlement regarding illegal kickbacks).

## IV. CONCLUSION

For the reasons set forth above, Quantum's motion must be denied in its entirety.

DATED this 23rd day of June, 2022.

WILEY PETERSEN

JONATHAN D. BLUM, ESQ.
Nevada Bar. No. 9515
1050 Indigo Drive, Suite 200B
Las Vegas, Nevada 89145
Telephone No. (702) 910-3329
Facsimile: (702) 553-3467
jblum@wileypetersenlaw.com

SCHLAM STONE & DOLAN LLP

By:_____
Samuel L. Butt (admitted *pro hac vice*)
Joshua D. Wurtzel (admitted *pro hac vice*)
26 Broadway
New York, New York 10004
Tel: (212) 344-5400
E-Mail: sbutt@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Plaintiffs John Suprock, Laurie Suprock, Consortium LLC, and Renewable Energy Now, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of WILEY PETERSEN and on the 23rd day of June, 2022, I caused to be served a true and correct copy of foregoing **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS THE COMPLAINT** in the following manner:

(ELECTRONIC SERVICE) Pursuant to Rule 5-4 of the Local Rules of Civil Practice of the United States District Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Electronic Filing automatically generated by that Court's facilities.

FENNEMORE CRAIG, P.C.
Christopher H. Byrd (No. 1633)
Chelsie A. Adams (No. 13058)
9275 W. Russell Suite 240
Las Vegas, NV 89148
Telephone: (702) 692-8000
Facsimile: (702) 692-8099
Email: cbyrd@fennemorelaw.com
cadams@fennemorelaw.com

FENNEMORE CRAIG, P.C.
David A. Timchak
(will comply with LR IA 11-2 within 14 days)
2394 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
Telephone: (602) 916-500
Email: dtimchak@fennemorelaw.com
*Attorneys for Defendant Quantum Energy Inc.*

_____
An Employee of WILEY PETERSEN